IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-20375-ALTMAN/REID

DAVID FEINGOLD and
MICHAEL DAZZO

    Plaintiffs,

v.

RICHARD CARDINALE, VANIA
CARDINALE, RVCNY, LLC and
RVCVSI, LLC,

    Defendants.
_____/

**TITAN COMMUNICATIONS GROUP, LLC'S MOTION TO QUASH AND FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW**

TITAN COMMUNICATIONS GROUP, LLC ("Titan"), by and through its undersigned counsel, and pursuant to F.R.C.P. 26 and F.R.C.P. 45, hereby files its Motion to Quash and for a Protective Order with respect to the Defendants Richard Cardinale's, Vania Cardinale's, RVCNY, LLC's and RVCSI, LLC's (the "Defendants") Subpoena, dated November 3, 2022 (the "Second Subpoena" annexed hereto as Exhibit "A"), which purports to improperly require a deposition of Titan to be held on November 29, 2022 and the production of documents by November 22, 2022, and in support thereof, Titan states the following:

**PRELIMINARY STATEMENT**

The Second Subpoena at issue (like the first) is in connection with a pending action entitled *David Feingold and Michael Dazzo v. Richard Cardinale, Vania Cardinale, RVCNY, LLC and RVCSI, LLC*, U.S.D.C. Southern District of Florida, Case No. 1:22-cv-20375-RKS (the "Action"),

wherein the Plaintiffs assert claims against Defendant Richard Cardinale (and others) for various misconduct including claims for breach of fiduciary duty, conversion, and fraudulent misrepresentation. This is Defendants' *second* improper attempt at serving a subpoena on Titan, the first of which was quashed by this Court on October 24, 2022, when the Court entered an Order granting Titan's Motion to Quash and for Protective Order [D.E. 64], finding that Defendants' first subpoena was, *inter alia*, overbroad, unduly burdensome, and irrelevant and that Titan's status as a non-party also militated against requiring disclosure.[1] The Court provided Defendants a narrow future window for discovery from Titan, stating that any future subpoena "must be narrowly tailored to Defendants' stated defense regarding pass through payments to Titan Communications." Defendants have failed to comply the Court's directive in this second bite at the apple.

The Court should, at the outset, consider the backdrop attendant to this Second Subpoena. Defendants issued a multitude of subpoenas to non-parties before *any* party discovery had taken place. This Court previously quashed two of those subpoenas and there are currently motions to quash three additional subpoenas to non-parties in Federal court in South Carolina. The Court found good cause to depose Defendants prior to any discovery. Cardinale has attempted to assert a Third-Party Complaint against Titan that without legal or factual support claiming Titan should pay for Cardinale's wrongdoing and in disregard of an arbitration provision. Cardinale has not squarely disputed Feingold's assertions of Cardinale's improper tactics and motivation behind the subpoenas. Cardinale is well aware that neither Titan nor Sanders has any knowledge with respect to his allegations concerning "administrative expenses" or "pass throughs" as shown by his own

---

[1] On November 17, 2022, Titan timely served its written objections to the Second Subpoena and its Privilege Log on Defendants. *See* Objections attached hereto as Exhibit "B."

documents. Defendants have attached to the Second Subpoena the documents they claim to be seeking by "composite" exhibits, including the invoices, ACH payments, any purported "approvals," agreements, payments, periodic statements, and bank statements.

Titan had previously been engaged by Cardinale's entity, L3 Capital Advisory, LLC, to provide financial consulting services. (*See* Exhibit 6 of Second Subpoena). Later, Cardinale would direct Titan to send invoices to L3 Capital Management LLC. Titan's manager, Todd Sanders ("Sanders"), terminated the relationship upon Sanders' discovery of unethical and potentially illegal activity on the part of Cardinale. After terminating his dealings with Cardinale, Sanders began working with an investment entity affiliated with Broadstreet, Inc. ("Broadstreet"). Plaintiff David Feingold ("Feingold") is the CEO of Broadstreet and has been since July 2022. Feingold is also an attorney and has been for over 30 years. *See generally* previously submitted declarations of Todd Sanders at D.E. 34 and D.E. 50 incorporated herein and annexed hereto as Exhibits "C" and "D" respectively.

