# EXHIBIT 6
# To Cardinale's Opposition

Case 1:22-cv-20375-RKA Document 157-6 Entered on FLSD Docket 10/02/2023 Page 2 of 13

Shannon Pratt

# The Lawyer's Business Valuation Handbook

## Understanding Financial Statements, Appraisal Reports, and Expert Testimony

ABA
Section of Family Law
General Practice, Solo and Small Firm Section
American Bar Association

**Section of Family Law Publications Development Board**

Carlton D. Stansbury, Co-Chair
Kimberly A. Quach, Co-Chair
Jay Babbitt
Gail D. Baker
Frieda Gordon
Gregg Herman
Charles P. Kindregan
Mary K. McCusker

Cover design by Catherine Zaccarine.

The materials contained herein represent the opinions of the authors and editors and should not be construed to be the action of the American Bar Association, the Section of Family Law or the General Practice, Solo and Small Firm Section unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book and any forms and agreements herein are intended for educational and informational purposes only.

©2000 American Bar Association. All rights reserved.
Printed in the United States of America.

05 04 03 02 01 5 4 3 2 1

Library of Congress Cataloging-in-Publication Data

Pratt, Shannon P.
The lawyer's business valuation handbook: understanding financial statements, appraisal reports, and expert testimony/ Shannon Pratt
p. cm.
Includes bibliographical references and index.
ISBN 1-57073-829-7
1. Corporations—Valuation—Law and legislation—United States. 2. Appraisers—Legal status, laws, etc.—United States. 3. Evidence—United States. I. Title

KF1416.P73 2000
346.73'065--dc21 00-033143

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 750 North Lake Shore Drive, Chicago, Illinois 60611.

www.ababooks.org

Case 1:22-cv-20375-RKA Document 157-6 Entered on FLSD Docket 10/02/2023 Page 4 of 13



such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not disclosed." Other appropriate sanctions may be imposed at the discretion of the court.

### Jurisdictions That Follow and Deviate from FRCP 26(a)(2)

Only five jurisdictions—Alaska, Arizona, Colorado, New Hampshire, and the Virgin Islands—require a written report of an expert witness under rules similar or identical to FRCP 26(a)(2). Other jurisdictions require a written report of an expert witness:

- If demand is made (California and Nevada),
- If requested in discovery (South Carolina and Texas), or
- If an interrogatory is directed to the party who will call the witness (Illinois, Iowa, Maryland, New Jersey, and Pennsylvania).

Two other jurisdictions—Connecticut and Kansas—require a written summary of the opinion testimony to be given by the expert witness.

All of these jurisdictions provide for the sanction of not being able to use the expert's testimony at trial, at a hearing, or on a motion if the party does not comply with the written report or summary requirements.

The remaining jurisdictions do not require a written report or summary by an expert witness to be served upon or provided to other parties. However, each jurisdiction, with the exception of Oregon, provides parties with some discovery device to learn about an expert's opinion.

## Requests for Production of Documents and Entry for Inspection and Interviews

To perform a thorough business valuation, it is necessary for the business appraiser to review corporate and financial documents of the business to be valued, usually including articles of incorporation, bylaws, buy-sell agreements, financial statements, tax returns, and so on. Depending upon the nature of the business, it is often important for the business appraiser to view the business premises and interview management.

### Documents

Exhibit 4-1 is a typical documents and information request list. It should be modified to fit the specific situation.

## Exhibit 4-1
## Documents and Information Checklist

**Financial Statements**

- ❑ Balance sheets, income statements, statements of operations, and statements of stockholders' (owners') equity for the last five fiscal years (or other relevant period)
- ❑ Income tax returns for the same years
- ❑ Latest *interim* statements for comparable period(s) of previous year

**Other Financial Data**

- ❑ Summary property, plant, and equipment list and depreciation schedule
- ❑ Aged accounts receivable summary
- ❑ Aged accounts payable summary
- ❑ List of marketable securities and prepaid expenses
- ❑ Inventory summary, with any necessary information on inventory accounting policies
- ❑ Synopsis of leases for facilities or equipment
- ❑ Any other existing contracts (employment agreements, covenants not to compete, supplier agreements, customer agreements, royalty agreements, equipment lease or rental contracts, loan agreements, labor contracts, employee benefit plans, and so on)
- ❑ List of stockholders or partners, with number of shares (or units) owned by each
- ❑ Schedule of insurance in force (key-person life, property and casualty, liability)
- ❑ Budgets or projections, for a minimum of five years
- ❑ List of subsidiaries and/or financial interests in other companies
- ❑ Key personnel compensation schedule, including benefits and personal expenses

