UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-20375-ALTMAN/Reid

**DAVID FEINGOLD**, *et al.*,

    *Plaintiffs*,

v.

**RICHARD CARDINALE**, *et al.*,

    *Defendants.*

_____/

## ORDER AFFIRMING MAGISTRATE JUDGE REID'S ORDER

Our Defendant, Richard Cardinale, objects to Magistrate Judge Reid's November 1, 2023, Order on Nonparty Motions to Quash Subpoenas Issued by Defendant Richard Cardinale ("Nov. 1, 2023, Order") [ECF No. 168]. In that Order, Magistrate Judge Reid granted four motions to quash nonparty subpoenas (*duces tecum* and *ad testificandum*)[1] on the ground that Cardinale's requests "impose[d] undue burden or expense on [the nonparties] subject to the subpoena." *Id.* at 17. Cardinale now says that Magistrate Judge Reid's Order "is clearly erroneous and contrary to law because it eviscerates Cardinale's due process right to respond to and dispute material factual allegations raised against him and ignores the plain and unambiguous language of the relevant operating agreements." Objections to Order on Nonparty Motions to Quash Subpoenas ("Objections") [ECF No. 200] at 1.[2] After careful review, we **OVERRULE** Cardinale's Objections and **AFFIRM** Magistrate Judge Reid's November 1, 2023, Order [ECF No. 168] in full.

---

[1] Those motions were filed by nonparties Durham Homes, LLC [ECF No. 143]; Blackstream, LLC [ECF No. 145]; Broadstreet, Inc. [ECF No. 146]; and Maxine A. Turner, CPA [ECF No. 149].

[2] The matter is fully briefed and ripe for adjudication. *See* Response in Opposition to Objection ("Response") [ECF No. 210]; Reply Memorandum in Support of Objection ("Reply") [ECF No. 211].

**THE FACTS**

Cardinale and two of the Plaintiffs, David Feingold and Michael Dazzo, "were co-equal equity owners in a number of business entities collectively known as the Alternative Global Companies" (the "AG Companies"). Nov. 1, 2023, Order at 1–2 (citing Second Amended Complaint [ECF No. 102] ¶ 16). As part of his agreement with Feingold and Dazzo to become an equal equity owner of the AG Companies, "Cardinale and his hedge fund, L3 Capital Income Fund, provided all record keeping, reporting, and 'complete back-office services' for the Alternative Global Companies"—and he then "bill[ed] these services as administrative expenses." *Id.* at 2 (citing Second Amended Complaint ¶ 18). To make a long (and complicated) story short, Feingold and Dazzo now accuse Cardinale of "bill[ing] the Alternative Global Companies more than $1.3 million dollars over the course of two years," even though Cardinale "was not performing as promised[.]" *Ibid.* The Plaintiffs "withdrew from the [AG Companies] in January 2022" and are now demanding (among other things) "the fair value of their membership interests in the Alternative Global Companies [DEL. CODE tit. 6, § 18-604] from Cardinale." *Id.* at 2–3.[3]

In August 2022, Cardinale and the other Defendants served Rule 45 subpoenas on four non-parties: Durham Homes, LLC; Blackstream, LLC; Broadstreet, Inc.; and Maxine A. Turner, CPA. *See* Notice of Compliance [ECF No. 138] at 1. All four of those nonparties moved to quash the subpoenas in four separate cases they filed in the U.S. District Court for the District of South Carolina. *See ibid.* Those South Carolina cases were ultimately transferred to us, and we consolidated them into our original lawsuit between the Plaintiffs and Cardinale. *See* Order of Consolidation [ECF No. 137] at 1–2. We then referred the motions to Magistrate Judge Reid. *See* Order of Referral [ECF No. 151] at 1.

---

[3] Although the Second Amended Complaint is no longer the operative complaint in this case, Feingold and Dazzo continue to seek fair value under Delaware law. *See* First Consolidated Complaint [ECF No. 252] at 57–58.

