**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

David Feingold, *et al.*,

      Plaintiffs,

v.

Richard Cardinale, *et al.*,

      Defendants.

Case No. 1:22-cv-20375-RKA

## MOTION TO DISMISS FIRST CONSOLIDATED COMPLAINT[1]

---

[1] The Motion [DE 263] is refiled pursuant to [DE 340].

**TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ........................................................................................ 1

MEMORANDUM OF LAW ................................................................................................... 3

I.      Plaintiffs Lack Standing on all Counts ...................................................................... 3

        A.      Count I: Declaratory Judgment ..................................................................... 4
        B.      Count II: Payment of Fair Value .................................................................... 5
        C.      Count III: Breach of Fiduciary Duty .............................................................. 6
        D.      Count IV: Conversion .................................................................................... 6
        E.      Counts V–VIII: Fraudulent Misrepresentation & Conspiracy to Commit
                Fraud ............................................................................................................ 7
        F.      Count IX: Aiding and Abetting Breach of Fiduciary Duty ............................... 7
        G.      Count X: Unjust Enrichment .......................................................................... 7

II.     Plaintiffs Fail to State a Claim ................................................................................. 7

        A.      Count I: Declaratory Judgment ..................................................................... 8

                1.      AGM Does Not Own the LLCs. ............................................................ 9
                2.      The Actions Do Not Violate Cardinale's Duty of Loyalty. ..................... 10

        B.      Count II: Payment of Fair Value .................................................................... 12
        C.      Count III: Breach of Fiduciary Duty .............................................................. 13
        D.      Count IV: Conversion .................................................................................... 13
        E.      Counts V & VI: Fraudulent Misrepresentation ............................................... 13
        F.      Counts VII & VIII: Conspiracy to Commit Fraud ........................................... 14
        G.      Count IX: Breach of Fiduciary Duty .............................................................. 16
        H.      Count X: Unjust Enrichment .......................................................................... 17

III.    Counts II–X are Shotgun Pleadings. .......................................................................... 18

IV.     This Court Should Abstain in Favor of the AGM Dissolution. ....................................... 18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeniji v. Fla. State Coll.*,
No. 3:14-cv-252, 2024 WL 5437059 (M.D. Fla. 2014)............................................................19

*Advanced Magnet Lab v. Meinke*,
No. 6-20-cv-712-Orl-37EJK, 2020 U.S. Dist. LEXIS 254314 (M.D. Fla. Nov.
24, 2020) ................................................................................................................................16

*Agspring Holdco, LLC v. NGP X US Holdings, L.P.*,
No. 2019-0567-AGB, 2020 WL 4355555 (Del. Ch. July 30, 2020)..................................15, 16

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ...............................................................................................15

*Arbitrage Fund v. Petty*,
307 So. 3d 119 (Fla. 3d DCA 2020) ..........................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................7, 8

*B-Smith Enter., LP. v. Bank of Am., N.A.*,
No. 22-11383, 2023 U.S. App. LEXIS 3721 (11th Cir. Feb. 16, 2023) ...................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................7, 8

*Bocock v. Innovate Corp.*,
No. 2021-0224-PAF, 2022 Del. Ch. LEXIS 307 (Del. Ch. Oct. 28, 2022) ............................15

*Boyd v. Ga.*,
512 F. App'x 915 (11th Cir. 2013) ..........................................................................................19

*Cardenas v. Toyota Motor Corp.*,
418 F. Supp. 3d 1090 (S.D. Fla. 2019) ....................................................................................8

*Cave v. Stone*,
No. 20-61955-CIV, 2021 U.S. Dist. LEXIS 183993 (S.D. Fla. 2021) ....................................18

*Christoff v. Ingelese*,
No. 2:20-cv-546-SPC-NPM, 2022 WL 1132854 (M.D. Fla. Jan. 11, 2022)............................4

*Clopton v. Bird Rides, Inc.*,
No. 1:19-CV-1728, 2022 WL 18584562 (N.D. Ga. Jan. 12, 2022)........................................19

*CML V, LLC v. Bax*,
28 A.3d 1037 (Del. 2011) .......................................................................................11, 13, 16

*Crow v. Context Indus.*,
260 So. 2d 865 (Fla. 3d DCA 1972) .........................................................................................4

*Day v. Taylor*,
　400 F.3d 1272 (11th Cir. 2005) ...................................................................................8

*Delgado v. Rutledge*,
　No. 22-cv-23435, 2024 U.S. Dist. LEXIS 58080 (S.D. Fla. Mar. 29, 2024)...........................15

*Doehler N. Am., Inc. v. Davis*,
　No. 22-00501-RGA, 2022 WL 2785969 (D. Del. July 15, 2022) ..............................................4

*F&F Invs. Grp. v. Case (In re Case)*,
　636 B.R. 852 (Bankr. S.D. Fla. 2022) .............................................................8, 14, 15

*Farmworker Ass'n of Fla., Inc. v. DeSantis*,
　No. 23-cv-22655-CIV, 2023 U.S. Dist. LEXIS 227415 (S.D. Fla. Dec. 21,
　2023) ...................................................................................................................3

*Galan v. Barclay's Bank Del.*,
　No. 14-cv-23446, 2014 WL 12029368 (S.D. Fla. Dec. 29, 2014)...........................................19

*Gilson v. Flagler Bank*,
　303 So. 3d 999 (Fla. 4th DCA 2020) ...........................................................................15

*Harvey v. Fla. Health Scis. Ctr., Inc.*,
　No. 17-14406, 728 Fed. App'x 937, 2018 U.S. App. LEXIS 7215 (11th Cir.
　Mar. 20, 2018)...................................................................................................17

*Ismail v. Arthritis Relief Plus, Ltd.*,
　No. 05-21506-CIV, 2006 U.S. Dist. LEXIS 102754 (S.D. Fla. Apr. 6, 2006)....................4, 6

*Jackson v. Bank of America, N.A.*,
　898 F.3d 1348 (11th Cir. 2018) ...................................................................................18

*Lawrie v. Ginn Dev. Co., LLC*,
　656 F. App'x 464 (11th Cir. 2016) ........................................................................14, 15

*Marrache v. Bacardi U.S.A., Inc.*,
　11 F.4th 1084 (11th Cir. Nov. 8, 2021) ......................................................................17

*Martin Energy Servs., LLC v. M/V Bravante IX*,
　233 F. Supp. 3d 1269 (N.D. Fla. 2017)........................................................................9

*Mayer v. Carnival Corp.*,
　No. 24-cv-20160, 2024 U.S. Dist. LEXIS 39101 (S.D. Fla. Mar. 6, 2024)........................7, 8

*McRitchie v. Zuckerberg*,
　315 A.3d 518 (Del. Ch. 2024)....................................................................................11

*Morris v. Zimmer*,
　637 F. App'x 654 (2d Cir. 2016), *cert. denied*, 580 U.S. 873 (2016)....................................11

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983)..............................................................................................18, 19

*In re Opus E., L.L.C.*,
　480 B.R. 561 (Bankr. D. Del. 2012) ...........................................................................6

*In re Oracle Corp. Deriv. Litig.*,
   No. 2017-0337-SG, 2020 WL 3410745 (Del. Ch. June 22, 2020) ...........................................16

*Oralco, Inc. v. Bradley*,
   No. 12763, 1992 WL 373041 (Del. Ch. Dec. 17, 1992)........................................................10

*Otto Candies, LLC v. Citigroup, Inc.*,
   No. 1:16-cv-20725, 2023 U.S. Dist. LEXIS 168612 (S.D. Fla. Aug. 25, 2023) .....................15

*Poitevint v. United Recovery Sys., LP*,
   899 F. Supp. 2d 1230 (N.D. Fla. 2012)..................................................................................9

*Pro Premium Fin. Co. v. U.S. Premium Fin. Serv. Co., LLC*,
   No. 16-cv-60009, 2016 WL 6248599 (S.D. Fla. Oct. 26, 2016) ...............................................3

