**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:22-CV-20375-ALTMAN/REID**

DAVID FEINGOLD, *et al.*,

                Plaintiffs,

    vs.

RICHARD CARDINALE, *et al.*,

                Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**<u>MOTION TO DISMISS</u>**

**INTRODUCTION**

Defendant Richard Cardinale ("Cardinale") first moved to dismiss *David Feingold and Michael Dazzo v. Richard Cardinale, Vania Cardinale, RVCNY, LLC and RVCSI, LLC,* Case No. 1:22-cv-20375-ALTMAN/REID (the "First Filed Case") in July 2022. He gained no traction with that, and he also received some rulings early on in the First Filed Case which he did not prefer. Right around that time, Cardinale began initiating numerous unauthorized, inconsistent, and vexatious satellite litigations against Plaintiffs across the country, which he and his large law firm have prosecuted relentlessly.

After the shock and awe of Cardinale's approach dissipated, the purpose of his unauthorized satellite litigations became clear. Cardinale's strategy is fourfold. Through the unauthorized satellite litigations, he seeks to: (1) subvert this Court's authority; (2) damage Plaintiffs and their reputations; (3) unjustly enrich himself; and (4) obtain the same information and documents he has been denied in the First Filed Case.

Cardinale's improper tactics forced Plaintiffs to file an additional action in this Court seeking declaratory and injunctive relief to enjoin Cardinale from continuing with the unauthorized satellite litigations and the subversion of this Court's authority. This Court then consolidated that action with the First Filed Case and instructed Plaintiffs to file a consolidated complaint. Plaintiffs did so. (*See* First Consolidated Complaint ("FCC") (ECF 252)). Cardinale thereafter moved again for dismissal, this time of the FCC, in October 2024. (ECF 263).

Following the January 22, 2026 status conference in this matter, this Court ordered that "[b]y **February 5, 2026**, Defendants ***shall refile*** their Motion to Dismiss . . . ." (ECF 340, p. 1) (emphasis added). Rather than comply, Defendants filed an *unauthorized* rewrite of their motion to dismiss the *exact same* Complaint (ECF 347) ("Unauthorized Motion to Dismiss"). (*Compare* Unauthorized Motion to Dismiss *with* ECF 263). If Defendants had a valid basis for dismissal, they would have done what the Court instructed and refiled their motion to dismiss. Their need to rewrite their motion invites the question: Why? If Defendants had a winning argument for dismissal, why would they need to change it?

Defendants do not have a winning argument. Like their prior motions to dismiss, Defendants' Unauthorized Motion to Dismiss is replete with incorrect and inapplicable arguments and unbecoming insults. At bottom, Cardinale is attempting to deflect his responsibility and shift

1

his misconduct onto Feingold and Dazzo. The Court should not be deceived. The Unauthorized Motion to Dismiss should be denied.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. Facial attacks are resolved in the same manner as motions under Rule 12(b)(6), and as discussed below, assume that the allegations of the complaint are true. *McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).

Factual attacks, however, are not limited to the face of the complaint, and can be based upon matters outside the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Where a factual attack is made, as long as the resolution of disputed facts is not intertwined with the merits of the case, the Court may consider extrinsic evidence without converting the motion to one for summary judgment and may weigh the evidence to determine whether Plaintiffs have met the burden of proving the existence of subject matter jurisdiction. *Id.* at 1529.

In *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003), the Eleventh Circuit cautioned that "the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Id.* The Court further stated:

> If a jurisdictional challenge does implicate the merits of the underlying claim then the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion....

*Id.* (citations and marks omitted).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court is limited to reviewing what is within the four corners of the complaint, including any attachments thereto. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).[1] In addition, the Court must accept all allegations in the

---

[1] Defendants attach three irrelevant exhibits to the Motion that go beyond the four corners of the FCC. This Court should not consider any exhibits that were not previously attached to the FCC.

complaint as true and view them in the light most favorable to the plaintiff. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)). The Eleventh Circuit, in addressing the pleading standard under *Twombly*, has stated that "[t]his rule does not 'impose a probability requirement at the pleading stage.'" *Rivell*, 520 F.3d at 1309; *see also F.T.C. v. 1st Guar. Mortg. Corp.*, 2011 U.S. Dist. LEXIS 38606, at *6 (S.D. Fla. Mar. 30, 2011) ("Dismissal is only appropriate where the plaintiff's factual allegations do not 'raise a right to relief above a speculative level.'"). Instead, the "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell*, 520 F.3d at 1309-10. "It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the element] plausible" (*Id*. at 1310) and "give[s] the defendant fair notice of what the…claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957).

Under Rule 12, the burden rests squarely with the movant to demonstrate that no claim has been stated in the complaint upon which relief can be granted. *Larsen v. AirTran Airways, Inc.*, 2007 WL 2320592, at *3 (M.D. Fla. Aug. 10, 2007). Defendants fail to meet this burden.

<u>**ARGUMENT**</u>

**I.      <u>Count 1 should not be dismissed</u>.**

Defendants attack the Court's subject-matter jurisdiction as to this cause of action both facially and factually. Both attacks fail. Defendants also claim Plaintiffs have failed to state a claim upon which relief can be granted. This is incorrect. The relief Plaintiffs seek in Count 1 of the FCC can and should be granted.