The first subpoena and Second Subpoena have been purportedly premised on a sentence in Cardinale's declaration where Cardinale states that, "The Titan Invoices comprise part of the administrative expenses at issue in the case billed from L3 Capital Management to Alternative Global Management, LLC." [D.E. 47-1, at 3, ¶11]. *Critically, at no time would Defendants claim that Titan or Sanders ever had any knowledge of these invoices allegedly being "administrative expenses" as between "L3 Capital Management to Alternative Global Management, LLC."* Indeed, neither Titan nor Sanders has any knowledge of this purported situation of "administrative expenses" as Sanders' job was to provide financial consulting services to L3. *See* Declaration of Todd Sanders incorporated herein and attached hereto as Exhibit "E".

Cardinale's counsel would also state that "At least $700,000 of the $1.3 million Plaintiffs claim was paid to Cardinale were pass through expenses that were paid to Titan Communications for services at Dazzo's direction and with Feingold's approval." [ECF No. 49 at 16]. *Critically, at no time would Defendants claim that Titan or Sanders ever had any knowledge of any "pass through expenses that were paid to Titan Communications for services at Dazzo's direction and with Feingold's approval."* Yet again, neither Titan nor Sanders has any knowledge of this purported situation of "pass throughs" as his job was to provide financial consulting services to L3. *See* Exhibit "E".

*Thus, the very premise of the Second Subpoena is a total sham*. Cardinale is well aware that neither Titan nor Sanders has any knowledge of "administrative expenses" or "pass throughs" and Defendants have not claimed otherwise. Sanders is merely an innocent bystander once again caught in the crossfire of Cardinale's various attempts to victimize Feingold through his improper use of subpoenas and attempt to destroy Feingold's business. This rouse is a revenge plot put in play by Cardinale because Feingold has sued Cardinale and refused to cede to his demands to pay him for matters that Cardinale expressly disclaimed entitlement to.

To cover up this fatal flaw and mask Cardinale's true harassing intentions, the Second Subpoena purports to seek (in Schedule B) documents that Cardinale already has, that Titan now "substantiate" its services to L3, provide "proof" Titan received wires from L3, produce the L3 contract for such services, and produce L3 "approvals." But Cardinale's L3 entity (not a party here and then a Registered Investment Adviser with independent duties to maintain records) can hardly say that it needs anything from Titan or Sanders about those services *because the attachments to the Second Subpoena show that Cardinale already possess the invoices, ACH*

4

*payments, any purported "approvals," agreements, payments, periodic statements, and bank statements.*

Indeed, as Sanders states in his previously submitted declaration: "My consulting contract was prepared by Mr. Cardinale's attorneys at his corporate law firm in Manhattan and my invoices were provided as requested. There is no issue that I worked with him and quit any affiliation with him after I noticed improper attempts at his overbilling his clients and improperly failing to pay me in a timely manner. I left Mr. Cardinale and now after not speaking with him for nearly one year and going to work at the firm where Mr. Feingold is now CEO, I am subpoenaed to produce documents." [D.E. 50-1, at 2, ¶ 4]. Yet, this is not the end of Defendants' shenanigans.

On November 8, 2022, Defendants sought leave to file a Third-Party Complaint against Titan for common law indemnification [D.E. 73, 73-1]. In that proposed pleading, Cardinale now bizarrely claims that somehow Titan "is the party at fault" and if Cardinale is found responsible for "Titan Invoices, totaling $703,250.00" then Titan must indemnify Cardinale (not an L3 entity). [D.E. 73, 73-1 at ¶¶ 19 and 22]. Notably, there is no allegation of how Titan could possibly be "at fault" and, of course, it could not be at fault for something it was not involved with and had no knowledge of.

The recent Third-Party Complaint and Second Subpoena demonstrate exactly what Titan has been saying from the outset. Cardinale is improperly using subpoenas and now a threatened and baseless Third-Party Complaint to improperly harass Titan and Sanders. As pointed out in Feingold's declaration previously filed with this Court, Defendants are issuing subpoenas and using underhanded tactics towards anyone that does business with Feingold and/or Broadstreet and any of Feingold's business relationships. *See* Feingold Declaration attached to Sanders' initial declaration at D.E. 34-3 (at 3-6) and annexed hereto as Exhibit "F." *See also* D.E.s 30-3, 40 and

5

51-1. Cardinale's conduct here is similar to the gangster-like tactics that Cardinale seems to regularly employ, and is extremely alarming. Defendants' improper tactics should be rejected and the Second Subpoena quashed.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 45(d)(1) places a burden on the party issuing a subpoena "to take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." A court may quash a subpoena that subjects the receiving person to undue burden. *Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015). A subpoena that is facially overbroad, as here, imposes an undue burden and should be quashed, *Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1311 (SD Fla. 2015), and the discovery rules do not permit Defendants' fishing expedition. *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). Defendants did not comply with FRCP 45(d)(1) here and Titan has repeatedly been subjected to undue burden.