**Company Documents**

- ❑ Articles of incorporation, bylaws, or other organizational documents, and any amendments to such documents
- ❑ Any existing buy-sell agreements, options to purchase stock, or rights of first refusal
- ❑ Franchise or operating agreements, if any

**Other Information**

- ❑ Brief history, including how long in business and details of any changes in ownership and/or any bona fide offers recently received
- ❑ Brief description of the business, including position relative to competition and any factors that make the business unique
- ❑ Marketing literature (catalogs, brochures, advertisements, and so on)
- ❑ List of locations where company operates, with size and recent appraisals
- ❑ List of competitors, with location, relative size, and any relevant factors
- ❑ Organization chart

Exhibit 4-1 (continued)
Documents and Information Checklist

- ❑ Resumés of key personnel, with age, position, compensation, length of service, education, and prior experience
- ❑ Personnel profile: number of employees by functional groupings, such as production, sales, engineering/R&D, personnel and accounting, customer service/field support, and so forth
- ❑ Trade associations to which the company belongs or would be eligible for membership
- ❑ Relevant trade or government publications (especially market forecasts)
- ❑ Any existing indicators of asset values, including latest property tax assessments and any appraisals that have been performed
- ❑ List of customer relationships, supplier relationships, contracts, patents, copyrights, trademarks, and other intangible assets
- ❑ Any contingent or off-balance-sheet liabilities (pending lawsuits, compliance requirements, warranty or other product liabilities, estimate of medical benefits for retirees, and so on)
- ❑ Any filings or correspondence with regulatory agencies
- ❑ Information on prior transactions in the stock or any related-party transactions

Source: Willamette Management Associates

## Field Visit[1]

In the vast majority of appraisal assignments, it is desirable to have the appraiser visit the operating location(s). This firsthand visit to the operating premises usually can help the appraiser gain an understanding of the operation beyond what is possible in a "desktop" appraisal (one performed entirely on the basis of telephone interviews and a study of the documents). If expert testimony may be required, courts tend to place more credibility on the testimony of an appraiser who has visited premises of the company. Depending on the circumstances, the absence of management interviews and site visits can make a valuation more difficult.

Some lawyers and clients will try to stonewall the appraisers retained by the "outside" party (for example, nonoperating spouse, minority stockholder, damage plaintiff) from interviewing the "inside" party and management. However, this is the opportunity for "inside" parties to present their side of the story. To the extent that their story is credible, a good appraiser will take it into account.

1. This section was adapted with permission from SHANNON PRATT ET AL., VALUING SMALL BUSINESSES AND PROFESSIONAL PRACTICES (3d ed. 1998).

Most appraisers prefer to do interviews without lawyers present, because it usually results in more candid information-gathering. However, appraisers are accustomed to having lawyers present when they insist on it. It often is desirable for appraisers on both sides of a case to do site visits and management interviews together.

### Preparation

To the extent possible, the appraiser usually wants to review and analyze financial statements and as many documents as conveniently possible before the field trip. This way, the appraiser can (1) have an understanding of the business before arriving there and (2) be prepared with a list of general and specific questions that otherwise would have to be covered at some other time (or may even be overlooked).

### Mission

The kinds of information the appraiser will want to glean through the field visit are discussed in subsequent chapters. The field trip can be a convenient time to review some of the documents that would be cumbersome or inconvenient to supply to the appraiser away from the premises.

The field trip usually is an excellent time to interview owners and/or managers. The appraiser's physical presence on the premises may help to trigger relevant questions that may not occur to him or her back in the conference room or office. If interviews with several people are appropriate, it usually is more convenient to conduct them on the premises than away. Also, information usually is at hand for any questions management is unable to answer completely from memory.

### Confidentiality

Confidentiality is one problem that the appraiser frequently must handle carefully on field trips. There can be many good reasons for confidentiality. Experienced appraisers have learned to work around this problem. They can dress and act unobtrusively. If they have to be introduced or identified to someone who is not a confidant in the situation, they are "consultants," which is an accurate and adequately abstruse label.

As a last resort, the appraiser might visit the premises after working hours, when employees are not present. However, this will not give the appraiser as good a picture as would seeing the facility in operation.

All professional business appraisal organizations have provisions in their respective codes of ethics prohibiting dissemination of confidential information obtained during an appraisal assignment. Also, it is common for appraisers to

sign confidentiality agreements. If it is necessary to use confidential material at trial, most courts are accommodating to requests to put that portion of the record under seal.