After reviewing the parties' submissions, Magistrate Judge Reid concluded that Cardinale's requested subpoenas constituted an undue burden on the nonparties. As an initial matter, Magistrate Judge Reid found that all four subpoenas suffered from the same flaw: that Cardinale failed to show "why the subpoenas are necessary to Cardinale's defense of the case." Nov. 1, 2023, Order at 7. Although Cardinale claimed that his nonparty subpoenas were necessary to "question the valuations" of the AG Companies, Magistrate Judge Reid determined that Cardinale "fail[ed] to establish relevance and a need for the evidence and documents he has requested from the Nonparties." *Ibid.*

In any event, in Magistrate Judge Reid's view at least, all four subpoenas presented additional problems. *First*, Magistrate Judge Reid found that the Durham Homes, LLC subpoena was "not narrowly tailored to Cardinale's argument that the disclosures will allow him to defend against Plaintiffs' fair value claim as of the date of Plaintiffs' resignation," because it would require Durham Homes "to disclose all of its planned distributions, financial results, cash flow projections, reinvestments, and tax records from July 2020 to [the] present[.]" *Id.* at 9–10. As a result, Magistrate Judge Reid said, the request "could encompass agreements unrelated to income streams for [the AG Companies]." *Id.* at 10. Magistrate Judge Reid also noted that Cardinale was "the remaining manager" and thus "already has access to the agreements and other documents related to the joint venture [between Durham Homes, LLC and the AG Companies]." *Id.* at 10.

*Second*, Magistrate Judge Reid concluded that the Blackstream, LLC subpoena "impose[d] an undue burden on the non-party"—and that, in any event, "Cardinale fail[ed] to show that Blacksteam, LLC even possesses or controls the [relevant] documents[.]" *Id.* at 12–13. Cardinale had argued that the requests were relevant because the AG Companies "invested at least $17,561,300 in wire transfers to Blacksteam Development, LLC's bank account," which was then used to "fund[ ] seven real estate projects owned by special purpose vehicles ('SPVs') and two restaurant investments in Culver's fast-food restaurants, in which the [AG Companies] received ownership interest." *Id.* at 11. But Magistrate

3

Judge Reid explained that "Cardinale *had* routinely received information related to the investments" before the Plaintiffs resigned from the AG Companies, and that Cardinale "fail[ed] to show a direct relationship between the AG [C]ompanies and Blackstream." *Id.* at 12, 14.

*Third*, Magistrate Judge Reid found that the subpoena directed at Broadstreet, Inc. was merely "a fishing expedition," since Cardinale sought documents from entities that were only *possibly* "connected to the [AG Companies'] investments" *without* regard to the "burdensome and duplicative" nature of these requests. *Id.* at 15–16. *Fourth*, as to Maxine Turner, Magistrate Judge Reid castigated Cardinale for failing "to identify with some reasonable specificity the information sought by the deposition of Ms. Turner" and noted that she could not "assess from Cardinale's bare assertion whether Ms. Turner's testimony is relevant to the fair value claim or if it would result in an undue burden." *Id.* at 16–17.

On November 21, 2023, Cardinale asked Magistrate Judge Reid to reconsider her November 1, 2023, Order quashing the four nonparty subpoenas. *See* Amended Motion to Reconsider Order on Nonparty Motions to Quash Subpoenas ("Motion for Reconsideration") [ECF No. 173]. Cardinale moved for reconsideration on five grounds: (1) that "Cardinale had no opportunity to respond to the Feingold Declaration," which was raised for the first time in the Reply, *id.* at 8–9; (2) that Magistrate Judge Reid "prematurely accept[ed]" the Plaintiffs' valuation of the AG Companies based off "an unsupported statement in a self-serving declaration," *id.* at 9; (3) that Magistrate Judge Reid incorrectly found that "Cardinale provided and agreed to Plaintiffs' Valuation in December 2021," *id.* at 10; (4) that Magistrate Judge Reid ignored the reality that, even if Cardinale had "agreed to Plaintiffs' valuation," this agreement is "immaterial" because Cardinale "must have the opportunity to pursue evidence to accurately calculate the values of [the AG Companies] as of the effective date of Plaintiffs' resignation in July 2022," *id.* at 13–14; and (5) that these errors "affected the Court's other reasons for granting the Motion to Quash," *id.* at 20.