*Rivera de Chavon Dev. Grp. SRL v. Diaz*,
   No. 11-20662-CV, 2011 WL 5825770 (S.D. Fla. Nov. 17, 2011) ..........................................19

*Rooney v. Camden Prop. Trust*,
   No. 23-cv-23951, 2024 U.S. Dist. LEXIS 22199 (S.D. Fla. Feb. 8, 2024) ............................17

*Russ v. Jackson Cnty. Sch. Bd.*,
   530 F. Supp. 3d 1074 (N.D. Fla. 2021).................................................................................3

*S&A Prop. Inv. Servs., LLC v. Garcia*,
   360 So. 3d 432 (Fla. 3d DCA 2023) ....................................................................................6

*Sherman v. Ragan*,
   388 So. 3d 1034 (Fla. 3d DCA 2024) .................................................................................17

*Sloan v. Shatner*,
   No. 8:17-cv-332-T-27AAS, 2018 U.S. Dist. LEXIS 138485 (M.D. Fla. Jun.
   22, 2018) .............................................................................................................................18

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)...........................................................................................................19

*Stanton v. Paine Webber Jackson & Curtis, Inc.*,
   685 F. Supp. 1241 (S.D. Fla. 1988) ...................................................................................19

*State Farm Mut. Auto. Ins. Co. v. First Choice Chiropractic & Rehab Ctr., Inc.*,
   No. 8:20-cv-330, 2020 WL 5583516 (M.D. Fla. Aug. 17, 2020)............................................8

*Stone & Paper Inv'rs, LLC v. Blanch*,
   No. 2018-0394-PAF, 2020 WL 3496694 (Del. Ch. June 29, 2020)...................................6, 13

*Taylor v. Appleton*,
   30 F.3d 1365 (11th Cir. 1994) ............................................................................................18

*Timko v. Triarsi*,
   898 So. 2d 89 (Fla. 5th DCA 2005).......................................................................................5

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ...................................................................................................4

*Turner v. Williams*,
   65 F.4th 564 (11th Cir. 2023) .....................................................................................8, 9, 18

iv

*United States v. All Funds in the Account of Property Futures, Inc.*,
    820 F. Supp. 2d 1305 (S.D. Fla. 2011) ...............................................................4, 5, 6

*In re Universal Serv. Fund Telephone Billing Practices Litig.*,
    370 F. Supp. 2d 1135 (D. Kan. 2005) ...................................................................19

*Valley Forge Christian Coll. v. Am. United for the Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)...............................................................................................3

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) ............................................................................17

*Walker v. Figarola*,
    59 So. 3d 188 (Fla. 3d DCA 2011) .......................................................................13

*Warth v. Seldin*,
    422 U.S. 490 (1975)...............................................................................................3

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ............................................................................18

*William Penn P'ship v. Saliba*,
    13 A.3d 749 (Del. 2011) ........................................................................................11

*Williams v. Capital One Bank (USA), N.A.*,
    785 F. App'x 741 (11th Cir. 2019) ........................................................................9

*Wireman v. Park Nat'l Corp.*,
    No. 20-14096, 2021 U.S. App. LEXIS 21351 (11th Cir. July 20, 2021) ............14, 15

**Statutes**

28 U.S.C. § 1651..............................................................................................................2

6 Del. C. § 18-604........................................................................................................5, 9, 12

6 Del. C. § 18-701.............................................................................................................6

Fla. Stat. § 605.0110 ........................................................................................................6

Fla. Stat. § 605.04091 ......................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 8...............................................................................................................7

Fed. R. Civ. P. 9...........................................................................................................8, 14, 15, 16

Fed. R. Civ. P. 12..........................................................................................................1, 18

Fed. R. Civ. P. 17............................................................................................................3

Richard Cardinale ("Cardinale"), Vania Cardinale ("Mrs. Cardinale"), RVCNY, LLC ("RVCNY"), and RVCSI, LLC ("RVCSI") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6), move to dismiss David Feingold ("Feingold"), Michael Dazzo ("Dazzo"), and Blackstream Development, LLC ("Blackstream") (collectively, "Plaintiffs") First Consolidated Complaint [DE 252 ("FCC")][2] as follows:

## SUMMARY OF THE ARGUMENT

The FCC is a hodgepodge of mutually exclusive theories and claims that seek to subvert Cardinale's efforts to recover tens of millions of dollars that Plaintiffs converted from nearly 100 individual investors. Cardinale was the first victim of Plaintiffs' scheme, and neutralizing Cardinale's recovery efforts to recover what they converted is essential for Plaintiffs to continue their scheme. Plaintiffs' mutually exclusive positions in the FCC—and throughout the life of this case—are glaring and require that the FCC be dismissed in its entirety.

After litigating this case for over two years under the premise that Feingold and Dazzo withdrew as members of six Delaware limited liability companies[3] (collectively, "LLCs") on January 28, 2022 (the "Withdrawal Date"), Feingold and Dazzo have reversed course entirely. They now bring the FCC under their original premise that they are entitled to "fair value" as withdrawing members of the LLCs **and** their new opposite premise that they **transferred** their membership interests in the LLCs to Alternative Global Management, LLC ("AGM"). Directly contradicting their prior pleadings and positions—and more egregiously sworn statements and testimony **in this case**—Feingold and Dazzo now brazenly contend that **to this day** they still have an "indirect" membership interest in the LLCs through their continued "indirect" membership interests in a separate entity, AGM, which they now claim is the LLCs sole member. This is not only inconsistent with their original fair value claim, but it also directly contradicts prior sworn statements **in this case** unequivocally alleging and attesting under oath that Feingold and Dazzo **withdrew** as the LLCs' members **leaving Cardinale as the LLCs' sole member and manager**. *See, e.g.*, [DE 1, ¶¶ 11, 12, 14, 16, 18, 21]; [DE 4, ¶¶ 15–19, 33, 50, 51, 56]; [DE 17, pp. 10–12]; [DE 51-1, ¶¶ 12, 18, 22]; [DE 102, ¶¶ 16–18, 79, 80, 87]; [DE 127, pp. 7–8].

---

[2] Plaintiff Durham Homes USA, LLC voluntarily dismissed its claims. [DE 285]; [DE 293].
[3] Alternative Global One, LLC, Alternative Global Two, LLC, Alternative Global Three, LLC, Alternative Global Four, LLC, Alternative Global Five, LLC, and Alternative Global Six, LLC.

Feingold and Dazzo's flip flopping on the allegations, theories and facts do not end there. For years since the inception of this case, Feingold and Dazzo have litigated under the false premise that they had to resign from the LLCs to separate themselves from Cardinale. *See* [DE 1, 4, 102]. Once again, they reverse course. In the FCC they now contend that they never really separated from Cardinale or the LLCs because they continue to control them through AGM, an entity which Cardinale also has a membership interest through his wholly owned entity. The seemingly endless flip flopping on the facts contradicts the very premise that they have been litigating under for over two years—that they had to run to this Court and sue Cardinale (and inexplicably his wife likely as some type of leverage) immediately after they withdrew as members of the LLCs. *See, e.g.*, [DE 1, ¶ 14]; [DE 4, ¶¶ 30–33]; [DE 102, ¶¶ 40–43].