   ***A.  Defendants' facial attack of Count 1 fails.***

Magistrate Judge Reid has already confirmed Plaintiffs have standing to bring this action. (*See* ECF 315, p. 10 ("[Plaintiffs] have standing to bring this suit because they are suffering an injury caused by Cardinale"). It is also important to note that in the AGM Dissolution Arbitration

---

*See e.g., Whitney Bank v. Robert A. Falanga, P.C.*, 2012 WL 13033299 (N.D. Fla. Jan. 12, 2012) (noting that exhibits attached by defendants to their 12(b)(6) motion to dismiss would not be considered). If, however, the Court is inclined to review the exhibits, Plaintiffs request the Court also review the exhibits to ECF 348.

(the record of which is misrepresented in the Unauthorized Motion to Dismiss), Feingold and Dazzo have directly sought to dissolve AGM. (*See* ECF 235-12). Cardinale, however, did not challenge their standing to do so in that case. He, in fact, confirmed it. (*See* ECF 348-5, p. 1 n.1 ("Mr. Cardinale is only subject to arbitration before the AAA as a Member/Manager of AGM. Mr. Cardinale does not consent and is not subject to arbitration before the AAA in any other capacity.")). Cardinale did not state that he, Feingold or Dazzo are not the three member managers of AGM and that they lack standing. Cardinale instead confirmed he is a member manager of AGM. Cardinale made this statement in the AGM Dissolution Arbitration because he wants AGM dissolved. He, however, does not want to be enjoined by the Court from pursuing the Unauthorized Lawsuits and, therefore, is contesting (albeit failingly) standing in this action (but not in the arbitration).

Plaintiffs allege that the three human beings who are the managing members of AGM are Feingold, Dazzo, and Cardinale. (ECF 252, ¶ 103). Plaintiffs further allege that AGM owns AG1-6. (ECF 252, ¶ 32). As noted above, a facial attack requires the acceptance of these allegations, as well as Plaintiffs' other allegations. *McElmurray*, 501 F.3d at 1251. Thus, for purposes of this facial attack, Defendants must accept the truth, which is that Feingold, Dazzo, and Cardinale are the three human beings who are managing members of AGM and that AGM owns AG1-6.

In reviewing an appeal of a declaratory judgment action, the Eleventh Circuit stated that "[a]t an irreducible constitutional minimum, the standing doctrine requires that a plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (citations and quotations omitted). The Eleventh Circuit further stated that if "a plaintiff seeks prospective relief, such as a declaratory judgment, he must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. And that future injury must be real, immediate, and definite." *Id.* at 1357 (citations and quotations omitted). All three Plaintiffs – Feingold, Dazzo, and Blackstream – have alleged such facts. (*See* ECF 252, ¶¶ 1-89, 188-204). As noted above, Magistrate Judge Reid has already confirmed the same. (*See* ECF 315, p. 10 ("[Plaintiffs] have standing to bring this suit because they are suffering an injury caused by Cardinale")).

### B. Defendants' factual attack of Count 1 also fails.

Defendants' factual attack directly implicates the merits of this cause of action, which is

impermissible. *See Morrison*, 323 F.3d at 925 ("If a jurisdictional challenge does implicate the merits of the underlying claim then the proper course of action for the district court ... is to find that jurisdiction exists ...."). As part of this attack, Defendants assert that the two issues before this Court – (1) whether AGM owns AG1-6 and (2) if Cardinale has authority to prosecute the Unauthorized Lawsuits – have already been resolved in his favor. (*See e.g.,* ECF 347, p. 19). Such assertions are disputed, and their resolution is directly intertwined with the merits of this action. This alone warrants denial of the Motion under Rule 12(b)(1).

Further, as Cardinale often does, the Motion misrepresents the records of courts elsewhere to try to win.[2] As noted above, two narrow declarations are being sought through this action, which are: (1) a declaration that AGM owns AG1-6 and (2) a declaration that Cardinale's Unauthorized Lawsuits cannot proceed without Feingold and Dazzo's consent. There is no cause of action for either aforementioned declaration in any of the unauthorized satellite litigations that Defendants point to in the Motion. (*See* ECF 315, p. 14 ("While Plaintiffs sought a similar injunction in arbitration, which they lost, they now seek declaratory judgment in addition to enjoining the Unauthorized Lawsuits. Declaratory relief has never been argued in another court or tribunal.")). Nevertheless, Defendants pretend there is and that multiple rulings in multiple states have been entered in Cardinale's favor on these issues. That is not true. (*See* ECF 315).

### C. *Defendants' request for abstention is disingenuous and misses the point.*

Despite having knowledge of his text message stating that AGM owns AG1-6, his organizational chart, AGM's consolidated financial statements, AGM's tax returns and the other exhibits attached to the FCC and Plaintiffs' pending Expedited Motion (ECF 233), Cardinale argued that the documentation of AGM's ownership of AG1-6 "fall[s] far short." (*See* ECF 235, p. 19). That contention was incredible, even for someone with multiple sequencing orders entered against him. Nevertheless, Cardinale has managed to one-up that ridiculous contention with an abstention argument. In the Unauthorized Motion to Dismiss, Defendants argue that this Court – the Court where this dispute began and should likewise end – *should dismiss this entire action to not subvert the authority of the AGM Dissolution Arbitration* (and an unidentified arbitration that