Furthermore, "[a]lthough Rule 45 does not identify irrelevance or overbreadth as grounds for quashing a subpoena, courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26." *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *3 (S.D. Fla. June 14, 2018). Courts must generally employ a liberal and broad scope of discovery, but that scope is not without limits. *Id.* Rule 26 requires that discovery be proportional to the needs of the case. Fed. R. Civ. P. 26(b). In determining proportionality, courts consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Here, Titan had

no involvement or knowledge of the "administrative expenses" issue or of any purported "pass throughs" that were also irrelevant to Titan as a consultant to L3.

"[T]he burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena, while the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant." *Coleman*, No. 18-MC-20182, at *3. To determine whether a subpoena imposes an undue burden, the Court must balance the requesting party's need for the discovery against the burden imposed upon the subpoenaed party. *Id.* "The objecting party must demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome." *Id.* Regarding the undue burden standard, courts in this district consider: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. *Id.* Indeed, the status of a person as a non-party is a factor that weighs against disclosure. *Schaaf v. SmithKline Beecham Corp.*, No. 3:06-CV-120-J-25TEM, 2006 U.S. Dist. LEXIS 54111, 2006 WL 22416, at *2 (M.D. Fla. Aug. 4, 2006). These considerations militate in favor of Titan and quashing the Second Subpoena.

A non-party may also invoke the inherent power of the Court to secure protection from discovery which seeks confidential or privileged information, or which would cause undue burden on the non-party, as is the case here. *Fadalla v. Life Automotive Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2011), *citing Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1322 (Fed.Cir.1990). F.R.C.P. Rule 45 provides that, upon a timely motion, the issuing court must

7

quash or modify a subpoena if it requires the disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects the party to undue burden. Fed.R.Civ.P. 45(d)(3)(A). *Id.* The Second Subpoena also improperly seeks privileged and confidential information.

**I.    THE SECOND SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS NOT PROPERLY SERVED, PROVIDES INSUFFICIENT TIME AND WAS SENT DURING THE DISCOVERY STAY**

Fed. R. Civ. P. 45(b) states that, "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 days' attendance and the mileage allowed by law." A subpoena directed to a corporation must be personally served on a corporate officer or other agent authorized under Fed. R. Civ. P. 4 to accept service of process. Defendants failed to personally serve the Second Subpoena on Titan's corporate officer, but rather merely provided notice to the undersigned counsel. Titan is a non-party that simply was never served, nor has it ever waived service. As such, the Second Subpoena is invalid and should be quashed.

Moreover, the Introductory Statement of the Local Rules provides that "it is a fundamental tenet of this Court that attorneys in this District be governed at all times by a spirit of cooperation, professionalism, and civility . . . [and] [i]t remains the Court's expectation that counsel will seek to accommodate their fellow practitioners, including in matters of scheduling, whenever reasonably possible and that counsel will work to eliminate disputes by reasonable agreement to the fullest extent permitted by the bounds of zealous representation and ethical practice." Defendants not only disregarded the service requirements of Fed. R. Civ. P. 45(b), but even assuming Defendants' service is proper upon counsel for Titan, Defendants made no efforts to coordinate dates for Titan's deposition which has been unilaterally set by Defendants for

November 29, 2022, in a complete disregard of the Local Rules of this Court. Based upon Defendants' disregard for the Court's rules and lack of service, the Second Subpoena should be quashed.

In addition, Defendants have again failed to even comply with even the very basic requirements of Rule 45. Rule 45(d)(3)(A)(i) requires the court to quash or modify a subpoena that fails to allow a reasonable time to comply. A party is normally entitled to 30 days' notice to produce documents. Fed. R. Civ. P. 30(b)(2), 34(b)(2). Titan objects to the Second Subpoena as it fails to provide sufficient time for Titan, a one-man show, to gather responsive documents, review the documents for privilege, work-product, confidentiality, trade secrets, and relevance as required by F.R.C.P. 45(d)(3)(A)(i).