### *Adversarial Proceedings*

Another problem that the appraiser sometimes faces is opposition to an adequate facilities visit (or sometimes any facilities visit at all) in the case of an adversarial proceeding. Undoubtedly, this problem most commonly occurs in appraisals being made for the purpose of property settlements in divorces.

In these circumstances, it is the responsibility of the client's lawyer to make the necessary arrangements for the appraiser to visit the facilities and interview the necessary people. Case law generally supports records as necessary to do the job properly.[2] The parties should understand that the field visit is a standard part of the appraiser's work. They should understand that the appraiser is neither an adverse party nor an advocate for either party. Rather, the appraiser has been retained to render an independent opinion about value. When using a reputable professional appraiser, the parties should not have to be concerned with confidentiality. Furthermore, the party who is in the adversarial position to the appraiser's client should welcome the opportunity to tell his or her side of the story to the appraiser.

If all discovery has to proceed through interrogatories and court orders, the process will be much more time-consuming, costly, and disruptive to the business operation. It is usually a good business decision for parties on both sides of a dispute to cooperate with independent appraisers.

## Federal Rule of Civil Procedure 34

A request for production of documents and for entry upon premises for inspection under FRCP 34 or the corresponding rule of your jurisdiction is the proper method of obtaining this vital information for your expert's use. The documents requested or the premises to be inspected must be in the possession or control of a party to the litigation. (If the needed material is not in the possession of a party to the litigation, see the section on subpoenas below.)

## Limitations on the Scope of Discovery

The scope of available discovery under FRCP 34 is limited by FRCP 26 to:

> any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or

2. This issue is discussed in BARTH GOLDBERG & JOSEPH N. DUCANTO, VALUATION OF DIVORCE ASSETS 41–45 (supplement 1994).

are valuation should
in at least the areas
*Valuation Guidebook*
sues that should be
appraisal.

uation

*2000*, including the
or Professional In-

1999. *Valuation of a*

-Changing Health
*uation*, Reilly and

## Appendix A

# Quick Review Checklist for Basic Requirements and General Report Quality

This appendix is designed to serve as a convenient checklist for initial review of a written business, professional practice, or intangible asset appraisal report. ***Permission is granted to make copies of this appendix to use in connection with report reviews*** (not for distribution or resale). This checklist has been adopted by the American Society of Appraisers as a guide for peer reviewers of reports submitted as part of the ASA accreditation process.

The checklist is presented more or less in the order that the material is typically found in appraisal reports, although order of presentation varies among reports. Some items are listed as either required or highly recommended by the Uniform Standards of Professional Appraisal Practice or by the standards of various business appraisal professional associations. These items are indicated, with the sections in which they appear, as follows:

| | |
|---|---|
| U | Uniform Standards of Professional Appraisal Practice |
| A | American Society of Appraisers Business Valuation Standards |
| I | Institute of Business Appraisers Standards |
| N | National Association of Certified Valuation Analysts Standards |

Contact information for obtaining copies of these standards is contained in Appendix E on Business Appraisal Professional Organizations.

Case 1:22-cv-20375-RKA Document 157-6 Entered on FLSD Docket 10/02/2023 Page 10 of 13



| | |
|---|---|
| U 9-2, U 10-2, N 3.1, N 3.2 | **IDENTIFICATION OF PROPERTY** |
| I 5.3 | ❑ Name of company |
| | ❑ State of incorporation or registration |
| A VIII-V, I 5.3, N 3.1 | ❑ Form of ownership (e.g., C Corp., S Corp., limited partnership, general partnership, etc.) |
| A VIII-IV, N 3.2 | ❑ Portion to be appraised (e.g., number of shares, percent general or limited partnership interest, etc.) |
| U 9-2, U 10-2, A VIII-IV, N 3.1 | **RELEVANT DATES**<br>Effective valuation date ________<br>Authority for date (e.g., statute, agreement, precedential case law, etc.)<br>________<br>________ |
| U 10-2, A VIII-IV, I 5.3, N 4.2 | Date report prepared ________ |
| | **DEFINITION OF VALUE** |
| A 1-11, N 3.1 | **Standard of Value**<br>❑ Fair market value<br>❑ Fair value<br>❑ Investment value (value to owner)<br>❑ Other ________ |
| U 9-2 | **Authority for Standard of Value**<br>Statute, buy/sell agreement, precedential case law, etc.<br>________<br>________ |
| | **PURPOSE OF APPRAISAL** |
| U 9-2, U 10-2, A I-II, A VIII-IV, I 5.3, N 3.1 | ❑ Is the purpose of the appraisal (use to which it is to be put) clearly stated? (e.g., gift tax, estate tax, charitable contribution or redemption, marital dissolution, ESOP, buyout of owner(s), issuance of new stock, dissenting stockholder suit, minority dissolution suit, etc.) |
| U 9-5 | ❑ Is the standard (definition) of value stated appropriate to the stated use of the appraisal? |