Magistrate Judge Reid rejected all of Cardinale's arguments in a three-page order. *See* Order Denying Defendant's Amended Motion for Reconsideration ("Order Denying Motion for Reconsideration") [ECF No. 195]. Here's the relevant portion of that Order:

> Here, Defendant neither presents newly discovered evidence nor errors in law or fact. Defendant contends the sole basis for the undersigned's ruling was statements made for the first time in the Nonparties' Reply regarding the valuation of the Alternative Global Companies. In fact, Plaintiffs in Count 1 of the complaint seek payment for the fair value of their interest in the companies. Undoubtedly, Defendant is aware that valuation of the Alternative Global Companies is at issue and, as the Nonparties noted, Defendant "had every opportunity to oppose the [n]onparties' motions to quash and did so with an avalanche of materials and arguments." [ECF No. 181 at 6]. In any event, the undersigned carefully reviewed Defendant's subpoena and found the requests to be largely irrelevant to issue at bar, that being the fair market value of the Plaintiff Feingold's and Dazzo's interest in the Alternative Global Companies on the date of their resignations from the companies, and disproportional to the needs of the case.

*Id.* at 2. Unhappy with this result, Cardinale now objects to Magistrate Judge Reid's November 1, 2023, Order pursuant to FED. R. CIV. P. 72(a).

## THE LAW

"Pursuant to the Federal Magistrate's Act, a district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) (citing 28 U.S.C. § 636(b)(1)(A)); *see also* FED. R. CIV. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide . . . [t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). And "a routine pretrial discovery motion . . . is not included in [28 U.S.C. § 636(b)(1)(A)'s] list of dispositive motions." *Jordan*, 947 F.3d at 1327; *see also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1286 (11th Cir. 2003) ("We review the district court's rulings on discovery issues for abuse of discretion.").

This is an "exacting standard." *Cox Enters., Inc. v. News-J. Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Id.* at 1272 n.92 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). "In the absence of a legal error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge." *S.E.C. v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012) (Graham, J.) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990)). "A magistrate judge's order is 'contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bradford Emergency Grp., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2022 WL 4545177, at *1 (S.D. Fla. Sept. 29, 2022) (Singhal, J.) (quoting *Pigott v. Sanibel Dev., LLC*, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)).

## ANALYSIS

### I. Errors Affecting the Entire Order

Cardinale's primary objection to the November 1, 2023, Order is that it "includes two factually flawed and clearly erroneous findings which are contrary to law that permeate through the entire remainder of [Magistrate Judge Reid's] analysis[.]" Objections at 10. The first alleged error is the Order's (supposed) conclusion that Cardinale "accepted and ultimately created Plaintiffs' Valuation in December 2021." *Id.* at 11. Cardinale posits that Magistrate Judge Reid wrongly came to this conclusion by considering the Feingold Declaration, but Cardinale says that this declaration "is not supported by any independent documentation." *Ibid.* Moreover, Cardinale continues, the Plaintiffs only mentioned the probative value of the Feingold Declaration for the first time in reply—so Magistrate Judge Reid shouldn't have considered this new argument without (at a minimum) allowing Cardinale to file a sur-reply. *See id.* at 14 ("Rather than disregarding the Replies' new representations and arguments, the Order Granting Motions to Quash accepted them, treated them as uncontested, and concluded that Cardinale's Subpoenas sought unnecessary information. Making such material

6

factual findings without providing Cardinale an opportunity to respond or dispute them violated Cardinale's due process rights and is contrary to law."). The second alleged error is much simpler: Cardinale says that Magistrate Judge Reid "[a]ppl[ied] the wrong effective date for Plaintiffs' withdrawal[.]" *Id.* at 16. We find both arguments unpersuasive.

*First*, Magistrate Judge Reid *never* found "that Cardinale undisputedly accepted and ultimately created Plaintiffs' Valuation[.]" Response at 7 (cleaned up). Instead, Magistrate Judge Reid entertained two possibilities and determined that—whichever one was true—Cardinale's nonparty subpoenas were too broad and sought irrelevant information. "*If*," Magistrate Judge Reid began (introducing the first possibility), "Cardinale in fact confirmed [that] 'Plaintiffs' Valuation' reflected his own records and valuation of the businesses at that time and neither party contests its accuracy, it is not clear why the subpoenas are necessary to Cardinale's defense of the case." Nov. 1, 2023, Order at 7 (emphasis added). This, of course, is the part Cardinale harps on. But, over the next nine pages (*see generally id.* at 8–17), Magistrate Judge Reid *also* entertained the *opposite* assumption—that Cardinale *didn't* accept the Plaintiffs' evaluation and *still* needed additional evidence "to determine the fair market value of [the Plaintiffs'] interest in the [AG Companies] as of the date of their resignation from the companies," *id.* at 7. Cardinale is thus simply wrong to suggest that Magistrate Judge Reid found "that Cardinale accepted and ultimately created Plaintiffs' Valuation in December 2021." Objections at 11. Magistrate Judge Reid instead took the prudent (and correct) course of analyzing Cardinale's request under *both* potential scenarios—one in which Cardinale accepted the Plaintiffs' Valuation *and* the other in which he did not.[4]