Plaintiffs' contradictory positions are not confusion; they are strategy. Plaintiffs invoked withdrawal to seek fair value, then disavowed withdrawal when Cardinale—while relying on Plaintiffs' ***express withdrawal***—brought claims on behalf of the LLCs to recover tens of millions of dollars Plaintiffs converted from the LLCs and in turn investors. *See Alternative Global One, LLC v. Feingold*, No. 2023-CA-000688 (Fla. 11th Cir. Ct.) ("FL Action"). It was when Plaintiffs were faced with that and other lawsuits that Plaintiffs' position shifted by suddenly claiming that they did not separate themselves from Cardinale or the LLCs, and that Cardinale lacked authority to sue them. That is precisely why Plaintiffs now seek extraordinary relief including under the All Writs Act, 28 U.S.C. § 1651, to enjoin actions brought against them to recover investor funds. Their theory for this extraordinary relief depends entirely on repudiating their prior positions without dropping their other contradictory claims.[4]

---

[4] Feingold and Dazzo count on sowing confusion to justify being able to both ask to be paid fair value as ***withdrawing members*** of the LLCs and at the same time claim to ***continue to control the LLCs***.  As stated above, these mutually exclusive positions ultimately materialized in contradictory sworn statements and testimony made under oath ***to this Court*** and manipulated to suit whatever position they wanted to take ***in this litigation*** to obtain favorable discovery orders to hide evidence by arguing that Cardinale is the LLCs sole member who has all the LLCs' records—[DE 51-1, ¶¶ 12, 18, 22], [DE 164-7,165-7,166-7, and 167-4, ¶¶ 7 n.1, 33, 35, 39], and [DE 181-1, ¶¶ 7–9, 11, 13]—and later a report and recommendation by arguing that Cardinale is not the LLCs' sole member. *See* [DE 315]. These calculated contradictory statements have one singular purpose: to avoid accounting for and returning millions of dollars which are owed to the LLCs and were intended to be used for the benefit of approximately 100 investors in L3 Capital Income Fund, LLC ("Fund").

In addition to these irreconcilable contradictions, inconsistent pleadings, and contrary sworn statements and testimony, all of which have wasted the parties' and this Court's precious resources, the FCC should also be dismissed because Plaintiffs:

i.       lack standing on all counts, primarily because they bring direct claims to assert rights that, even if Plaintiffs are correct, belong to AGM, not to Plaintiffs;

ii.      fail to state a cause of action as to any of their claims;

iii.     subvert a pending arbitration filed by Feingold and Dazzo to dissolve AGM; and

iv.      plead Counts II–X as impermissible shotgun pleadings.

Accordingly, the FCC should be dismissed with prejudice.

**<u>MEMORANDUM OF LAW</u>**

The FCC must be dismissed because: (i) Plaintiffs lack standing on all Counts; (ii) Plaintiffs fail to state a claim; (iii) the FCC subverts a pending arbitration; and (iv) Counts II-X are impermissible shotgun pleadings.

**I.       PLAINTIFFS LACK STANDING ON ALL COUNTS**

To establish standing under Article III of the U.S. Constitution, a plaintiff must have suffered an 'injury in fact' that's 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Farmworker Ass'n of Fla., Inc. v. DeSantis*, No. 23-cv-22655-CIV, 2023 U.S. Dist. LEXIS 227415, at \*6 (S.D. Fla. Dec. 21, 2023) (Altman, J.) (citation omitted). Under principles of prudential standing, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Am. United for the Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); Fed. R. Civ. P. 17(a)(1) (requiring actions to be "prosecuted in the name of the real party in interest"). The "real party in interest" is "the person who, according to the governing [or] substantive law, is entitled to enforce the right in question." *Russ v. Jackson Cnty. Sch. Bd.*, 530 F. Supp. 3d 1074, 1079 (N.D. Fla. 2021); *see also Pro Premium Fin. Co. v. U.S. Premium Fin. Serv. Co., LLC*, No. 16-cv-60009, 2016 WL 6248599, at \*5 (S.D. Fla. Oct. 26, 2016).

Plaintiffs are not the real parties in interest for any of their claims. Blackstream is not alleged to have any direct relationship with the LLCs other than that the LLCs filed the Blackstream Action against it. Feingold and Dazzo, meanwhile, predicate all their claims on their status as indirect "***ultimate***" members of AGM, which is the alleged member of the LLCs. *See,*

3

*e.g.*, FCC, ¶¶ 16(i), 103, 190, 193, 206–208, 217. Neither of these positions renders Plaintiffs real parties in interest of any of their claims.

### A.   *Count I: Declaratory Judgment*[5]

In Count I, Plaintiffs seek (i) a declaration that AGM owns the LLCs and that Cardinale, the LLCs' undisputed manager, violated his duty of loyalty when he included jurisdictional allegations in the Actions stating that he is the LLCs' member; and (ii) a preliminary and permanent injunction preventing Cardinale from proceeding with the Actions without AGM's prior consent. FCC, ¶¶ 188-204. This claim—a challenge to LLCs' internal governance and Cardinale's rights as the undisputed manager—seeks to enforce AGM's alleged rights as the LLCs' alleged member.[6] Even if Plaintiffs were correct (they are not), they are not real parties in interest that can appropriately bring claims to assert AGM's rights.

Feingold and Dazzo allege that they are indirect "***ultimate***" members of AGM, which is the alleged member of the LLCs. FCC, ¶¶ 16(i), 103, 190, 193, Ex. 8, p. 28. At best, that means Feingold and Dazzo are (i) members of entities that are (ii) members of an entity [AGM] that (iii) is a member of the LLCs whose governance they now challenge. Only the LLCs or their members could bring such a challenge.[7] *See, e.g.*, *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (shareholder can only sue for direct injury where the injury is "independent of any alleged injury to the corporation"); *Doehler N. Am., Inc. v. Davis*, No. 22-00501-RGA, 2022 WL 2785969, at *3 (D. Del. July 15, 2022) (shareholder standing depends on "who suffered the alleged harm" and "who would receive the benefit of any recovery"); *United States v. All Funds in the Account of Property Futures, Inc.*, 820 F. Supp. 2d 1305, 1327 (S.D. Fla. 2011) (explaining that "a member of an LLC lacks standing to file a claim 'through its membership' in an LLC, …

---

[5] Defendants also adopt and incorporate by reference the arguments raised in Cardinale's contemporaneously filed Objection addressing the same topic. Obj., pp. 11-13.

[6] As argued below, any adjudication of AGM's rights, including whether AGM has an ownership in the LLCs, is subject to mandatory arbitration.

[7] *See also Arbitrage Fund v. Petty*, 307 So. 3d 119, 124 (Fla. 3d DCA 2020) (shareholders can only sue for direct injury where "(1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company; or (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members"); *Christoff v. Ingelese*, No. 2:20-cv-546-SPC-NPM, 2022 WL 1132854, at *1 (M.D. Fla. Jan. 11, 2022) ("In general, shareholders cannot sue for injuries to a corporation"); *Ismail v. Arthritis Relief Plus, Ltd.*, No. 05-21506-CIV, 2006 U.S. Dist. LEXIS 102754, at *4 (S.D. Fla. Apr. 6, 2006) (shareholder of parent corporation, which is shareholder of subsidiary, lacked standing to sue for non-compliance with operating agreement of subsidiary and waste (citing *Crow v. Context Indus.*, 260 So. 2d 865, 866-88 (Fla. 3d DCA 1972))).

a member of an LLC is not a proper party to proceedings by an LLC, [ ] [and] a member of an LLC has no interest in property acquired by an LLC, which is instead property of the company"). Feingold and Dazzo are not AGM, nor are they members of AGM, nor do they otherwise identify any sort of other facts that could arguably make them real parties in interest. And the argument is even easier for Blackstream, which identifies no governance relationship whatsoever with the LLCs.

Plaintiffs are merely defendants in the Actions. But Defendants cannot find a single case in any jurisdiction that stands for the proposition that merely being sued by a company gives a defendant the power to challenge that company's internal governance structure or management's authority to file the suit. Such a conclusion would upend the entire purpose of derivative standing, which is designed to ensure that such claims are "brought only by those individuals who have a *legitimate stake* in the [company] so that its interests are *adequately represented*," *Timko v. Triarsi*, 898 So. 2d 89, 91 (Fla. 5th DCA 2005) (emphasis in original); *accord All Funds*, 820 F. Supp. 2d at 1327 (explaining the limits of when and how a member of an LLC can brings claims directly). This Court should not endorse such a misinterpretation of the law.