---

[2] In addition to the sequencing order issued by this Court against Cardinale out of concern that Cardinale would tailor his testimony (ECF 233-22), another one was entered against him in the Unauthorized Lawsuit Against Feingold and Dazzo for that same concern. (*See* ECF 252-24).

does not exist). (*See* ECF 347, pp. 18-19). This argument is utterly absurd[3] and misses the point. Here, Plaintiffs seek two narrow declarations: (1) that AGM owns AG1-6 and (2) that Cardinale's Unauthorized Lawsuits cannot proceed without Feingold and Dazzo's consent. That specific declaratory relief sought is not being pursued in the forums Cardinale cites. There is no cause of action in the AGM Dissolution Arbitration for the narrow relief sought here. (*See* ECF 235-12). Magistrate Judge Reid agrees:

> It appears to the Court that what was argued and granted in arbitration differ meaningfully from the relief sought here—thus, there are no preclusion issues. While Plaintiffs sought a similar injunction in arbitration, which they lost, they now seek declaratory judgment in addition to enjoining the Unauthorized Lawsuits. Declaratory relief has never been argued in another court or tribunal.

(ECF 315, p. 14). Here, Plaintiffs seek to enjoin __*Cardinale*__ from proceeding with the Unauthorized Lawsuits without Feingold and Dazzo's consent. The consequence of such a declaration is that AG1-6 will not be able to proceed *with the Unauthorized Lawsuits*, given that Feingold and Dazzo do not consent. (ECF 252, ¶¶ 86; ECF 252-9 and 10; ECF 315). This clear distinction upends Defendants' abstention argument.

### D. The relief sought can and should be granted.

1. AGM owns AG1-6.

As if the abstention argument was not bad enough, Cardinale doubles down by arguing that a January 28, 2022, resignation notice negates AGM ownership as a matter of uncontroverted fact.[4] Cardinale is just wrong. Count 1 alleges what actually happened: AG1-6 were structured as downstream conduits; AGM sat upstream as owner/manager; and Cardinale repeatedly acknowledged that structure in words and deeds. (*See* ECF 252-9 through 252-19; *see also* ECF 315).

Given that Cardinale's own documents and words support Plaintiffs' position (*see e.g.,* ECF 252-11 and 252-12), he resorts to mischaracterizing an email Feingold sent him on January

---

[3] As noted in the FCC, in granting Plaintiff Blackstream's Motion to Transfer, the South Carolina District Court found, *inter alia*, that: (1) the arguments made in the First Filed Case likely overlap with arguments to be presented in the Unauthorized Lawsuit Against Blackstream; (2) AG2, 4 & 5's arguments that the cases were dissimilar, in terms of the named parties and the alleged respective measure of damages, were not persuasive (citing the prior sworn declarations of Cardinale); and (3) the Unauthorized Lawsuit Against Blackstream appeared to be subsumed by the First Filed Case. (ECF 252, p. 18 n.9).

[4] The FCC exhibits alleged to confirm that AGM owns AG1-6 are exhibits 9-19.

28, 2022 (the "Feingold Email") (ECF 252-20).  The purpose of the Feingold Email was for Dazzo and Feingold to resign as managers of the AG1-6 and to trigger a buyout for Feingold and Dazzo's ultimate interests in the AG1-6. (See ECF 252-1, ¶ 8). Nowhere in the Feingold Email does Feingold state that AGM does not own AG1-6. (*See* ECF 252-20; *see also* ECF 315). Feingold also made his position on this issue clear at his deposition: AGM owns AG1-6. (ECF 252-18, 337:2-9). Dazzo did too. (ECF 252-19, 159:1-10).[5]

        2.   Plaintiffs state a claim for anti-suit injunction.

A federal court may exercise its discretion and issue an injunction precluding a party from bringing or continuing actions in other courts. *Banco Intercontinental, S.A. v. Renta*, 2005 WL 8168711, at *1 (S.D. Fla. Apr. 12, 2005). As with ordinary preliminary injunctions, the purpose of an anti-suit injunction is to preserve the *status quo* so that the Court may decide the case on its merits. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989-90 (9th Cir. 2006). Typically, anti-suit injunctions are seen in actions involving a foreign jurisdiction. Nevertheless, this Court can enjoin litigants from bringing or continuing actions in other courts in this country in the proper circumstances.[6] *See, e.g.*, ECF 315; *Blanchard v. Commonwealth Oil Co.*, 294 F.2d 834, 839 (5th Cir. 1961) (honoring Florida state court's anti-suit injunction where litigant chose to ignore the Florida appellate procedures); *see also In re Managed Care Litig.*, 236 F. Supp. 2d 1336

---

[5] The "document controls" principle in *Turner v. Williams*, 65 F.4th 564 (11th Cir. 2023), does not empower the Court to select Defendants' preferred reading of one document (a resignation notice) over other incorporated records (ownership charts, tax returns, operating agreements, communications, and testimony) and the Complaint's well-pled timeline. At most, Defendants identify factual disputes—which foreclose dismissal.