Here, the Defendants issued the Second Subpoena on November 3, 2022, to the undersigned counsel for Titan, without any effort to cooperate regarding the scheduling of Titan's deposition and/or the timing of production of documents. Further, it requests the production of a of documents just nineteen (19) days after its issuance, and the deposition of the corporate representative of Titan on November 29, 2022, while the case is still in the early stages of discovery among the parties. "Rule 45 Subpoenas are not to be used as an "end-run" around the regular discovery rules that apply to parties, i.e. notices of deposition in Rule 30, or for production of documents in Rule 34." *See*, *Homes Land Affiliates v. Home Loans Magazine*, Case No. 6:07-cv-1051-Orl-28DAB (M.D. Fla. Sept. 8, 2008) (seven days notice was not reasonable for documents requested to be brought to a corporate representative deposition as required in the Federal Rules).

Moreover, Defendants' Second Subpoena to Titan is a blatant disregard of this Court's orders regarding the timing and sequence of discovery. On October 18, 2022, the Court entered an Order granting Plaintiffs' Motion for Order Concerning Timing and Sequence of Discovery

Under Fed R. Civ. P. 26(d)(3) [D.E. 60]. Prior to that, the Court stayed discovery [D.E. 40]. Yet despite the Court's stay of discovery, Defendants improperly served the Second Subpoena on counsel for Titan on November 3, 2022, prior to Defendants appearing for depositions and during the time the discovery stay was in place as ordered by this Court. Defendants' attempt to serve the Second Subpoena during the discovery stay is a clear violation of this Court's Order. As such, the Second Subpoena is invalid, and should be quashed.

## II.   THE SUBPOENA VIOLATES THE COURT'S PRIOR ORDER ON TITAN'S MOTION TO QUASH AND PROTECTIVE ORDER

This is Defendants second attempt at serving a subpoena on Titan. After being served with Defendants' first subpoena, Titan filed a Motion to Quash and for Protective Order [D.E. 34] on the basis that Defendants' first subpoena was, *inter alia*, overbroad, harassing, unduly burdensome, and irrelevant. On October 24, 2022, the Court entered an Order granting Titan's Motion to Quash and for Protective Order [D.E. 64]. The Order agreed with Titan and held that Defendants' previous document requests to Titan were overbroad, unduly burdensome, and irrelevant. The Court's order goes on to state that, "it is unclear whether Cardinale possesses this information given his active and multiple roles in the L3 entities; the subpoena contains no time limits; and the subpoena contains an overly broad request for the disposition of investments made by multiple entities. Titan Communications' status as a non-party also militates against requiring disclosure of the documents sought." *See* D.E. 64.

Now, Defendants have issued the Second Subpoena to Titan, which is another clear attempt to harass Titan as expected and evidenced by Titan's previously filed Motion to Quash [D.E. 34 and D.E. 50].

The Court provided Defendants a narrow future window for Titan, stating that any future subpoena "must be narrowly tailored to Defendants' stated defense regarding pass through payments to Titan Communications." Defendants have failed to comply the Court's directive.

As described, the very premise of the first and Second Subpoena is a total sham. Cardinale is well aware that neither Titan nor Sanders has any knowledge purported "pass throughs." In fact, there is not a single document request that uses those words. Instead, the Second Subpoena purports to seek (in Schedule B) documents that Cardinale already has as the attachments to the Second Subpoena show that Cardinale already possess the invoices, ACH payments, any purported "approvals," agreements, payments, periodic statements and bank statements.

The context of this Second Subpoena cannot be emphasized enough. First, Defendants issued a multitude of subpoenas to non-parties before *any* party discovery had taken place. Second, this Court previously quashed two of those subpoenas and there are currently motions to quash three additional subpoenas to non-parties in Federal court in South Carolina. Third, the Court found good cause to depose Defendants prior to any discovery. Fourth, Cardinale has not squarely disputed Feingold's assertions of Cardinale's improper tactics and motivation behind the Second Subpoena. Fifth, Cardinale is well aware that neither Titan nor Sanders has any knowledge with respect to his allegations concerning "administrative expenses" or "pass throughs." Sixth, Defendants have attached to the Second Subpoenas the documents they claim to be seeking by "composite" exhibits, including the invoices, ACH payments, any purported "approvals," agreements, payments, periodic statements and bank statements.