## ACTUAL OR ASSUMED OWNERSHIP CHARACTERISTICS

A VI-IV

**Marketability**

- ❑ Publicly Traded
- ❑ Closely Held
- ❑ Buy/sell agreement, put option, restrictions on transfer, or other marketability factors

U 9-2, A VI-IV

**Degree of Control (Level of Interest or Ownership)**

- ❑ 100%
- ❑ Less than 100%, but with some control

- ❑ 50%
- ❑ Minority
- ❑ Other control/lack of control characteristics

## BASIC COMPANY INFORMATION

U 9-4, A I-III, A VIII-V, N 3.2

- ❑ Brief history of company

U 10-2, N 3.2

- ❑ Major tangible and intangible assets
- ❑ Products/services
- ❑ Markets (industry and/or geographical)
- ❑ Competitive situation
- ❑ Management

A IV-III

- ❑ Capital structure (e.g., class of common stock, common and preferred stock, etc.). If more than one ownership class, the characteristic of each should be stated.
- ❑ Distribution of ownership (and important relationships)

U 9-4, A I-III A VIII-V

- ❑ Past transactions in the ownership of the company (or lack thereof)

Case 1:22-cv-20375-RKA Document 157-6 Entered on FLSD Docket 10/02/2023 Page 12 of 13



## ECONOMIC AND INDUSTRY OUTLOOK

U 9-4, A I-III, A VIII-V, N 3.2

- ❑ Economic outlook as of the valuation date

U 9-4, A I-III, A VIII-V, N 3.2

- ❑ Industry outlook as of the valuation date
  The main thing to look for here is whether the factors stated are relevant to the value of this company (versus boilerplate). It is even better if the relevance is pointed out.

## SOURCES OF INFORMATION

I 1.19

### Site Visits

- ❑ Yes (should specify what site or sites)
- ❑ No
- ❑ Undisclosed

I 1.19

### Management Interviews

- ❑ Yes (should specify what site or sites)
- ❑ No
- ❑ Undisclosed

### Economic and Industry Data

- ❑ Economic sources relied on
- ❑ Industry sources relied on

I 1.20

### Company Financial Statements

- ❑ Periods for which statements received
- ❑ Status of statements (e.g., audited, reviewed, externally compiled, internally compiled, etc.)

### Income Approach Data

- ❑ Sources of earnings estimates or projections (who made them, when, and for what purpose)
- ❑ Source(s) of cost of capital data (publications, online services, dates of publication, etc.)

### Market Approach Data

- ❑ Specification of population from which guideline market transactions drawn (this should include names of publications or databases utilized)
- ❑ Specification of criteria for selection of guideline companies
- ❑ Specification of sources for guideline company data

**Asset Approach Data**

N 3.9 — ❑ Sources of data for asset values relied on

I 1.8, N 4.2 — **Note:** One of the criteria being sought is **replicability;** that is, can the lawyer or judge hand the report to a competent appraiser who can independently check the accuracy and thoroughness of all the data provided.

## FINANCIAL STATEMENT ANALYSIS

**Financial Statement Adjustments**

A II-II, A II-III, A VIII-VI, N 3.5, N 4.2

- ❑ Is there adequate explanation of what adjustment were made to the company's financial statements, or an explanation of why none were necessary?
- ❑ Are the magnitudes of the adjustments adequately supported?
- ❑ If the market approach was used where guideline company financial statements were available (usually public companies), is there an adequate explanation or what adjustments were made to the guideline company statements, or an explanation of why none were necessary?

**Comparative Financial Statement Analysis**

A V-IV

- ❑ Have the company's financial ratios been compared with individual guideline companies and/or industry averages?

A V-III, A V-IV

- ❑ If so, have the accounting policies and definitions of ratios computed been put on a comparable bases between the subject company and the guideline companies and/or industry averages used for comparison?
- ❑ Are the strengths and weaknesses resulting from the financial analysis pointed out?
- ❑ Are the valuation parameters used (e.g., discount or capitalization rates in the income approach, multiples in the market approach) reasonable in light of the financial statement analysis strength and weaknesses?

## VALUATION METHODOLOGY

**Income Approach**

A IV, N 3.6, N 3.7

- ❑ Are the income variables used clearly defined (e.g., net cash flow to equity, net cash flow to invested capital, net income, pretax income, etc.)?
- ❑ Are the estimates of earnings or cash flows to be discounted or capitalized adequately supported as being representative of future earning power?