---

[4] Since Magistrate Judge Reid never found that Cardinale accepted (and/or created) the Plaintiffs' Valuation, we need not address Cardinale's related argument that this finding was improperly predicated on the Plaintiffs' reply memorandum. *See* Objections at 14 ("Rather than disregarding the Replies' new representations and arguments, the Order Granting Motions to Quash accepted them, treated them as uncontested, and concluded that Cardinale's Subpoenas sought unnecessary information."). But even if Magistrate Judge Reid had relied on arguments the Plaintiffs raised for the first time in their Reply, we would have found this error harmless. *See Skanska USA Civil Se. Inc. v.*

7

*Second*, Magistrate Judge Reid didn't clearly err when she concluded that January 28, 2022, was the effective date of the Plaintiffs' withdrawal from the AG Companies. Cardinale says that this end date flies in the face of the "Operating Agreements' unambiguous language[,]" Objection at 16, which provides that "[a]ny Member may withdraw from the Company upon six months written notice to each remaining Member[,]" Operating Agreement [ECF No. 200-2] at 2. But Cardinale *admitted* in his deposition that the Plaintiffs resigned from the AG Companies "[s]ometime in January of 2022." Cardinale Deposition Excerpt [ECF No. 181-2] at 3. And, in his sworn declaration, Cardinale reaffirmed that the Plaintiffs resigned on January 28, 2022. *See* Cardinale Declaration [ECF No. 173-1] ¶ 10 ("On January 28, 2022, Plaintiffs resigned as managers and withdrew as members from [the AG Companies]."). On top of that, Cardinale's lawyers have *conceded* that the Plaintiffs' withdrawal became effective on January 28, 2022. *See, e.g.*, Memorandum in Opposition to Blackstream, LLC's Motion to Quash [ECF No. 156] at 6 ("On January 28, 2022, Plaintiffs resigned as Alternative Global Managers, and Mr. Cardinale became the Companies' sole member and Manager."); Excerpt of Arbitration Proceedings [ECF No. 181-4] at 5 ("Now, very, very importantly, and this again is undisputed, there can be no dispute, [Feingold's] resignation as a member/manager of [the AG Companies] happened on January the 28th of 2022."). Given Cardinale's prior admissions, Magistrate Judge Reid didn't clearly err in finding that the Plaintiffs' withdrawal from the AG Companies became effective on January 28, 2022.

---

*Bagelheads, Inc.*, 75 F.4th 1290, 1309 (11th Cir. 2023) ("And even a clearly erroneous evidentiary ruling will be affirmed if harmless. An error is harmless unless it affects the substantial rights of the parties such that the reviewing court cannot confidently say that the judgment was not substantially swayed by the error." (cleaned up)). After all, Magistrate Judge Reid determined that the nonparty subpoenas were *still* overbroad, *even if* Cardinale needed evidence "to determine the fair market value of [the Plaintiffs'] interest in the [AG Companies] as of the date of their resignation from the companies[.]" Nov. 1, 2023, Order at 7.

**II.     Individual Errors as to Each Subpoena**

In addition to arguing that Magistrate Judge Reid made two "factually flawed and clearly erroneous findings" that infected her *entire* November 1, 2023, Order, Cardinale insists that the "other grounds underpinning the [Order] are clearly erroneous and contrary to law." Objections at 17. We disagree.