### B.      *Count II: Payment of Fair Value*

In Count II, Feingold and Dazzo bring a direct claim for payment of fair value under 6 Del. C. § 18-604 for their share of AGM's interest in LLCS "as ultimate owners of AGM … pursuant to Delaware law." FCC, ¶¶ 205–210. Section 18-604, "***upon resignation any resigning member*** … such member is entitled to receive … the fair value of such member's limited liability company interest as of the date of resignation based upon such member's right to share in distributions from the limited liability company."  (Emphasis added). Feingold and Dazzo no longer allege to have resigned as members of the LLCs. FCC, ¶ 34. On that premise alone, Count I should be dismissed. Instead, they expressly argue that they are somehow entitled to payment of fair value through their membership interest in AGM. But AGM has not resigned; in fact, its purported current membership in the LLCs is among Plaintiffs' most critical allegations. *See* FCC, ¶¶ 37, 39–41. Even accepting Plaintiffs' allegations as true that AGM was a member of the LLCs and had it resigned, Feingold and Dazzo could not bring a direct claim to enforce their own indirect "***ultimate***" rights under § 18-604 as those rights would belong solely and exclusively to AGM as the LLCs' alleged sole member.

5

### C.     *Count III: Breach of Fiduciary Duty*

In Count III, Feingold and Dazzo bring a direct claim alleging Cardinale breached fiduciary duties owed to AGM and LLCs. FCC, ¶¶ 211–215. As the LLCs' undisputed manager, Cardinale owes fiduciary duties to the LLCs and their member—allegedly AGM. FCC, Exs. 2-8. The FCC acknowledges that Feingold and Dazzo are mere alleged "***ultimate***" members of AGM, which is the alleged member of the LLCs. FCC, ¶¶ 1, 16(i), 34, 37, 42. Neither the LLC Agreements, FCC, Exs. 2–7, nor any other doctrine inure Feingold and Dazzo with the right to bring direct claims for breach of fiduciary duty against the manager of the LLCs because Feingold and Dazzo are neither the LLCs themselves nor the alleged members of the LLCs. *All Funds*, 820 F. Supp. 2d at 1327; *Ismail*, 2006 U.S. Dist. LEXIS 102754, at *2.

### D.     *Count IV: Conversion*

In Count IV, Feingold and Dazzo bring a direct claim alleging Cardinale converted AGM's funds. FCC, ¶¶ 216-224. Again, Feingold and Dazzo purport only to be indirect "***ultimate*** managers and members of AGM." FCC, ¶ 217. Feingold and Dazzo lack standing to bring a direct claim for conversion based on Cardinale's alleged conversion of funds belonging to an entity in which they merely hold an indirect "***ultimate***" interest. Even if they were members of AGM, "[a] member of a limited liability company has no interest in the specific assets owned by the limited liability company" such that the member could sue for conversion of it. *Stone & Paper Inv'rs, LLC v. Blanch*, No. 2018-0394-PAF, 2020 WL 3496694, at *10 n.40 (Del. Ch. June 29, 2020) (citing 6 Del. C. § 18-701); *see also S&A Prop. Inv. Servs., LLC v. Garcia*, 360 So. 3d 432, 437 (Fla. 3d DCA 2023) (quoting Fla. Stat. § 605.0110(4)) ("Consequently, an LLC member has 'no interest in any specific limited liability company property.'"); *In re Opus E., L.L.C.*, 480 B.R. 561, 575 (Bankr. D. Del. 2012) (explaining that just as a shareholder has no personal or individual right of action against a third party for acts causing interest to a corporation, a member (or the member's trustee) does not have a property interest in the limited liability company's property). Thus, here, even AGM would need to file a derivative action on the LLCs' behalf to proceed. Certainly, Feingold and Dazzo—purported indirect members of AGM—are far too removed to proceed as "real parties in interest" on Count IV.

6

E.     *Counts V–VIII: Fraudulent Misrepresentation & Conspiracy to Commit Fraud*

In Counts V–VIII, Feingold and Dazzo allege that (1) Cardinale made misrepresentations and omissions in his disclosures about his business interests to the LLCs and to AGM, FCC, ¶¶ 225–249; (2) Cardinale made misrepresentations and omissions that caused the LLCs to make payments to Cardinale, ¶¶ 250–257; and (3) Mrs. Cardinale conspired with Cardinale to obtain payments from the LLCs and AGM. ¶¶ 258–270. Here, again, Feingold and Dazzo do not allege that there was any fraud against either of them in their individual capacities. Rather, Feingold and Dazzo allege that, while they were members of the LLCs, Cardinale and Mrs. Cardinale made misrepresentations that caused payments to flow from the LLCs and AGM to entities affiliated with Cardinale. For the same reasons recited above, Feingold and Dazzo are not real parties in interest for such claims.

F.     *Count IX: Aiding and Abetting Breach of Fiduciary Duty*

In Count IX, Feingold and Dazzo allege that Mrs. Cardinale aided and abetted Cardinale's breaches of fiduciary duty. FCC, ¶¶ 271-277. As detailed in the analysis of Count III, Feingold and Dazzo lack standing to seek relief based on fiduciary duties owed only to the LLCs and their member when they are, at best, mere indirect "***ultimate***" members of the entity that they claim is the LLCs' member.

G.     *Count X: Unjust Enrichment*

In Count X, Feingold and Dazzo allege that Cardinale was unjustly enriched by funds provided to him by the LLCs and AGM. FCC, ¶¶ 278–285. Again, Feingold and Dazzo lack standing to bring direct claims seeking damages for funds that were paid by entities that they have, at best, attenuated indirect relationships with.

II.    <u>PLAINTIFFS FAIL TO STATE A CLAIM</u>

Under Fed. R. Civ. P. 8(a), complaint must "'state a claim [for] relief that is plausible on its face.'" *Mayer v. Carnival Corp.*, No. 24-cv-20160, 2024 U.S. Dist. LEXIS 39101, at *2 (S.D. Fla. Mar. 6, 2024) (Altman, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the pleaded factual content "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mayer*, 2024 U.S. Dist. LEXIS 39101, at *2 (citing *Iqbal,* 556 U.S. at 678). The pleadings must provide more than "[t]hreadbare recitals of the elements of a cause of

7

action, supported by mere conclusory statements[.]" *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Though this standard does not require "detailed" allegations, it requires "more than an unadorned, the-defendant-harm-me accusation." *Mayer*, 2024 U.S. Dist. LEXIS 39101, at *2 (citing *Iqbal,* 556 U.S. at 678).

If a claim sounds in fraud, it must satisfy a heightened pleading standard. Fed. R. Civ. P. 9(b); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019). Under Rule 9(b), a complaint must provide "indicia of reliability" by pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *F&F Invs. Grp. v. Case (In re Case)*, 636 B.R. 852, 857-58 (Bankr. S.D. Fla. 2022). "Essentially, a plaintiff satisfies Rule 9(b) by alleging who, what, when, where, and how." *Id.* at 858 (quoting *State Farm Mut. Auto. Ins. Co. v. First Choice Chiropractic & Rehab Ctr., Inc.*, No. 8:20-cv-330, 2020 WL 5583516, at *2 (M.D. Fla. Aug. 17, 2020)).

While the Court generally limits its review to the four corners of the complaint, it may consider exhibits attached to the complaint or incorporated by reference into it. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). If an incorporated document contradicts the factual allegations, the document ***controls***. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023).

### A. *Count I: Declaratory Judgment*

Contemporaneously with this Motion, Cardinale has filed an *Objection to Report and Recommendation* ("Obj.") asking this Court to reject the Magistrate's Report and Recommendation. [DE 315 ("Report")]. Significant portions of the argument from that brief apply here, namely Cardinale's arguments that: (i) the Anti-Injunction Act prohibits enjoining the FL Action; (ii) the Blackstream Action is consolidated with this case and cannot satisfy the All Writs Act; (iii) Movants improperly seek merits-based relief through an anti-suit injunction; (iv) Movants have other adequate legal remedies that prevent usage of the All Writs Act; and (v) the "gatekeeping elements" are not satisfied. *See* Obj., pp. 3-10. In the interest of brevity and clarity, Defendants expressly adopt and incorporate those arguments here, each of which support the position that Plaintiffs' request for an anti-suit injunction against the Actions under the All Writs Act is not legally cognizable. Beyond the above, however, Count I still fails to state a cause of action because the face of the FCC and the Exhibit confirm that: (1) AGM does not own the LLCs; and (2) even AGM did own the LLCs, the Actions do not violate Cardinale's duty of loyalty.