[6] Injunctive relief in this regard is, of course, used sparingly and must not run afoul of the Anti-Injunction Act, which generally provides that federal courts cannot enjoin state proceedings, but which carves out exceptions, including where "necessary in aid of its jurisdiction" and "to protect or effectuate" judgments. (*See, e.g.,* ECF 315; 22 U.S.C. § 2283; *Juris v. Inamed Corp.*, 685 F.3d 1294, 1340 (11th Cir. 2012) (finding anti-suit injunction did not violate Anti-Injunction Act under "to protect or effectuate" judgments exception); *Wesch v. Folsom,* 6 F.3d 1465, 1470–71 (11th Cir.1993) (affirming injunction and finding that "virtual equivalent of a *res* to be administered" existed where the district court had "invested a great deal of time and other resources in the arduous task of reapportioning Alabama's congressional districts"). Here, not only has this Court previously issued orders in the First Filed Case denying the very discovery that Cardinale is now seeking in the Unauthorized Lawsuits, but the Court's resolution of this action, as well as the First Filed Case, will be undermined if Cardinale is permitted to continue to prosecute the Unauthorized Lawsuits.

7

(S.D. Fla. 2002) (holding federal district court presiding over physicians' multidistrict class action litigation against managed care insurance companies had authority under All Writs Act to issue a preliminary injunction preventing insurer from proceeding with class action settlement involving same claims in another federal district court, where injunction was necessary to protect court's jurisdiction and where insurer "snookered" both courts).

Plaintiffs easily satisfy the two threshold requirements for an anti-suit injunction, and all discretionary factors weigh in favor of granting that injunction here. (ECF 315, pp. 15-18).

i.    The parties here and in the Unauthorized Lawsuits are effectively the same.

Magistrate Judge Reid already determined the real parties in interest to Cardinale's rogue and unilateral Unauthorized Lawsuits are named or effectively named in this lawsuit and in the Unauthorized Lawsuits. (ECF 315, pp. 15-16). In *APR Energy, LLC v. First Inv. Group Corp.*, 88 F. Supp. 3d 1300, 1315-16 (M.D. Fla. 2015), the Middle District of Florida interpreted the Eleventh Circuit's decision in *S.E.C. v. Pension Fund of Am., L.C.*, 396 Fed. Appx. 577 (11th Cir. 2010). Specifically, the Middle District found that *Pension Fund* "contemplates that even when parties to a domestic and foreign action are not 'literally' the same, the parties still may be effectively the same for purposes of an anti-suit injunction." *APR Energy*, 88 F. Supp. 3d at 1315-16. Likewise, in *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645 (2d Cir.2004), a case relied upon by *Pension Fund* and *APR Energy*, the Second Circuit found that the parties to both a domestic and foreign lawsuit were sufficiently similar, even though a party named in the foreign lawsuit, GE Brasil, was not named in the domestic action. *Paramedics*, 369 F.3d at 650. The court found that the claims against GE Brasil in the foreign suit "rest chiefly (if not completely) on [GE Brasil's] affiliation with GEMS-IT," and that the term affiliate can be "a term of art." *Id*. at 652.

Plaintiffs in this action are defendants in the Unauthorized Lawsuits. Cardinale is not a "named" party in the Unauthorized Lawsuits. But in the Unauthorized Lawsuits, Cardinale is wrongfully acting as if he is the sole member AG1-6, which are the plaintiffs in the Unauthorized Lawsuits. The actual member of AG1-6 is AGM, of which Feingold, Dazzo, and Cardinale are the ultimate member managers. (*See* ECF 252-9 and 10, ¶¶ 5-6; ECF 252-11 through 252-19; ECF 263-4, pp. 3-4, ¶ 5). Cardinale, as the sole manager of AG1-6, owes a duty of loyalty to AGM. (*See* ECF 252-2 through 252-7, Section 11.1) ("A Manager owes the Company and its Members a duty of loyalty"). Part of Cardinale's duty of loyalty to AGM is "holding as trustee for [the

8

Company], an[y] property, profit, or benefit derived by the Manager in the conduct . . . of the Company's business." (*See id.*). By falsely claiming, however, that he is the sole member of AG1-6 in each of the Unauthorized Lawsuits, Cardinale has taken the position that anything derived from his conduct as manager of AG1-6 is ultimately to be held for ***himself*** only rather than AGM.[7] Through such actions, Cardinale has violated and continues to violate the duty of loyalty he owes to AGM, and its ultimate beneficiaries: Feingold and Dazzo. Rather than accounting for AG1-6's assets or holding them in trust for AGM's benefit, Cardinale is spending significant company resources to pursue unauthorized litigation solely for his own benefit. (*See, e.g.,* the 14th attachment to ECF 348-2 (Cardinale admits he took $300,000 for himself/his lawyers)).

The Operating Agreements for AG1-6 each state that "[t]he consent of all Members [here AGM] will be required to approve . . . the authorization or ratification of acts that would otherwise violate the duty of loyalty." (*See* ECF 252-2 through 252-7, Section 8.1(b)(4)). As such, AG1-6's ability to continue the Unauthorized Lawsuits necessarily flows through Cardinale, Feingold and Dazzo and requires their unanimous consent. (*See* ECF 263-4, pp. 3-4, ¶ 5; *see also* ECF 252-9 and 10, ¶ 5).[8] Thus, as Magistrate Judge Reid already determined, the real parties in interest to Cardinale's rogue and unilateral Unauthorized Lawsuits are named or effectively named in this lawsuit and in the Unauthorized Lawsuits. (ECF 315, pp. 15-16).

ii.     Resolution of this case is dispositive of Cardinale's Unauthorized Lawsuits.