A few examples bear out Titan's assertions. Thus, Schedule B Request 3 of the Second Subpoena seeks proof that Titan actually received wire transfers *sent by L3*. Of course, L3 would know whether Titan received those wire transfers by reviewing its own statements. Request 4

seeks production of contracts and agreements "for such services" while simultaneously producing the various L3 agreements it claims "for such services." Requests 5 and 6 seek "approvals" for invoices to L3, payments made by L3 and services *that L3 itself contracted for*. Request 7 refers to "Exemplar Titan Approvals" apparently texted by Cardinale but not to Titan and that do not appear to relate to the L3 Capital Income Fund. Requests 8 through 14 are equally deficient and vague as they purport to seek every piece of paper to "Substantiate" services *for L3* and payments *by L3* by review of *L3's records* attached to the Second Subpoena. Significantly, Defendants purportedly seek substantiation of records Cardinale/L3 *itself produces* while there is not a single mention or request for purported "pass throughs."

Under the circumstances, although Defendants package and adorn this Second Subpoena differently, it remains facially overbroad, vague, unduly burdensome, and irrelevant to this Action. The Second Subpoena should once again be quashed as it is not narrowly tailored to Defendants' stated purpose regarding "pass through payments" as required by the Court's Order granting Titan's Motion to Quash and for Protective Order [D.E. 64].

**III. THE SECOND SUBPOENA BREACHES THE ARBITRATION PROVISION INCLUDED IN THE AGREEMENT BETWEEN TITAN AND L3 CAPITAL ADVISORS, LLC**

Defendants' harassment of Titan and Sanders is perhaps best demonstrated by their recent attempts to assert a Third-Party Complaint against Titan. In that proposed pleading, Cardinale claims that if he is found to be liable to Plaintiffs for "the $703,250 that Titan charged" "any damages suffered by Feingold and Dazzo are, at least partly, attributable to the actions of Titan, not Cardinale." [D.E. 73-1 at 3, ¶4]. Putting aside the absurdity and lack of any supporting allegations, the claim for common law indemnity fails as a matter of law because if it is only "partly" attributable to Titan no claim exists. *Am. Home Assurance Co. v. Weaver Aggregate*

12

*Transp., Inc.*, 990 F. Supp. 2d 1254, 1270 (M.D. Fla. 2013)(If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded.); *XPO Logistics, Inc. v. Malcomb*, 2021 NY Slip Op 303529U), *7 (Sup Ct NY County 2021)("With respect to the proposed common law indemnity claims, it is well established that "since the predicate of [such claims] is vicariously liability without actual fault on the part of the proposed indemnitee, it follows that the party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the doctrine" (*Trustee of Columbia Univ. v Mitchell/Giurgolas Assoc*, 109 A.D.2d 449, 453, 492 N.Y.S.2d 371 [1985])."). The lack of any supporting allegations as to Titan's purported fault and lack of any claim further demonstrates Defendants' continuing harassment of Titan.

Worse yet, Cardinale well knows that any dispute with Titan is subject to binding arbitration before JAMS. L3 Capital Advisors, LLC, a company controlled and managed by Cardinale, previously entered into an agreement with Titan for Titan to provide certain consulting services to L3 Capital Advisors.  The Agreement, which Defendants attach as Exhibit 6 to the Subpoena, between L3 Capital Advisors, LLC and Titan is dated December 9, 2019 (the "Agreement").  *See* Exhibit "A" at Exhibit 6.  Pursuant to paragraph 14.1 of the Agreement, any dispute, controversy, or claim arising out of or related to the Agreement, including, but not limited to, the services Titan agreed to provide pursuant to the Agreement, must be submitted to and decided by binding arbitration.

Since L3 Capital Advisors, LLC was the manager of the L3 Capital Income Fund, LLC, controlled and managed by Cardinale as the managing member, the arbitration provision in the Agreement must be enforced against on the basis that the entities involved are controlled by the same parties. *See Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633-34 (Fla. Dist. Ct. App.

2013)(fairness dictates that the party "cannot have it both ways" by relying on the arbitration clause when it works to its advantage and repudiating it when it works to its disadvantage); *332 E. 66th St., Inc. v. Walker*, 59 Misc. 3d 1216(A), 2018 NY Slip Op 50584(U), *5 (Sup Ct. NY County 2018).