Magistrate Judge Reid quashed all four subpoenas under Federal Rule of Civil Procedure 45(d). *See* Nov. 1, 2023, Order at 4–5. That rule requires the "party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Rule 45(d)(3) provides both mandatory and discretionary grounds for quashing a subpoena. *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1335 (11th Cir. 2020) ("Rule 45(d)(3) provides several potential grounds for quashing the GDC subpoena: some of them mandatory and some discretionary."). A subpoena *must* be quashed if it: (1) "fails to allow a reasonable time to comply"; (2) "requires a person to comply beyond the geographical limits specified in Rule 45(c)"; (3) "requires the disclosure of privileged or other protected matter"; or (4) "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(i)–(iv). The subpoena *may* be quashed if: (1) it requires the disclosure of "a trade secret or other confidential research, development, or commercial information"; or (2) it requires the disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." FED. R. CIV. P. 45(d)(3)(B)(i)–(ii).

Magistrate Judge Reid found that all four nonparty subpoenas should be quashed because Cardinale failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Nov. 1, 2023, Order at 17. That the subpoenas were addressed to nonparties is an important factor that weighs against disclosure. *See Jordan*, 947 F.3d at 1337 ("The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden

inquiry." (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004))). But this isn't the only dispositive factor under Rule 45(d). The undue-burden analysis requires us to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Ibid.* (quoting 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed. 2019)). Put another way, we must weigh "the relevance of the information requested to the underlying litigation and the burden that would be imposed by producing it." *Ibid.* (cleaned up); *see also TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 9988745, at *2 (S.D. Fla. June 9, 2017) (Torres, Mag. J.) ("Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." (cleaned up) (quoting *Wiwa*, 392 F.3d at 818)); *Va. Dep't of Corr. v. Jordan*, 2017 WL 5075252, at *5 (E.D. Va. Nov. 3, 2017) ("In order to avoid imposing an undue burden, third-party subpoenas, like the one before the Court, must be narrowly crafted to relevant subject matter in the underlying litigation." (cleaned up)). Despite Cardinale's objections, we find that Magistrate Judge Reid neither clearly erred nor misapplied the law in quashing these subpoenas.

*First*, we find that Cardinale's objections with respect to the Durham Homes, LLC and Blackstream, LLC subpoenas are now moot. At the time of the November 1, 2023, Order, both of these entities were nonparties, and Magistrate Judge Reid's legal analysis was premised on the fact that Cardinale's subpoenas placed an undue burden on those nonparties. *See* Nov. 1, 2023, Order at 7 ("In determining whether the subpoenas subject the Nonparties to undue burden, the court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. . . . Moreover, as discussed below, the movants' status as a nonparty weighs against disclosure, and the subpoenas are overly broad and burdensome on their face."). As of September 11, 2024, however, both Durham Homes and Blackstream are now Plaintiffs in this case. *See* First Consolidated Complaint [ECF No. 252] ¶¶ 8–9 (listing Durham Homes and Blackstream as Plaintiffs).

10

With Durham Homes and Blackstream in the case, Cardinale doesn't need these subpoenas because he can just propound party-to-party discovery on them. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) ("Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses. Indeed, Rule 26 of the Federal Rules of Civil Procedure imposes 'an affirmative duty to engage in pretrial discovery in a responsible manner.'" (quoting FED. R. CIV. P. 26(g) advisory committee's notes)). Cardinale's objections about the Durham Homes and Blackstream subpoenas are thus moot. *See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) ("Any decision on the merits of a moot case or issue would be an impermissible advisory opinion."); *cf. Jordan*, 947 F.3d at 1337 ("The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry.").

*Second*, as to Broadstreet, Magistrate Judge Reid appropriately found that Cardinale was engaging in a fishing expedition. As Magistrate Judge Reid explained, Cardinale simply alleged that Broadstreet has documents that are "*possibly* connected to [the AG Company's investments], including Blackstream, and apparently, the seven real estate SPVs." Nov. 1, 2023, Order at 15–16. She also found that Cardinale failed to produce evidence "that Broadstreet has control over the requested documents." *Id.* at 16. While Cardinale insists that "he has good reason to believe Broadstreet is holding assets that (1) belonged to AG 1-6 but are now held by Broadstreet's; and/or (2) were purchased with AG 1-6's funds," Objections at 21–22, he never tells us what this "good reason" is— nor does he do anything to rebut Magistrate Judge Reid's reasonable concern that Broadsteet doesn't *actually* possess or control these documents. Since Cardinale doesn't explain *why* or *how* Magistrate Judge Reid erred, we agree with her that the Broadstreet subpoena would (at best) constitute a "fishing

expedition" for documents that are only possibly relevant and which would unduly burden Broadstreet. *See Gould v. Transamerica Life Ins. Co.*, 2012 WL 13048567, at *8 (S.D. Ala. Sept. 21, 2012) ("Plaintiff's fishing expedition for such irrelevant information cannot be allowed given the onerous burden of responding to such requests[.]").