### 1. AGM Does Not Own the LLCs.

The FCC confirms that Feingold and Dazzo resigned "as managers **and members**" of the LLCs and demanded payment of fair value for their resigned membership interests under 6 Del. C. § 18-604, a Delaware statute entitling resigning members to fair value, from Cardinale individually as the LLCs' sole remaining member.[8] FCC, Ex. 20. Feingold and Dazzo could not possibly have resigned as members if they assigned those same interests to AGM. To distract from reality, Plaintiffs throw a smorgasbord of exhibits that fail to render their pleading possible, much less plausible. *See* FCC, ¶ 32 & Ex. 9-19;[9] *Williams v. Capital One Bank (USA), N.A.*, 785 F. App'x 741, 746 (11th Cir. 2019) (allegations are implausible where the exhibit contradict the factual allegations in the complaint). Because the Notice of Resignation, on its face, precludes the possibility of a prior assignment of Feingold, Dazzo, and Cardinale, Count I should be dismissed with prejudice.

Additionally, Plaintiffs assert the legal conclusion that AGM was assigned the membership interests and that AGM was substituted as the true member of AGM. Such assignment and substitution must comply with the strict requirements of the LLC Agreements. FCC, Exs. 2-7, §§ 4.1 (identifying the members), 7.2 (requiring substitution by unanimous consent), & 13.3 (requiring amendments to occur "by the written consent of all of the Members"). Whether these clauses were satisfied is a factual allegation; merely presumptively stating that an effective assignment or substitution occurred is a legal conclusion.

Even if Plaintiffs' representation were a factual allegation, it too is contradicted by the record. Plaintiffs do not and cannot allege any written agreement to assign or substitute Feingold, Dazzo, and Cardinale's interests in the LLCs to AGM. Absent such a written agreement, the parties' conduct, including their litigation activity and statements under oath, are materially relevant to determine whether such an agreement was made. *See, e.g.*, *Martin Energy Servs., LLC v. M/V Bravante IX*, 233 F. Supp. 3d 1269, 1274–75 (N.D. Fla. 2017) (explaining that the "meeting of the minds" can only be established by "external signals" and holding that the signals were provided by the parties' creation of bunkering certificates that "could only bear one meaning" as

---

[8] Though Plaintiffs seek to rewrite the Notices, the exhibit **controls**. *Turner*, 65 F.4th at 583 n.27.
[9] Feingold and Dazzo's declarations should be disregarded under the sham affidavit rule. *Poitevint v. United Recovery Sys., LP*, 899 F. Supp. 2d 1230, 1235 (N.D. Fla. 2012) ("[T]he 'sham affidavit' rule provides that an affidavit can be disregarded if its conflict with other evidence in the case is so pronounced that the affidavit rises to the level of a sham.").

to who "bore ultimate liability for the debt arising from Martin's delivery of the fuel"); *Oralco, Inc. v. Bradley*, No. 12763, 1992 WL 373041, at *7 (Del. Ch. Dec. 17, 1992) (determining the parties' post alleged oral agreement activities undermined the existence of the alleged agreement and, even if there had been such an agreement, ultimately "terminated" the agreement). As detailed throughout the Objection, there is significant record evidence confirming that no such assignment or substitution ever happened. Obj., pp. 18-22. Such evidence includes substantial information that may be considered at the motion to dismiss stage, including Plaintiffs' repeated allegations and arguments, sustained in this Court for more than two years, plainly and unmistakably pursuing a claim for fair value against Cardinale individually based on: (i) Feingold and Dazzo's alleged resignation as ***members*** of the LLCs, [DE 1, ¶ 21]; [DE 4, ¶¶ 15, 16-17, 19, 50, 60 & Ex. D]; [DE 102, ¶¶ 79, 80, 81 & 85]; and (ii) Cardinale's status as the sole remaining ***member*** of the LLCs.[10] [DE 9, pp. 6–12]; [DE 17, pp. 10–12]; [DE 120, pp. 9–10]; [DE 127, pp. 7–8]. There is no legal standard that requires this Court to ignore what Plaintiffs have alleged and argued in this very case, which directly contradicts the core allegations Plaintiffs raise now.

        2.       <u>The Actions Do Not Violate Cardinale's Duty of Loyalty.</u>

As the LLCs' manager, Cardinale has "the sole right to manage the business of [the LLCs]" and vests him with "all the powers and rights necessary, appropriate, or advisable to effectuate and carry out the purposes and business of [the LLCs]." FCC, Exs. 2-7, § 9.1(c). In limited circumstances, such as for "the authorization or ratification of acts that would otherwise violate the duty of loyalty," the LLC Agreements require Cardinale to obtain the Members' consent. FCC, Exs. 2-7, § 8.1(c). Cardinale's duty of loyalty is limited to requiring him to avoid grossly negligent, reckless, or intentional misconduct while holding the LLCs' "property, profit[s], [and] benefit[s]" in trust for the benefit of the LLCs and their members. FCC, Exs. 2-7, § 11.1. Plaintiffs allege the Lawsuits violate Cardinale's duty of loyalty and therefore required AGM's permission—which is "***ultimately***" Feingold and Dazzo's permission—not because of their substantive content, but because the Lawsuits allege that Cardinale is the LLCs' sole member. Plaintiffs assert this subverts Feingold and Dazzo's "***ultimate***" interests in AGM and claims for himself all benefits derived from his conduct as manager of [the LLCs]. FCC, ¶¶ 192-193.

---

[10] *See also* [DE 235-5, ¶¶ 1–4, 7, 9, 14, 16, 17].

***First***, Cardinale owes no duty of loyalty to Feingold and Dazzo. As the LLCs' Manager, Cardinale owes a duty of loyalty only to "***the Company and its Members***."[11] FCC, Ex. 2, § 11.1.[12] Cardinale has no indirect duty of loyalty to Feingold and Dazzo. *CML V, LLC v. Bax*, 28 A.3d 1037, 1040 (Del. 2011) (dismissing "direct claim" for breach of fiduciary duty of care against manager by "junior secured creditor" that was not a member or assignee of a member); *Morris v. Zimmer*, 637 F. App'x 654, 656 (2d Cir. 2016) (affirming dismissal of claims by "third parties" against "managing members" because "Florida law recognizes no [duty of loyalty]" to third parties), *cert. denied*, 580 U.S. 873 (2016).

***Second***, assuming Cardinale owes a duty of loyalty to AGM, he did not breach it through a jurisdictional allegation made the Actions. Cardinale agrees that the Lawsuits allege he is the LLCs' sole member—which when filed was exactly what Feingold and Dazzo alleged in this case.[13] [DE 233-23 ("FL Action Compl."), ¶¶ 6 n.1, 10-15]; [DE 233-25 ("Blackstream Action Compl."), ¶¶ 2-4]; FCC, Ex. 25, ¶ 1; FCC, Ex. 26, ¶ 8. But none of the Lawsuits seek—directly or indirectly—a determination about who holds membership rights and interests in the LLCs. To the contrary, each of the Lawsuits is a straightforward claim for damages against Plaintiffs. FL Action Compl., ¶¶ 113-186; Blackstream Action Compl., ¶¶ 24-37; FCC Ex. 25, ¶¶ 25-30; FCC Ex. 26, ¶¶ 35-49. The Actions could not—even in theory—violate Cardinale's duty to hold the LLCs' property in trust for the benefit of the LLCs and their members, and thus do not violate his duty of loyalty. Nor does the FCC even allege that Cardinale failed to hold the LLCs' property in trust for the benefit of the LLCs and their members, as expressly required by the LLCs' Operating Agreements. FCC, Exs. 2-7, § 11.1. Plaintiffs have not, nor could they, make this basic allegations required to trigger the very relief that they are seeking.