Defendants argue that this action is not dispositive of the Unauthorized Lawsuits. They are wrong. Magistrate Judge Reid already confirmed same. (ECF 315, p. 16). The Eleventh Circuit chooses to "read 'dispositive' for what it means: to settle or finish the dispute." *Canon Latin Am.,*

---

[7] Cardinale admits in the Motion that the Unauthorized Lawsuits "allege he is [AG1-6's] sole member." (ECF 347, p. 11). Amazingly, however, he then tries to argue that such allegation does not violate his duty of loyalty to AGM.

[8] In the Motion, Cardinale pretends that the unanimous consent must be in writing. He first points to section 4.1 of AG1-6's Operating Agreements, which identify the ***initial*** members and then points to section 13.3 which only provides that the Operating Agreements may be amended or revoked at any time by the written consent of all the Members. (ECF 347, p. 9). Nowhere do these Operating Agreements provide that the admission of a substitute member necessitates an amendment of the Operating Agreements. To the extent written consent is needed to effectuate the substitution (it is not), the Court need to look no further than ECF 252-9, 10 and 11 for written consent of Cardinale, Feingold and Dazzo, as well as the other documents submitted that reflect the substitution. (ECF 252-12 through 19).

*Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 n.8 (11th Cir. 2007). The case before this Court seeks a declaration that Cardinale is not authorized to pursue the Unauthorized Lawsuits on behalf of AG1-6 without Feingold and Dazzo's consent. Feingold and Dazzo do not consent to the Unauthorized Lawsuits continuing. (*See* ECF 252-9, ¶¶ 9-10; *see also* ECF 252-10, ¶¶ 9-10). Thus, the declaration sought here will finish the Unauthorized Lawsuits. (ECF 315, p. 16).

        iii.      <u>Discretionary factors tip towards injunctive relief</u>.

Plaintiffs meet the two threshold requirements necessary for an anti-suit injunction. As noted above, however, the Court may still consider additional, discretionary factors. *See APR Energy*, 88 F. Supp. 3d at 1321. These are not addressed in the Motion, which is understandable given they all tip towards granting injunctive relief as confirmed by Magistrate Judge Reid. (ECF 315, pp. 16-18).

"The Eleventh Circuit has not addressed what factors a district court should consider once the party seeking an anti-suit injunction has satisfied the gatekeeping inquiry." *APR Energy*, 88 F. Supp. 3d at 1321. Some circuits follow the liberal approach, under which an "anti[-]suit injunction is appropriate whenever there is a duplication of parties and issues and the court determines that the prosecution of simultaneous proceedings would frustrate the speedy and efficient determination of the case." *Id*. Other circuits apply a "conservative approach" under which "critical questions anent the issuance of an international anti[-]suit injunction are whether the foreign action either imperils the jurisdiction of the forum court or threatens some strong national policy." *Id*. Even the "conservative approach" warrants relief here. "Where . . . a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an antisuit injunction crests." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004). This is exactly what Cardinale has done. He has instituted the Unauthorized Lawsuits in a blatant attempt to evade the rightful authority of this Court and go around the First Filed Case.

An anti-suit injunction is also warranted here to prevent further irreparable harm to Plaintiffs, which includes, but is not limited to, the depletion of the assets/value of the Alternative Global Entities themselves. *See Commodity Futures Trading Comm'n,* 2007 WL 2915647, at *21–22 (approving injunction where foreign litigation would "frustrate this court's ability to provide

10

meaningful relief ... The [foreign] action is clearly an attempt to make an end-run around this court and the . . . orders preserving the assets of the [receivership] for the benefit of the investors").[9]

## II.     Counts 2-10 should not be dismissed.

Feingold and Dazzo have standing to bring Counts 2-10. Moreover, as explained below, Feingold and Dazzo have stated claims that can and should be granted by this Court, and none are impermissible "shotgun pleadings."

### A.  Counts 2-10 are not impermissible "shotgun pleadings."

Defendants call the counts "shotgun" because they incorporate prior paragraphs. The Eleventh Circuit does not impose a per se ban on incorporation; the question is whether each count identifies the actors, conduct, and legal theory—which the FCC does. If any detail is unclear, the remedy is a more definite statement, not dismissal.

The argument that Counts 2-10 of the FCC are mere "shotgun pleadings" is belied by the FCC itself. As detailed in the analysis in the subsections that follow, the FCC articulates its claims with sufficient clarity that it is possible to know which allegations of fact are intended to support which claims for relief. The FCC may require Defendants to engage in some degree of analysis, but if any party is unclear about the meaning of a particular allegation in the FCC, which would be surprising, the proper course of action is not to move to dismiss but to move for a more definite statement. This is exactly the course of action that took place in the "shotgun pleadings" case cited in the Unauthorized Motion to Dismiss.[10]

Despite Defendants' attempt to frame Courts 2-10 as simply restating and realleging the allegations in the preceding paragraphs, each count outlines the Defendant(s) involved and contains numerous paragraphs specific to that count. Counts 2-10 clearly set forth the allegations concerning the precise conduct and distinct legal bases supporting each cause of action, and for these reasons, Counts 2-10 are not shotgun pleadings.

### B.  Feingold and Dazzo have standing to assert a claim for fair value, and the claim is proper.

---

[9] While Plaintiffs are not required to satisfy any of the four elements for traditional preliminary injunctions for the anti-suit injunction to be entered, all four are satisfied. (*See* ECF 233, pp. 14-18). The Operating Agreements of AG1-6, the equities and public interest, coupled with the irreparable harm Cardinale is inflicting, demand he be restrained as requested.