Defendants' Second Subpoena, combined with the Third-Party Complaint, is a brazen attempt to circumvent the arbitration provision in the Agreement.  As such, the Second Subpoena should be quashed as any controversy between Titan and L3 Capital Advisors and the Defendants must be submitted to arbitration.

**IV.     THE DOCUMENTS REQUESTED BY THE SECOND SUBPOENA CONTAIN CONFIDENTIAL INFORMATION PROTECTED BY ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PRIVILEGE**

The Second Subpoena improperly seeks materials covered by the attorney-client privilege and/or attorney work product by virtue of Feingold's legal advice and counsel provided to Titan and Sanders, and further by the virtue of the existence of non-disclosure agreements entered into by Titan and/or Sanders that preclude Titan from disclosing documents requested by Defendants' Second Subpoena.

Titan served its Privilege Log on Defendants on November 17, 2022.  *See* Exhibit "B". The following documents requested by Defendants' Second Subpoena are covered by the attorney-client privilege and attorney work product, and therefore are protected from disclosure: (1) Any and all communications between Titan, its officers, directors, owners, employees, agents, and/or representatives and Plaintiff, David Feingold; (2) Any and all communications between Todd Sanders and David Feingold; (3) Any and all communications, documents and/or confidential information between Titan, its officers, directors, owners, employees, agents, and/or representatives and Broadstreet, Inc.; (4) Any and all communications, documents and/or confidential information between Todd Sanders and Broadstreet, Inc.; (5) Any and all

communications and documents that are subject to non-disclosure agreements entered into by Titan and/or Todd Sanders; and (6) Any and all communications and documents prepared by Titan, its officers, directors, owners, employees, agents, attorneys, consultants, and/or representatives in anticipation of litigation.

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice. . . ." *In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). Here, Feingold, a licensed attorney, has, and continues to provide legal counsel to Titan/Sanders and the scope of the Second Subpoena, including that Titan produce communications that it had with Feingold in relation to various matters set forth in the Second Subpoena must be quashed by the Court to avoid divulgence of privileged communications between attorney and client.

The Second Subpoena also seeks documents and information that clearly fall into the purview of attorney's work product which requires shielding from production on this basis. Thus, Federal Rule of Civil Procedure 45 provides that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter" or "subjects a person to [an] undue burden." Fed. R. Civ. P. 45(c)(3).

Moreover, there can been no showing by Defendants of a substantial need, undue hardship, and inability to obtain the information from another source. Federal Rules of Civil Procedure Rule 26(b)(1) provides: Unless otherwise limited by court order, the scope of discovery is as follows: <u>Parties may obtain discovery regarding any non-privileged</u> matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Attorney work product is privileged and non-discoverable. Federal Rules of Civil Procedure, Rule 26(b)(3)(A) provides that: Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Defendants cannot make this showing here. *See*, *Chen-Nuclear Systems, Inc. v. Arivec Chemicals, Inc.*, 978 F. Supp. 1105, 1107, (N.D. Ga. 1997) (If documents are relevant and prepared in anticipation of litigation by that other party's representative the material is discoverable only if the party seeking discovery has a substantial need for the materials is unable to obtain the substantial equivalent by other means). Federal Rules of Civil Procedure Rule 45(d)(3)(A)(iii) provides that on timely motion, the court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies (and none applies).

Here, the scope of the Second Subpoena is itself is calculated to sweep in materials which are privileged, without any exception or waiver. These materials are plainly protected from disclosure and not discoverable. The Second Subpoena should therefore be quashed to the extent it seeks privileged materials.

V. **THE SECOND SUBPOENA SHOULD BE QUASHED BECAUSE THE DOCUMENT REQUESTS ARE OVERLY BROAD, UNDULY BURDENSOME, VAGUE AND OPPRESSIVE AND SEEK IRRELEVANT INFORMATION**

The Second Subpoena should also be quashed because it is vague, overly broad, unduly burdensome and seeks irrelevant information. A protective order can issue "to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  If the moving party shows good cause, as here, the Court may impose specified terms and conditions on how discovery is conducted. *Id*.   In determining whether good cause exists, a Court should balance a party's interest in obtaining the discovery against the opposing party's interest in protecting the information. *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304 (11th Cir. 2001). The Court enjoys broad discretion in entering a protective order. *In re Alexander Grant & Co. Litig*., 820 F.2d 352 (11th Cir. 1987).  As demonstrated, the requests are overbroad, unduly burdensome, oppressive and irrelevant, particularly as the records are sought from a non-party to the Action without knowledge of matters possessed by Defendants prior to the parties to the case engaging in discovery amongst themselves.  Accordingly, for these reasons, Titan interests should be protected and the Second Subpoena should be quashed.