*Third*, Cardinale hasn't shown that Magistrate Judge Reid erred in quashing the subpoena against Maxine Turner. Ms. Turner is "an accountant who works for Blackstream Development, LLC." Nov. 1, 2023, Order at 16. Magistrate Judge Reid wrote that Cardinale "did not identify the information sought from Ms. Turner[.]" *Ibid.*; *see also ibid.* ("Cardinale, however, fails to identify or describe said documents or the nature of the questions he intends to ask."). Cardinale also failed to allege that Ms. Turner possessed relevant knowledge, especially since Cardinale admitted "that he received financial information regarding the Blackstream SPVs before Plaintiffs' resignation[.]" *Id.* at 17. Cardinale's sole counterargument is that he'd previously identified the questions he was going to ask Ms. Turner. *See* Objections at 22 ("Cardinale's Response to Turner's Motion to Quash explained that he sought to question Turner regarding (1) Blackstream's Management Reports, which she prepared, reviewed, and approved, and (2) the interests held by AG 1-6."). Assuming this is true, Cardinale still fails to rebut Magistrate Judge Reid's other findings that Cardinale already "possesse[d] many of the documents or similar documents that will be the subject of Ms. Turner's testimony" and that Cardinale failed to explain how Ms. Turner's testimony was relevant. Nov. 1, 2023, Order at 16–17. And (it goes without saying) requesting duplicative and irrelevant information imposes an undue burden on a nonparty. *See Jordan*, 947 F.3d at 1329 ("Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."); *Belniak v. Fla. Highway Patrol*, 2013 WL 12177834, at *1 (M.D. Fla. May 7, 2013) (Pizzo, Mag. J.) ("A court must limit the extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit[.]" (cleaned up)).

In his Objections, Cardinale complains that Magistrate Judge Reid's Order deprived him "of the right to seek evidence to rebut Plaintiffs' valuation claim" under Delaware law. Objections at 16. That's just hyperbole. It's true that Magistrate Judge Reid refused to give Cardinale unbounded discretion to seek *any* information from *any* person or entity, but Rule 45(d) requires us to enforce a party's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." FED. R. CIV. P. 45(d)(1). And, contra Cardinale's position here, Magistrate Judge Reid's limited Order *doesn't* permanently deprive him of the ability to find and present evidence to counter the Plaintiffs' valuation. Magistrate Judge Reid merely prevented Cardinale from serving overbroad and burdensome subpoenas on nonparties *without* satisfying Rule 45(d)'s relatively lenient standard. *See, e.g.*, Nov. 1, 2023 Order at 16 ("Not only are the requests burdensome and duplicative, but they might be futile as it is not clear from the exhibits filed in support of the subpoena that Broadstreet has control over the requested documents."); *id.* at 17 ("Cardinale refuses to take such steps by failing to identify the information sought or the documents he claims would be the basis of the deposition. The Court cannot assess from Cardinale's bare assertion whether Ms. Turner's testimony is relevant to the fair value claim or if it would result in an undue burden.").[5] And Magistrate Judge Reid wasn't entitled to ignore the Federal Rules of Civil Procedure simply because, when compared with state law, they impose tighter discovery constraints. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980) ("This is not to suggest that the Federal Rules of Civil Procedure are to be narrowly construed in order to avoid a 'direct collision' with state law."); *Gasperini v. Ctr. for Humanities,*

---

[5] Indeed, nothing in Magistrate Judge Reid's Order *precludes* Cardinale from serving nonparty subpoenas (even as to Broadstreet and Ms. Turner), so long as he narrows the scope of his requests and shows that the nonparties *actually* possess or control information that's relevant to the claims or defenses.

13

*Inc.*, 518 U.S. 415, 427 n.7 (1996) ("It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law.").

\* \* \*

After careful review, therefore, we **OVERRULE** Cardinale's Objections [ECF No. 200] and **AFFIRM** Magistrate Judge Reid's November 1, 2023, Order [ECF No. 168] in full.

**DONE AND ORDERED** in the Southern District of Florida on December 16, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record