---

[11] These limits mirror Delaware and Florida law. *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011) ("[M]anagers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to *the members of the LLC*, unless the parties expressly modify or eliminate those duties in the operating agreement") (emphasis added); *McRitchie v. Zuckerberg*, 315 A.3d 518, 539–548 (Del. Ch. 2024) ("Under Delaware law, fiduciary duties run to firm-specific stockholders in their capacities as firm-specific stockholders and not in any other capacities they may have."); § 605.04091(1), Fla. Stat. ("Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company").

[12] The AG 1-6 Operating Agreements are identical in all relevant respects. FCC Ex. 2-7.

[13] The FL Action Compl. and Blackstream Action Compl. are repeatedly referenced throughout the FCC, are incorporated by reference, and are undisputed. *See* FCC, ¶¶ 57-76, 188-204.

11

B.      *Count II: Payment of Fair Value*

After pleading in Count I that they ***assigned*** their membership interests in the LLCs to AGM, Feingold and Dazzo reverse positions in Count II now claiming that they ***withdrew*** as members of the LLCs in Count II.  In that Count, Feingold and Dazzo seek payment of fair value under 6 Del. C. § 18-604 as resigning members. FCC, ¶¶ 205-210. Under § 18-604, a ***resigning member*** is entitled to fair value:

> ***upon resignation any resigning member*** is entitled to receive any distribution to which such member is entitled under a limited liability company agreement and, if not otherwise provided in a limited liability company agreement, such member is entitled to receive, within a reasonable time after resignation, the fair value of such member's limited liability company interest as of the date of resignation based upon such member's right to share in distributions from the limited liability company.

(Emphasis added).  6 Del. C. § 18-604. Feingold and Dazzo allege that their indirect "***ultimate***" interest in AGM entitles them to seek fair value from LLCs because AGM owns LLCs. But they do not allege AGM resigned from LLCs. To the contrary, the FCC is based on AGM's alleged ***current membership*** in LLCs. FCC, ¶ 32. AGM thus cannot obtain fair value and, certainly, Feingold and Dazzo cannot seek fair value as direct claims based on some indirect "***ultimate***" interest.  Nor can Feingold and Dazzo be entitled to fair value under 6 Del. C. § 18-604 if they assigned their membership interest in the LLCs to AGM.  Succinctly, Feingold and Dazzo's claim for fair value is negated by their allegation that they assigned their membership interest in the LLCs to AGM and that ***to this day*** they continue to own such membership interests in AGM.

The FCC further now alleges that Cardinale is not the LLCs' sole member. FCC, ¶ 32. Previously, Feingold and Dazzo argued that they could bring their fair value claims against Cardinale individually because he was the LLCs' sole member. [DE 102, ¶¶ 78-85] (seeking fair value for Feingold and Dazzo's individually resigned membership interests in LLCs); [DE 120, at 2–3 & 9–10] (alleging fair value claim should be dismissed against Cardinale individually); [DE 127, at 7–8] (arguing that fair value could be sought against Cardinale as LLCs' sole member). Now, Feingold and Dazzo assert that Cardinale is only the LLCs' manager. FCC, ¶ 37.  Even if Feingold and Dazzo had standing to seek fair value, they cannot do so against Cardinale, who they now allege is not even a member of LLCs. FCC, ¶¶ 32, 37.

Lastly, Count II also seemingly asserts a redemption right in § 7.3 the LLC Agreements. For the avoidance of doubt, Section 7.3 states: "[a]ny Member who is not an initial member … may have their Membership interest redeemed upon such terms and conditions as so determined,

by the sole and absolute discretion of the unanimous consent of the above listed initial members whose name appears in Article IV, subsection 4.1." FCC, Ex. 2, § 7.3. No portion of § 7.3 provides Feingold and Dazzo—who allege they merely have indirect "*ultimate*" interests in AGM which, in turn is the LLCs' alleged member—with a redemption right. To whatever extent Count II could be read as seeking to apply this Section, it must be dismissed as well.

### C.      *Count III: Breach of Fiduciary Duty*

Count III alleges that Cardinale breached his fiduciary duty as "[a] manager of the [LLCs]." FCC, ¶¶ 212-215. As the LLCs' Manager, Cardinale holds limited duties to the LLCs and their members. FCC, Ex. 2-7; *CML V, LLC v. Bax*, 28 A.3d 1037, 1040 (Del. 2011) (dismissing direct claim for breach of fiduciary duty of care against manager by a non-member). Cardinale is neither a member nor a manager of *AGM*. FCC, ¶ 16(i) ("Cardinale is an '*ultimate*' managing member of [AGM].") & Ex. 8, at 28 (identifying RMD Holdings, LLC ("**RMD**"), with Dazzo as its signatory, as AGM's manager). Thus, even assuming AGM owns the LLCs, Cardinale's fiduciary duties extend only to the LLCs and to AGM as the LLCs' alleged member. Feingold and Dazzo acknowledge that they are neither. Since there is no duty, this Count must be dismissed.

### D.      *Count IV: Conversion*

Count IV alleges that Cardinale improperly converted funds belonging to AGM and an unidentified merchant cash advance entity. FCC, ¶¶ 216–224. Again, Feingold and Dazzo cannot proceed on allegations that Cardinale converted funds belonging to someone other than themselves individually. Notwithstanding, even if they had standing, "an action in conversion will not lie to enforce a claim for the payment of money." *Stone & Paper Inv'rs, LLC*, 2020 WL 3496694, at *11; *see also Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011) ("[A] simple monetary debt generally cannot form the basis of a claim for conversion[,]" but a conversion claim may be brought where there is "'an obligation to keep intact or delivery the specific money in question, so that money can be identified.'") (citations omitted).

### E.      *Counts V & VI: Fraudulent Misrepresentation*

Count V asserts that Cardinale misrepresented that he "had properly disclosed his conflicts of interest and compensation and monetary benefits from the [LLCs] with his investors in the [Fund]" and thereby misrepresented his compliance with disclosure obligations. *See* FCC, ¶ 226. Again, Plaintiffs do not have standing to bring a direct claim because they commenced or continued doing business with Cardinale and "ceded a one-third interest in the [LLCs] to him,"

13

FCC, ¶ 230, as the statements, representations, or omissions are those that Feingold and Dazzo contend Cardinale made (or should have made) to the investors in the Fund, not to Feingold and Dazzo individually before the Fund was created.

Count VI contends that Cardinale defrauded the LLCs and AGM, causing them to pay him fees. *Id.*, at ¶¶ 251–252, 254–255. Again, Feingold and Dazzo bring a direct damages claim that improperly asserts the rights and injuries of third parties, not themselves. Feingold and Dazzo also present no allegations supporting any damage resulting from the representations in either count. Feingold and Dazzo only have an indirect "***ultimate***" interest in AGM and, to the extent Feingold and Dazzo joined LLCs, they assert that they assigned their interests in the LLCs to AGM. If their interests were assigned to AGM, as they contend, what injury did they suffer and when did the injury occur?

Plaintiffs have also failed to plead with particularity. *See In re Case*, 636 B.R. 852, 857-58 (Bankr. S.D. Fla. 2022) ("[Under] Rule 9[(b)], a complaint must provide at least 'some indicia of reliability' to support the fraud allegations, which may be accomplished by pleadings 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."); *Wireman v. Park Nat'l Corp.*, No. 20-14096, 2021 U.S. App. LEXIS 21351, at *12 (11th Cir. July 20, 2021) (holding that Plaintiff did not satisfy the particularity requirement of rule 9(b) as he did not allege which fees were incorrect, what was the correct amount of fees, who from the company did or did not make the representations or when the representations were made, and "only alleged that the 'defendants' falsely represented the amount he owed[—]without alleging which of the three defendants made the fraudulent misrepresentations."); *Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 473–74 (11th Cir. 2016) (explaining that, to satisfy Rule 9(b), the "Plaintiffs had to have alleged the following '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.' . . . . They did not do so.").