[10] There, all defendants moved for a more definite statement. *See Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018).

As noted above, Feingold and Dazzo allege that the three human beings who are the managing members of AGM are Feingold, Dazzo and Cardinale. (ECF 252, ¶ 103). Feingold and Dazzo further allege that AGM owns AG1-6. (ECF 252, ¶ 32). Given that a facial subject-matter jurisdiction attack requires the acceptance of these allegations, as well as Feingold and Dazzo's other allegations, *see McElmurray*, 501 F.3d at 1251, Defendants have to accept the truth, which is that (1) Feingold, Dazzo and Cardinale are the three human beings who are managing members of AGM and (2) AGM owns AG1-6.

AGM and AG1-6 operate under Delaware law. (ECF 252-1, p. 8, ¶ 13.4). Delaware law provides:

> An artificial entity's interests "must ultimately derive from the interests of the human beings that are its members [here, Feingold, Dazzo and Cardinale] (albeit through the medium of other partnerships and corporations)."

*HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1193 (3d Cir. 1996). Feingold and Dazzo have standing to bring this claim under Delaware law. In fact, on September 13, 2022, Cardinale, through his counsel, conceded on the record ***in this case*** that Feingold and Dazzo are entitled to fair value of their ultimate interests in AG1-6:

> In Count [2], [Feingold and Dazzo] say [Feingold and Dazzo] want X millions of dollars, which is the fair return on the value of these investments. Now, by law [Cardinale is] obliged to return those monies under Delaware law.

(ECF 252-23, 16:10-14). Critically, Cardinale acknowledged this on September 13, 2022, well after the time he sent a text message to Feingold confirming AGM's ownership of AG1-6:



(ECF 252-11). Cardinale has acknowledged that Feingold and Dazzo are entitled to fair value of their interests in AG1-6. Thus, the only issue that should be before the Court is: What is the fair value? Cardinale has other concerns now, however, *i.e.,* his unauthorized satellite litigations being enjoined, so he is now attempting to make standing an issue in this case.

As discussed in Section I.A., in the AGM Dissolution Arbitration (the record of which Cardinale misrepresents throughout the Motion), Feingold and Dazzo have directly sought to dissolve AGM. (*See* ECF 235-12). Cardinale did not challenge their standing to do so in that case and, in fact, affirmed same. (*See* ECF 348-5, p. 1 n.1) ("Mr. Cardinale is only subject to arbitration before the AAA as a Member/Manager of AGM. Mr. Cardinale does not consent and is not subject to arbitration before the AAA in any other capacity.")). The reason for this is Cardinale wants to dissolve AGM. He, however, does not want to be enjoined by the Court from pursuing the Unauthorized Lawsuits and therefore is contesting (albeit failingly) standing in this action.

The bottom line here, however, is Cardinale already acknowledged *in this case – while knowing AGM owned AG1-6 –* that Feingold and Dazzo have standing to bring this claim against Cardinale and that they are entitled to fair value of their interests in AG1-6. The law supports what he acknowledged. Feingold and Dazzo's claim should not be dismissed. Moreover, for the reasons set forth herein as to Cardinale, as well as the well-pled alter ego allegations of the FCC, Feingold and Dazzo have standing to pursue the claims against them and are entitled to fair value from them.

### C.  Feingold and Dazzo have standing to pursue Counts 3 through 10.

For the reasons set forth in the immediately preceding section (Section 2.B.), Feingold and Dazzo have standing to bring Counts 3, 4, 6, 7, 8 and 10 directly against all Defendants. They also have standing to bring Count 5, which is a well-pled tort claim concerning the fraudulent misrepresentations to Feingold and Dazzo *before* the Alternative Global Entities were even formed. (ECF 252, ¶¶ 226-249).

Count 9 is not directed to Cardinale. Nevertheless, for the reasons identified above, as well as the well-pled allegations regarding Cardinale's co-Defendants in the FCC, Feingold and Dazzo have standing to pursue the claims against all Defendants.

### D.  Feingold and Dazzo properly state a claim for conversion in Count 4.

Feingold and Dazzo properly allege a claim for conversion since the FCC amply alleges a "positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner." *Columbia Bank v. Turbeville*, 143 So. 3d 964, 969

13

(Fla 1st DCA 2014)(internal citation omitted). Thus, Feingold and Dazzo allege that (1) Cardinale (a) has wrongfully taken funds from AGM's bank account and blocked Feingold and Dazzo from accessing these accounts to discover the amount taken, (b) is believed to have siphoned off at least $300,000 in one asset of AGM known as Alternative Spin and, (c) upon information and belief, he is taking assets from the Alternative Global Entities without proper authorization and approval; (2) Feingold and Dazzo properly assert rights to such property and assets as the "true owners;" and (3) Cardinale's conversion is inconsistent with Feingold and Dazzo's ownership rights. (ECF 252, ¶¶ 217-224).