## VI.     DEFENDANTS' SECOND SUBPOENA WAS ISSUED SOLELY FOR THE PURPOSES OF HARASSMENT

Defendants' first subpoena to Titan was quashed, and now Defendants seek to add Titan as a party while simultaneously issuing Titan the Second Subpoena as a non-party. Defendants make a mockery of discovery by attempting to get information by treating Titan as a party on the one hand, and a non-party on the other hand, and while there is an arbitration provision requiring arbitration.

As discussed by in the multiple declarations of Titan and Feingold, Cardinale clearly threatened to harass persons affiliated with Feingold, including but not limited to Sanders, the Manager of Titan.  Despite filing opposition to Titan's initial Motion to Quash with his own declaration, Cardinale never disputed his threats to harass those affiliated with the Plaintiffs. Defendants' Second Subpoena to Titan is yet another attempt to harass Sanders and Titan due to their affiliation with Feingold.

17

**VII. THE SECOND SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS DOCUMENTS THAT CONTAIN CONFIDENTIAL BUSINESS AND COMMERCIAL INFORMATION AND TRADE SECRETS THAT SHOULD BE PROTECTED AND SHIELDED FROM DISCOVERY**

Compliance with the Second Subpoena by Titan would also cause it to divulge trade secrets and other confidential research, development, or commercial information to an avowed competitor and subject it to undue burden and expense. Such documents should not have to be produced by a non-party particularly under these circumstances. *See* F.R.C.P. 26(b)(5) and 45(d).

Pursuant to F.R.C.P. 45(d)(3)(B)(i), the Court should quash or modify the Second Subpoena that requires the disclosure of a trade secret or other confidential research, development or commercial information. In the present case, Defendants have issued a Second Subpoena to Titan which is specifically geared to the disclosure of protected material including, but not limited to, trade secrets and confidential commercial business information which are indirectly sought by the Second Subpoena's overreaching broadness.

Furthermore, by way of the Second Subpoena, Cardinale, a direct business competitor of Broadstreet (who employs Sanders), is attempting obtain testimony, documents and information from Titan, Sanders (and indirectly from Feingold) which are protected trade secrets or confidential business information, and would potentially require the disclosure of confidential and protected client lists, investor lists, payment information and other such information by which Cardinale is seeking to gain an unfair advantage in an effort to compete with and disparage Feingold's various business endeavors, including Broadstreet (a non-party). *See* Feingold Declaration attached to Sanders' initial declaration at D.E. 34-3 (at 3-6) and annexed hereto as Exhibit "F". *See also* D.E. 30-3, 40 and D.E. 51-1. A district court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial

18

information." Fed. R. Civ. P. 45(d)(3)(B)(i). *Jordan v. Com'r, Mississippi Dept. Of Corrections*, 947 F. 3d 1322 (11th Cir. 2020).

Titan has a significant interest in protecting its proprietary and confidential trade secrets, business dealings, financial records, accounting records and should not be required to produce them as a non-party to the Action simply because the Defendants requested the records with no showing whatsoever.

### VIII. CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth herein, this Court should quash the Second Subpoena served on Titan, and enter a protective order to protect privileged and confidential materials, and preventing the deposition of Titan's corporate representative, and production of the requested documents.

Dated: November 28, 2022                                        Respectfully Submitted,

**SKS LEGAL GROUP**
*Counsel for Titan Communications Group, LLC*
101 NE 3rd Avenue, Suite 1500
Fort Lauderdale, FL  33301
Telephone: (954) 637-3713

*/s/ Robert C. Streit, Esq.*
Robert C. Streit, Esq.
Fla. Bar No.: 70780
rstreit@skslegalgroup.com
Jordan C. Kay, Esq.
Fla. Bar No.: 56123
jkay@skslegalgroup.com
Justin S. Miller, Esq.
Fla. Bar No.: 96056
jmiller@skslegalgroup.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was filed on this 28th day of November, 2022, via the CM/ECF Federal Court Filing System, and served upon all counsel of record.

                                                  By:    */s/ Robert C. Streit*
                                                                      Robert C. Streit, Esq.
                                                                      Fla. Bar No.: 70780