### F.    *Counts VII & VIII: Conspiracy to Commit Fraud*

"To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties, (2) to do an unlawful act or to do lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed

14

in furtherance of it." *Gilson v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020); *Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, No. 2019-0567-AGB, 2020 WL 4355555, at *21 (Del. Ch. July 30, 2020) (explaining that the elements of civil conspiracy are: "(i) a confederation or combination of two or more persons; (ii) an unlawful act done in furtherance of the conspiracy; and (iii) damages resulting from the action of the conspiracy parties."). Feingold and Dazzo cannot bring claims for conspiracy based on alleged duties owed to, or acts directed at, AGM or the LLCs.

Counts VII and VIII are "lacking the 'when' and 'where' requirements as to the creation of the conspiracy." *Delgado v. Rutledge*, No. 22-cv-23435, 2024 U.S. Dist. LEXIS 58080, at *13-*14 (S.D. Fla. Mar. 29, 2024) (dismissing complaint where plaintiffs alleged "there was an agreement entered into," but "no other details about the agreement"). Plaintiffs allege that "Cardinale and Vania agreed to perpetrate a fraud on Feingold and Dazzo and agreed to a conspiracy to do an unlawful act or to do a lawful act by unlawful means." FCC, ¶¶ 259, 266. These sparse allegations fail to meet Rule 9(b)'s stringent requirements. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal where plaintiff did not allege "with specificity" the formation of the conspiracy); *Otto Candies, LLC v. Citigroup, Inc.*, No. 1:16-cv-20725, 2023 U.S. Dist. LEXIS 168612, at *31 (S.D. Fla. Aug. 25, 2023) (dismissing conspiracy claim that fails to allege "when the agreement was made, or how Citigroup made the purported agreement with OSA.").

The FCC further acknowledges that Mrs. Cardinale had no knowledge of the alleged conspiracy. FCC, ¶¶ 174 & 179-181. A person cannot unknowingly be a party to a civil conspiracy. *See Bocock v. Innovate Corp.*, No. 2021-0224-PAF, 2022 Del. Ch. LEXIS 307, at *69 (Del. Ch. Oct. 28, 2022) ("Plaintiffs fail to state a claim for civil conspiracy against Voigt because they fail to allege that Voigt knowingly participated in any conspiracy.") (citations omitted). Therefore, there are not "two or more persons" conspiring with each other to engage on alleged wrongful acts. Absent such allegations, there can be no civil conspiracy.

Even if there could be such a conspiracy, however, the FCC fails to state the other required factual allegations surrounding such conspiracy with the necessary particularity under Rule 9(b). *See In re Case*, 636 B.R. at 857-58; *Wireman*, 2021 U.S. App. LEXIS 21351, at *12; *Lawrie*, 656 F. App'x at 473-74. Plaintiffs have not adequately alleged the supposed "fraud" or that Mrs. Cardinale engaged in any "overt acts" in pursuit of the supposed conspiracy to commit fraud. For example, "awareness" is not an overt action. FCC, ¶ 261. Neither is being a member of limited

15

liability companies and signing papers on request in a joint company. FCC, ¶ 179. Moreover, the allegations that Mrs. Cardinale was "aware" completely contradicts the allegations that she had "no knowledge." *See* FCC, ¶¶ 174, 179, 261. In sum, Plaintiffs bald and conclusory allegations merely reciting the elements of the cause of action (and which contradict the few facts that are alleged), fail to satisfy Rule 9(b), which requires Plaintiffs to plead with particularity. Accordingly, these claims should be dismissed in their entirety.

### G.       *Count IX: Breach of Fiduciary Duty*

In Count IX, Feingold and Dazzo allege that Cardinale and his wife conspired to cause the LLCs and AGM to pay them. "To state a claim under Florida law for aiding and abetting the breach of fiduciary duty, a plaintiff must allege facts sufficient to establish these elements: (1) a fiduciary duty on the part of a primary wrongdoer; (2) a breach of that fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *B-Smith Enter., LP. v. Bank of Am., N.A.*, No. 22-11383, 2023 U.S. App. LEXIS 3721, at *4 (11th Cir. Feb. 16, 2023); *Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, 2020 WL 4355555, at *20 (Del. Ch. July 30, 2020) (holding assistance must be both knowing and substantial).  Plaintiffs fail to allege a fiduciary duty owed by Cardinale to them individually since Plaintiffs allege that (i) Cardinale is a mere "ultimate member" of AG1-6 and AGM; (ii) they assigned their "membership interests" to AGM "[a]fter creating the Alternative Global Entities"; and (iii) RMD Holdings, LLC, not Cardinale, is the Manager of AGM.  FCC, ¶¶ 16(i), 32, 103 & Ex. 8, p. 28.  Because Feingold and Dazzo were not members of AG 1-6 by their own allegations, they state no actionable fiduciary duty.  *CML V, LLC*, 28 A.3d at 1040; *Advanced Magnet Lab v. Meinke*, No. 6-20-cv-712-Orl-37EJK, 2020 U.S. Dist. LEXIS 254314, at *11–12 (M.D. Fla. Nov. 24, 2020) (dismissing claim where no fiduciary duty existed at time of actions).

Moreover, while Feingold and Dazzo make conclusory statements that Mrs. Cardinale's acts were knowing and substantial, their own factual allegations confirm that she performed little more than ***minor, ministerial tasks without any knowledge*** of the alleged underlying acts. FCC, ¶¶ 271–277; *see Agspring Holdco*, 2020 WL 4355555, at *21 (describing "substantial assistance" as requiring "the secondary actor must have provided 'assistance . . . or participation' in aid of the primary actor's allegedly wrongful acts" (quoting *In re Oracle Corp. Deriv. Litig.*, No. 2017-0337-SG, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020))). In the absence of a fiduciary duty owned

16

to them individually by Mrs. Cardinale, there is no actionable claim for aiding and abetting a breach of fiduciary duty. *Sherman v. Ragan*, 388 So. 3d 1034, 1036 (Fla. 3d DCA 2024).

    **H.**    ***Count X: Unjust Enrichment***

Plaintiffs cannot state an unjust enrichment claim because the alleged benefit is not direct. "To state an unjust enrichment claim, a plaintiff must plead the following 'three elements: (1) the plaintiffs ha[ve] conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof.'" *Rooney v. Camden Prop. Trust*, No. 23-cv-23951, 2024 U.S. Dist. LEXIS 22199, at \*10 (S.D. Fla. Feb. 8, 2024) (Altman, J.) (*quoting Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329, 1337 (11th Cir. 2012)). "[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Marrache v. Bacardi U.S.A., Inc*., 11 F.4th 1084, 1101 (11th Cir. Nov. 8, 2021) (plaintiffs who purchased products from Winn Dixie, but not manufacturer they sued, did not directly confer benefit); *Harvey v. Fla. Health Scis. Ctr., Inc*., No. 17-14406, 728 Fed. App'x 937, 947, 2018 U.S. App. LEXIS 7215, at \*23 (11th Cir. Mar. 20, 2018) (plaintiff who reimbursed Medicare, but not defendant, failed to plead direct benefit). It is not sufficient to confer an "indirect" benefit. *Virgilio*, 680 F.3d at 1337 (affirming dismissal where homebuyers sought to recover payment developer made to affiliate, rendering benefit indirect).