As shown, the fact that this claim seeks recovery, in part, for wrongfully taken funds from AGM's specific bank account and $300,000 in one specific asset known as Alternative Spin, is no obstacle. *Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir.1987)(conversion was committed when defendant took plaintiff's money with no intention of delivering cars); *Freestream Aircraft USA Ltd. v. Chowdry*, 2018 US Dist LEXIS 37596, at *12 (S.D. Fla. Mar. 7, 2018) ("Plaintiff alleged in the Amended Complaint that 'Freestream's distribution of $2,580,950.00 was transferred into Atlas Aviation's specified PNC bank account on July 25, 2013.' . . . The Court finds that this language alleges that the money was sufficiently identifiable . . .Therefore, the conversion claim should not be dismissed.").[11] Feingold and Dazzo allege here that Cardinale, without authorization, took money from a specific bank account and siphoned off at least $300,000 in a specific asset known as Alternative Spin. Also, this claim is not limited to funds but also

---

[11] In another federal case applying Florida law on conversion, *FL Dep't Ins. v. Debenture Guarantee,* 921 F. Supp. 750, 757 (M.D. Fla.1996), the court found that $1.1 million not placed into the proper account was identifiable enough for a conversion claim to survive a motion to dismiss. These same principles applied in *Masvidal v. Ochoa,* 505 So.2d 555 (1987). There, the court found that a defendant who took funds from plaintiff's escrow committed conversion. Although Delaware law does not apply here, there are cases recognizing exceptions and should cover the theft allegations here. *B.A.S.S. Group, LLC v. Coastal Supply Co.*, 2009 Del. Ch. LEXIS 166, at *33 (Del. Ch June 19, 2009)("For reasons discussed in connection with Coastal's claim for unjust enrichment, Coastal also is entitled to summary judgment on its claim for conversion of the embezzled funds contributed to BASS, and then used to purchase the Property. The remedy would include, at least, a damage award against BASS of $412,972.52 . . ."); *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2021 Del. Ch. LEXIS 131, at *34-35 (Del. Ch June 14, 2021)("So, an action for conversion of money will only lie where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant.").

14

includes "any assets related thereto." These allegations are sufficient to state a claim for conversion.

### E. Feingold and Dazzo properly state claims in Counts 3, 5, 6, 7, 8 and 10.

Feingold and Dazzo properly allege claims against Cardinale and Vania Cardinale ("Vania") for conspiracy to commit fraud (Count 7) and civil conspiracy (Count 8). The backdrop for these claims is informed by the section of the FCC relating Cardinale's alter-ego entities, and Vania's entity ownership and participation in Cardinale's improper use of the entities for the purpose of defrauding creditors and secreting assets to evade liability for pre-existing personal liability, including in connection with the claims and liabilities at issue here. (ECF 252, ¶¶ 171-186). Proper alter-ego allegations are alleged here showing that RVCNY and RVCSI are Cardinale's alter-egos and are liable under a reverse piercing theory.[12]

Feingold and Dazzo properly allege claims against Cardinale and Vania for conspiracy to commit fraud because the FCC alleges (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed. *See Gilison v. Flagler Bank*, 303 So.3d 999, 1004 (Fla. 4th DCA 2020). Significantly, "[a] conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Logan v. Morgan, Lewis & Bockius Ltd. Liab. P'ship*, 350 So. 3d 404, 412 (Fla. 2d DCA 2022)(citation omitted).

To the extent Cardinale argues that Feingold and Dazzo have failed to adequately allege the underlying fraudulent misrepresentation claims against Cardinale, even the most cursory review of the FCC shows the great detail in which Cardinale's fraudulent misrepresentations are

---

[12] *Estudios, Proyectos e Inversiones de Centro Am., S.A. (EPICA) v. Swiss Bank Corp. (Overseas) S.A.*, 507 So. 2d 1119, 1120 (Fla. 3d DCA 1987) (The remedy of piercing the corporate veil is available to "hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability."); *SE Prop. Holdings, LLC v. Phillips*, 2016 US Dist LEXIS 198187, at *8-9 (N.D. Fla May 4, 2016).

described.[13] Feingold and Dazzo also properly allege: an agreement between Cardinale and Vania to do an unlawful act or to do a lawful act by unlawful means (ECF 252, ¶ 259), Cardinale's participation in the conspiracy and overt acts including his misrepresentations and omissions (*Id.* at ¶ 260), Vania's awareness of Cardinale's false representations and omissions (*Id.* at ¶ 261), her participation (*Id.* at ¶ 262), her overt acts in furtherance (*Id.* at ¶ 263), and damages (*Id.* at ¶ 264).

Feingold and Dazzo also properly assert a claim for civil conspiracy against Cardinale and Vania because the FCC alleges the elements and facts in the preceding paragraph, *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014), with the only difference being that this conspiracy claim is predicated on Cardinale's breach of fiduciary duty and conversion. (ECF 252, ¶¶ 265-270). *See Voll v. Randazzo*, 674 So. 2d 892, 895 (Fla. 5th DCA 1996) ("Although the Randazzos presented no evidence that Bridget Voll made any misrepresentations, the evidence supports . . . that Bridget Voll had knowledge of, and participated in, Voll's scheme to deprive the Randazzos of any proceeds from the sale of the lots.").

Defendants claim that Vania's deposition testimony that she "had no knowledge" should suffice to remove her from the conspiracy with her husband to receive funds for nothing and transfer monies to enrich them both at Feingold and Dazzo's expense. This argument does not hold up. That testimony is similar to Cardinale's incredible deposition testimony that he could not speculate on what numerous basic business terms mean, even though he claims to be an experienced fund manager. (ECF 252, ¶ 126). Their testimony is feigned, totally unbelievable, and self-serving. Vania was aware that she was being used as a financial shield and pawn in her husband's schemes and willingly agreed to participate and benefit thereby. Accepting Defendants' logic would mean that anytime a defendant denies knowledge, they simply must be dismissed from a conspiracy claim notwithstanding substantial evidence of such knowledge. This is absurd.