Count X alleges that "Feingold and Dazzo paid Cardinale millions in administrative fees, advisory fees, management fees, and acquisition fees" and invested in the LLCs. FCC, ¶ 279-280. However, Plaintiffs' prior allegations negate these allegations. Plaintiffs allege that it was "Cardinale" that "billed AGM" -- not Plaintiffs -- for "administrative expenses." *Id*., ¶ 113. Plaintiffs allege that "all Cardinale's employees' salaries and benefits were paid by the Alternative Global Entities" -- not Plaintiffs. *Id*., ¶ 117. Plaintiffs allege that "Cardinale fraudulently billed the Alternative Global Entities" and Cardinale "received monies from the Alternative Global Entities" – not Plaintiffs. *Id*., ¶¶ 119, 125, 138. Exhibit 16 negates the assertion that Plaintiffs conferred a benefit on Cardinale because it attaches bills from "L3 Capital Management, LLC"—not Cardinale—to "Alternative Global Management"—not Plaintiffs. FCC, Ex. 16. Exhibit 34 likewise refutes the assertion that Plaintiffs conferred a benefit on Cardinale because it attaches a collection of Advisory Agreements between other third parties, but not Plaintiffs or Cardinale

himself.  FCC, Ex. 34.  Thus, under the exhibits which control here (*Turner*, 65 F.4th at 583 n.27),[14] it is not Feingold and Dazzo who conferred the alleged direct benefit, but the LLCs and AGM, and it is not Cardinale who received the direct benefit, but a host of other entities. Feingold and Dazzo are neither the LLCs nor one of their members. Instead, they allege they hold indirect "***ultimate***" interests in AGM, which they allege is a member of AG 1-6. FCC, ¶ 16(i). Based on the allegations in the FCC, the LLCs' and AGM's payments cannot be characterized as "direct."

## III.   COUNTS II–X ARE SHOTGUN PLEADINGS.

Counts II-X are all shotgun pleadings and must be dismissed.  A complaint is a shotgun pleading if it commits the "mortal sin" of "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).  In *Jackson v. Bank of America, N.A.*, the Eleventh Circuit affirmed dismissal of a shotgun pleading where "[i]t employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."  898 F.3d 1348, 1356-57 (11th Cir. 2018). Each of Counts II-X simply states that "Feingold and Dazzo repeat and reallege the allegations in the preceding paragraphs as if fully stated herein." FCC, ¶¶ 205, 211, 216, 225, 250, 258, 265, 271, & 278. In doing so, each successive count incorporates all prior counts—a "mortal sin" that renders a complaint a shotgun pleading. As a result, the FCC must be stricken in its entirety.  *Jackson*, 898 F.3d at 1356-57.

## IV.   THIS COURT SHOULD ABSTAIN IN FAVOR OF THE AGM DISSOLUTION.

The Court should abstain from entertaining, or stay, the claims in Count I because they subvert two pending arbitrations.[15]  There is a strong federal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). The purpose of that policy

---

[14] Where, as here, legal conclusions are contradicted by factual allegations within the same pleadings, the Complaint fails to state a plausible claim. *Sloan v. Shatner*, No. 8:17-cv-332-T-27AAS, 2018 U.S. Dist. LEXIS 138485, at *11 (M.D. Fla. Jun. 22, 2018).

[15] On a Rule 12(b)(1) factual challenge, the Court may look outside the four corners of the Complaint.  *Cave v. Stone*, No. 20-61955-CIV, 2021 U.S. Dist. LEXIS 183993, at *2 (S.D. Fla. 2021) (Altman, J.) (considering "dockets" and "the documents filed on those dockets" for as applied Rule 12(b)(1) challenge).  "[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues." *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994).

is to "move the parties to an arbitrable dispute ***out of court and into arbitration*** as quicky and easily as possible." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 23) (emphasis added). Accordingly, federal courts may not "interfere with the procedures of the arbitration panel" or otherwise "impose judicial control over [] arbitration proceedings." *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1242 (S.D. Fla. 1988) ("Nothing in the [FAA] contemplates interference by the court in an ongoing arbitration proceeding."); *Clopton v. Bird Rides, Inc.*, No. 1:19-CV-1728, 2022 WL 18584562, at *2 (N.D. Ga. Jan. 12, 2022) (same); *In re Universal Serv. Fund Telephone Billing Practices Litig.*, 370 F. Supp. 2d 1135, 1138 (D. Kan. 2005) ("The court may not [ ] interfere with the ongoing arbitration proceedings."). Here, Plaintiffs subvert two pending arbitrations and attempt to move questions already pending in arbitration to this Court.

Feingold and Dazzo filed an arbitration to dissolve AGM and specifically properly injected into the arbitration the issues of whether AGM owns the LLCs and if Cardinale had authority to prosecute the Lawsuits. *In re Dissolution of Alternative Global Management, LLC*, No. 01-23-0002-2987 (AAA) ("<u>AGM Arbitration</u>"). **Exhibit 1**, ¶¶ 1-2, 36, 38, 39, 66-67. These questions were filed in the AGM Arbitration, rather than before any court, because AGM's operating agreement includes a mandatory arbitration provision. *See* FCC, Ex. 8. These questions have been addressed twice in the AGM Arbitration and were resolved in Cardinale's favor. *See* **Exhibit 2** ("<u>First Award</u>"), ¶ 7; **Exhibit 3** ("<u>Second Award</u>"), p. 2, 4;  *see also* [Doc. 235, p. 6, ¶ 2-3; p. 7, ¶ 1-2; p. 8, ¶ 3-p. 11].  Fearing further negative rulings, Dazzo sued the sitting AAA Arbitrator to compromise his ability to continue serving on the arbitration panel[16]  and now wants this Court to subvert the authority of the arbitrations and resolve the questions itself. The Court should decline to do so. *See Galan v. Barclay's Bank Del.*, No. 14-cv-23446, 2014 WL 12029368, at *3 (S.D. Fla. Dec. 29, 2014) (finding that, when arguments are more properly raised before an arbitrator, "the Court must abstain from addressing these arguments, which must instead be brought before an arbitrator"); *Rivera de Chavon Dev. Grp. SRL v. Diaz*, No. 11-20662-CV, 2011 WL 5825770, at *2-3 (S.D. Fla. Nov. 17, 2011) (abstaining and dismissing lawsuit in favor of arbitration).

---

[16] *See Dazzo v. Harris*, No. 2024-017931-CA-01 (Fla. 11th Cir. Ct.). It is appropriate to take judicial notice of other pending proceedings to determine whether abstention is appropriate. *See, e.g., Boyd v. Ga.*, 512 F. App'x 915, 916–17 (11th Cir. 2013); *Adeniji v. Fla. State Coll.*, No. 3:14-cv-252, 2024 WL 5437059, at *3 (M.D. Fla. 2014) (collecting cases supporting judicial notice in the abstention context).

**WHEREFORE**, this Court should grant this Motion, dismiss the First Consolidated Complaint with prejudice, and grant such other relief as the Court deems just and proper.

Date: February 5, 2026

Respectfully Submitted,

/s/ Avi Benayoun
Avi Benayoun

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Blvd, Suite 2000
Fort Lauderdale, Florida 33301
T. 954.765.0500
Avi Benayoun
Fla Bar No 0151696
benayouna@gtlaw.com
John L. McManus
Fla Bar No 0119423
mcmanusj@gtlaw.com
Zachary R. Needell
Fla Bar No 1011742
zachary.needell@gtlaw.com

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
T. 212.801.9200
George D. Sullivan
sullivang@gtlaw.com
Toby S. Soli
solit@gtlaw.com

**GREENBERG TRAURIG, P.A.**
333 Southeast Second Avenue, Suite 4400
Miami, Florida 33131
T. 305.579.0500
Elliot H. Scherker
Fla Bar No 202304
scherkere@gtlaw.com

**DWYER LAW, P.A.**
201 South Biscayne Blvd, Suite 1300
Miami, Florida 33131
T. 305.704.7225
Jared E. Dwyer
Fla Bar No 104082
jdwyer@jdwyerlaw.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on February 5, 2026, we electronically filed a copy of the foregoing with the Clerk of the Court using CM/ECF. We also certify that the foregoing doing was served on all counsel of record by transmission of Notice of Electronic Filing by CM/ECF.

/s/ Avi Benayoun
Avi Benayoun

20