### F.  Feingold and Dazzo state an aiding and abetting claim against Vania in Count 9.

Defendants complain that Feingold and Dazzo have not alleged that Vania had "knowledge" and provided "substantial assistance" to plead aiding and abetting Cardinale's breach of fiduciary duty because she self-servingly testified that she did not have any knowledge and did

---

[13] Aside from the incorrect standing argument, Defendants do not seriously dispute that Feingold and Dazzo have properly alleged their claims for breach of fiduciary duty (Count 3), fraudulent misrepresentations (Counts 5 and 6) and unjust enrichment (Count 10). They cannot.

not aid and abet.[14] While Vania, like her husband, suddenly does not know anything about anything, her actual knowledge can be properly shown by circumstantial evidence. *Silverboys, LLC v. Sofia Joelsson*, 2021 WL 8919003 at *7 (S.D. Fla. Sep. 26, 2021). Here, Feingold and Dazzo allege:

> Vania Cardinale had knowledge of these breaches as well as personally benefiting from them by virtue of, among other things, her ownership in the various entities described herein, her managerial role according to Cardinale's Form ADV, payments of over $1.3 million to L3 Capital Management and over $3 million to RVCSI, LLC ("Richard Vania Cardinale Staten Island") from Alternative Global Management LLC and her apparent signing authority over RVCNY, LLC bank accounts, authority to sign agreements for RVCNY, LLC and access to bank accounts for RVCSI, LLC.

(ECF 252, ¶ 275).

Feingold and Dazzo have also alleged Vania's substantial assistance in her husband's breaches. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Logan*, 350 So. 3d at 411. Feingold and Dazzo allege that Vania substantially assisted the wrongdoing, by among other things, awareness of her role was part of an overall improper activity, assisting in concealment, executing documents on behalf of entities since she would "just sign things" that Cardinale asked her to sign, as well as receiving funds for which she did not provide any services, in furtherance of the breaches and scheme, in which Cardinale directed funds from the Alternative Global Entities. (ECF 252, ¶ 276). Vania was a facilitator, knew she was a shield from creditors, received monies with her husband, which she then helped move around, accepted millions of dollars in her corporation while keeping no corporate minutes or complying with any corporate formalities, and now argues that her feigned denials should justify removing her from the conspiracy with her husband. Cardinale's claims of his wife's willful ignorance are simply beyond credibility, or at best, are in and of themselves part of the scheme to hide his wrongdoings.

---

[14] Feingold and Dazzo have properly alleged this claim by setting forth: (1) the primary wrongdoer had a fiduciary duty; (2) the primary wrongdoer breached that fiduciary duty; (3) the aider and abettor had knowledge of the breach; and (4) the aider and abettor substantially assisted or encouraged the wrongdoing (ECF 252, ¶¶ 272-277); *See Bruhl v. Price WaterhouseCoopers Int'l*, 2007 WL 983263, at *10 (S.D. Fla. Mar. 27, 2007). Defendants do not dispute that Cardinale breached his fiduciary duty.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court should deny the Motion in its entirety.[15]

**[signature page follows]**

---

[15] To the extent the Court should find any deficiencies with Plaintiffs' claims, Plaintiffs respectfully request that leave to amend be granted under Fed. R. Civ. P. 15(a)(2).

Dated: February 19, 2026

**BERKELEY LAW P.A.**

By: /s/ *Lorne E. Berkeley*
Lorne E. Berkeley, Esq.
Fla. Bar No. 146099
10600 Griffin Road, Suite 104
Cooper City, Florida 33328
Telephone: 305-527-7054
Lorne@BerkeleyLawFL.com
LegalAssistant@BerkeleyLawFL.com


**WELTZ KAKOS GERBI WOLINETZ
VOLYNSKY LLP**

Irwin Weltz*
Thomas Scot Wolinetz, Esq.
Florida Bar No. 1001160
1 Old Country Road, Suite 275
Carle Place, New York 11514
Telephone: (516) 506-0561
iweltz@weltz.law
twolinetz@weltz.law
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*
*David Feingold and Michael Dazzo*

**CLARKE SILVERGLATE, P.A.**

By: /s/ *Spencer H. Silverglate*
Spencer H. Silverglate, Esq.
Florida Bar No. 769223
Ana Sarmento, Esq.
Florida Bar No. 1025053
5301 Blue Lagoon Dr., Suite 900
Miami, Florida 33126
Telephone: (305) 377-0700
ssilverglate@cspalaw.com
asarmento@cspalaw.com
ssimm@cspalaw.com
lyun@cspalaw.com


**GALLIVAN WHITE BOYD P.A.**

John T. Lay, Jr., Esq.*
Ioannis (Ian) G. Conits, Esq.*
55 Beattie Place, Suite 1200
Greenville, South Carolina 29601
Telephone: (864) 271-5432
jlay@gwblawfirm.com
iconits@gwblawfirm.com
* *Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*
*Blackstream Development, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of February 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Spencer H. Silverglate*
Spencer H. Silverglate, Esq.

19