UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-20375-ALTMAN/Reid

DAVID FEINGOLD, *et al.*,

      *Plaintiffs*,

*v.*

RICHARD CARDINALE, *et al.*,

      *Defendants.*

_____/

## ORDER ON MOTION TO DISMISS

Our original two Plaintiffs, David Feingold and Michael Dazzo, were once business partners with Defendant Richard Cardinale. After this relationship fractured, Feingold and Dazzo sued Cardinale (and several related businesses) "for failure to pay fair value for their ultimate membership interests in various limited liability companies, breach of fiduciary duty, conversion, fraudulent misrepresentations, conspiracy to commit fraud, civil conspiracy, aiding and abetting breach of fiduciary duty and unjust enrichment." First Consolidated Complaint (the "FCC") [ECF No. 252] ¶ 1. Feingold and Dazzo—along with two other businesses—then brought another lawsuit accusing Cardinale of engaging in "vexatious and unauthorized litigation" against them to "subvert the orders [of] this Court" and "harass Plaintiffs[.]" *Id.* ¶¶ 2–3; *see also* Order of Consolidation [ECF No. 231] at 1 (consolidating these two lawsuits).

"To prevent the further balkanization of this action," we ordered the Plaintiffs "to file one complaint with all their claims against the Defendants and for the Defendants, in turn, to file one responsive pleading to that consolidated complaint." Aug. 29, 2024 Order [ECF No. 250] at 2. The Plaintiffs complied with our order and filed a "First Consolidated Complaint" that combined their original claims against the Defendants with a new "declaratory judgment action" designed to "end

Cardinale's unauthorized litigations." FCC ¶ 4. The Defendants moved to dismiss the First Consolidated Complaint. *See* Motion to Dismiss [ECF No. 347]. But before we could adjudicate the Motion to Dismiss, the parties sought—and we entered—a stay of this case. *See* Order Granting Joint Motion for Stay [ECF No. 329]. The parties told us this stay would allow them "adequate time to complete a settlement." Joint Motion to Stay [ECF No. 328] at 1. And, because the parties were poised to settle this dispute, we provisionally denied the Defendants' Motion to Dismiss (along with the Defendants' Objections to Magistrate Judge Reid's Report & Recommendation, which will be the subject of a subsequent order). *See* Order Granting Motion for Stay at 1 ("The pending Motion to Dismiss [ ] [is] provisionally DENIED as moot." (emphasis removed)).

Unfortunately, the parties couldn't complete a settlement and asked us to reopen this case—which we did. *See* Jan. 23, 2026 Order After Status Conference [ECF No. 340]. The Defendants timely refiled their Motion to Dismiss, *see* Refiled Motion to Dismiss ("MTD") [ECF No. 347], which is now fully briefed and ripe for adjudication, *see* Response in Opposition to MTD ("Response") [ECF No. 349]; Reply in Support of MTD ("Reply") [ECF No. 351]. After a careful review of the record, the pleadings, and the parties' arguments, we **GRANT in part** and **DENY in part** the MTD.

### THE FACTS

In 2019, Cardinale "asked Feingold and Dazzo to be co-managers of an investment fund he was forming, the L3 Capital Income Fund." FCC ¶ 18. Although Feingold and Dazzo initially "declined Cardinale's invitation[,]" Cardinale made numerous (but untrue) "representations . . . to ultimately induce them to go into business with him." *Id.* ¶¶ 19–20. Since Feingold and Dazzo "were only looking for a source of non-recourse funding to pursue various business opportunities," the three men ultimately agreed on the following set-up: (1) the L3 Capital Income Fund "would be the lender for Feingold and Dazzo's intended business endeavors"; (2) "Cardinale, Feingold and Dazzo would

be made equal equity owners of those businesses"; and (3) "Cardinale, Feingold, and Dazzo would receive the funds left over after loan payments were made." *Id.* ¶¶ 21–22.

To put this plan into action, Feingold, Dazzo, and Cardinale created seven Delaware LLCs, collectively known as the "Alternative Global Entities," between November 19, 2019, and July 8, 2020. *See id.* ¶¶ 23–24. Six of these LLCs—collectively referred to as the "Alternative Numbered Entities"— were created to invest in different industries. So, for example, Alternative Global One, LLC ("AG1") "focus[ed] on the merchant cash advance industry," Alternative Global Two, LLC ("AG2") "focus[ed] on infrastructure and real estate development," and so on. *Id.* ¶ 23.[1] Each of the six Alternative Numbered Entities' operating agreements "list[ed] Feingold, Dazzo[,] and Cardinale as the initial Members" and provided a mechanism for "the assignment of membership interests, the admission of assignees as substitute members, and the redemption of the membership interest of a non-initial Member (*i.e.*, an entity or person other than Feingold, Dazzo[,] and Cardinale)." *Id.* ¶¶ 30–31 (cleaned up). That's where the seventh LLC, Alternative Global Management, LLC ("AGM") came into play. "After creating the Alternative Global Entities, Feingold, Dazzo[,] and Cardinale assigned their membership interests in the Alternative Numbered Entities to AGM and admitted AGM as a substitute member in the Alternative Numbered Entities[.]" *Id.* ¶ 32. Like the Alternative Numbered Entities, Feingold, Dazzo, and Cardinale were the initial Members of AGM, and each had a 33.33% interest in the company. *See* AGM Operating Agreement [ECF No. 252-1] ¶ 4.1. The purpose of AGM—according to the Plaintiffs at least—was to "be a consolidation of sorts with all of the new companies flowing through [AGM]." FCC ¶ 32(vi).

Throughout 2021, "the relationship between Feingold and Dazzo . . . and Cardinale . . . began to fray and continued to deteriorate as the year progressed." *Id.* ¶ 33. The issue, the Plaintiffs say, is

---

[1] AG3 "focus[ed] on the debt-settlement industry[,]" AG4 "focus[ed] on developing real estate[,]" AG5 "focus[ed] on the fast-food industry and hospitality[,]" and AG6 "focus[ed] on home building." FCC ¶ 23.

that Cardinale was both "hiding over twelve million dollars of compensation from his investors in the L3 Capital Income Fund" *and* submitting "fraudulent billings to Feingold and Dazzo for services Cardinale never performed[.]" *Id.* ¶ 90. Before forming the Alternative Global Entities, Cardinale represented to Feingold and Dazzo "that he had operated nearly ten funds himself and already had a complete back office set up to operate a fund." *Id.* ¶ 100. To induce Feingold and Dazzo to do business with him, Cardinale promised that he would handle "all administrative services" and "all conflict of interest, earnings, distribution and fee disclosures as he was personally responsible for[.]" *Id.* ¶¶ 106–07. In exchange, "the Alternative Global Entities would pay all administrative expenses for themselves and the L3 Capital Income Fund in return for all of the back office, record keeping, due diligence, and compliance" and Cardinale himself would receive "an advisory services fee[.]" *Id.* ¶¶ 105, 108. So, when Cardinale "billed AGM [for] about $1.6 million dollars[,]" Feingold and Dazzo assumed they "were paying for all administrative expenses and Cardinale's continued promises that he had maintained all the records, reporting, due diligence, and complete back-office services for the Alternative Global Entities." *Id.* ¶ 113. According to the Plaintiffs, however, Cardinale pocketed the money for himself and did very little administrative work on behalf of the Alternative Global Entities. *See id.* ¶ 121 ("In all, Cardinale billed about $1.6 million for expenses but he now claims to only have some, incomplete back-office records and due diligence files (while previously claiming he had none) and that the substantial monies paid were not used as represented.").

On January 28, 2022, this conflict came to a head when Feingold and Dazzo "provided notice of their resignations as managers of the Alternative Numbered Entities and . . . demanded their respective interests in the Alternative Numbered Entities be redeemed[.]" *Id.* ¶ 34. In doing so, however, Feingold and Dazzo exclaimed in their resignation letter that they "were still managers and members of [AGM]" and that Cardinale "may not make any distributions at all from that entity without approval and consent of [Feingold and Dazzo]." *Id.* ¶ 35 (quoting Notice of Resignation [ECF

No. 252-20] at 2). As a result, Feingold and Dazzo continued to operate under the belief that Cardinale "owed/owes a duty of loyalty to AGM, as well as AGM's ultimate beneficiaries: Feingold and Dazzo," and that "AGM may only act with the unanimous consent of Feingold, Dazzo and Cardinale." *Id.* ¶¶ 37, 40. Within weeks of their resignation, Feingold and Dazzo brought this action against Cardinale, Cardinale's wife (Vania Cardinale), and two companies owned by Cardinale—RVCNY, LLC, and RVCSI, LLC.[2]

## THE LAW

A motion challenging our subject-matter jurisdiction under Rule 12(b)(1) may take the form of either a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). A "factual attack" instead "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). In considering a factual attack on jurisdiction, "a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this

---

[2] The Plaintiffs allege that RVCNY and RVCSI are Cardinale's alter egos since he formed them "for the purpose of defrauding creditors and secreting assets in order to evade liability for preexisting personal liability, including in connection with the claims and liabilities at issue here." FCC ¶ 171.

"plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "The motion is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Ibid.* (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

The Plaintiffs' FCC asserts ten counts against the Defendants. In Count I, the Plaintiffs seek a declaratory judgment that "AGM owns the Alternative Numbered Entities" and that Cardinale's various lawsuits brought on behalf of the Alternative Numbered Entities "cannot proceed without Feingold and Dazzo's consent." FCC ¶ 202. Count II seeks the "payment of fair value" from Cardinale, RVCSI, and RVCNY under Delaware law. *Id.* ¶ 210. Counts III, IV, V, VI, and X of the FCC are also against Cardinale, RVCSI, and RVCNY, and accuse these Defendants of breach of fiduciary duty, conversion, two counts of fraudulent misrepresentation, and unjust enrichment under Florida law. *See id.* ¶¶ 214, 223, 226, 254, 279. Counts VII and VIII of the FCC accuse Cardinale and his wife Vania of two counts of conspiracy to commit fraud. *See id.* ¶¶ 259, 266. Finally, Count IX of the FCC avers that Vania aided and abetted Cardinale's breach of fiduciary duty. *See id.* ¶ 275.

The Defendants have moved to dismiss the FCC on four grounds. *First*, they argue that the Plaintiffs lack standing to pursue all ten of their claims because they "bring direct claims to assert rights that [ ] belong to AGM, not to Plaintiffs[.]" MTD at 9. *Second*, they claim that we must abstain from entering judgment in this case because doing so would "subvert a pending arbitration filed by Feingold and Dazzo to dissolve AGM[.]" *Ibid. Third*, the Defendants insist that that Counts II–X are "impermissible shotgun pleadings." *Ibid. Fourth*, they contend that the Plaintiffs "fail to state a cause of action as to any of their claims[.]" *Ibid.* We'll address each argument in turn.

## I.        Standing

The Defendants first argue that the Plaintiffs lack standing to bring any of their claims because they aren't the "real parties in interest" and can't "appropriately bring claims to assert AGM's rights." MTD at 9–10. To hear the Defendants tell it, Feingold and Dazzo are merely "members of entities that are [ ] members of AGM," which, in turn, "is a member of the LLCs whose governance [the Plaintiffs] now challenge." *Id.* at 10. The Defendants claim that the Plaintiffs' "indirect" membership in AGM is insufficient to confer standing and that only AGM could bring the Plaintiffs' claims. *Ibid.* The Plaintiffs respond that Feingold and Dazzo have standing because they "are managing members of AGM," and an "artificial entity's interests 'must ultimately derive from the interests of the human beings that are its members[.]'" Response at 12 (quoting *HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1193 (3d Cir. 1996)).

For starters, we think the Defendants have improperly conflated two different types of standing: Article III standing and "prudential standing." The "irreducible constitutional minimum of [Article III] standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Since Article III "limits our power only to 'cases or

controversies[,]'" "we have no power to judge the merits" of a claim brought by a plaintiff who lacks standing. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1231–32 (11th Cir. 2019) (cleaned up).

"Prudential standing," on the other hand, is a concept that encompasses "at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Prudential standing differs from Article III standing in two material respects. *One*, prudential standing's focus is on "whether [the plaintiff] has a right to sue under [the] substantive statute," not whether he or she meets the strictures of Article III's standing requirements. *Lexmark*, 572 U.S. at 127 (cleaned up); *see also Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1313 (11th Cir. 2024) (Marcus, J., concurring) ("[Prudential standing] properly asks whether the plaintiff 'falls within the class of plaintiffs whom Congress has authorized to sue' under the statute—in other words, whether the plaintiff 'has a cause of action under the statute.'" (quoting *Lexmark*, 572 U.S. at 128)). *Two*, prudential standing is not a "jurisdictional doctrine that would give rise to a Rule 12(b)(1) dismissal without prejudice." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018). Instead, a prudential standing challenge implicates "whether Plaintiffs have a valid cause of action" and must be "made under Rule 12(b)(6)." *Ibid.*

The central conceit of the Defendants' standing argument is that Feingold and Dazzo aren't "the real parties in interest for any of their claims." MTD at 9. Although the Defendants reference both Article III and prudential standing in their papers, *see* MTD at 9, this "real party in interest"

argument is a creature of prudential standing, *see, e.g.*, *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018) ("Normally, a natural person is not the real party in interest for bringing a suit based on a corporation's rights, even when the person is the sole owner of the corporation. We treat this as an issue of the real party in interest under Rule 17 of the Federal Rules of Civil Procedure and have in the past analyzed the issue as one of prudential standing, which would allow us to exercise discretion over whether to hear the case on the merits." (cleaned up)); *Martineau v. Wier*, 934 F.3d 385, 391 n.3 (4th Cir. 2019) ("We have on occasion referred to this real-party-in-interest question as one of 'standing.' But in that context, the reference is not to Article III standing—the basis for the district court's jurisdictional holding—but to prudential standing[.]" (cleaned up)); *Live Ent., Inc. v. Digex, Inc.*, 300 F. Supp. 1273, 1277 (S.D. Fla. 2003) (Cohn, J.) ("There is a distinction between questions of Article III standing and Rule 17(a) real party in interest status." (citing *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1291–92 (11th Cir. 2003))). We therefore conclude that the Defendants are advancing a prudential standing argument that challenges the Plaintiffs' *ability* to assert a cause of action and *isn't* a jurisdictional attack based on a lack of Article III standing.

The Defendants specifically raise their prudential standing challenge under the shareholder standing rule by arguing that only AGM could bring the Plaintiffs' claims. *See* MTD at 11 (arguing the right to bring suit "would belong solely and exclusively to AGM"); *id.* at 12 ("Feingold and Dazzo are neither the LLCs themselves nor the alleged members of the LLCs [*i.e.* AGM]."); *ibid.* ("Feingold and Dazzo lack standing to bring a direct claim for conversion based on Cardinale's alleged conversion of funds belonging to an entity in which they merely hold an indirect 'ultimate' interest.").

"It is by now well-established that shareholders may not sue individually for injuries suffered by their corporations." *Guillaume v. Hyde*, 2020 WL 3317042, at *4 (S.D. Fla. June 18, 2020) (Altman, J.), *aff'd sub nom. Guillaume v. U.S. Dep't of Veterans Affs.*, 847 F. App'x 627 (11th Cir. 2021) (first citing *Cook v. Trinity Universal Ins. Co. of Kan.*, 297 F. App'x 911, 913–914 (11th Cir. 2008); then citing *KMS*

*Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1324 (11th Cir. 2004); and then citing *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981)); *see also Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 988 n.1 (11th Cir. 2010) ("The shareholder standing rule [ ] 'is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation.'" (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990))). And, although the Eleventh Circuit hasn't yet opined on the issue, judges in this District agree that the shareholder standing rule applies to LLCs. *See United States v. All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305, 1329 (S.D. Fla. 2011) (Marra, J.), *aff'd sub nom. United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480 (11th Cir. 2013) ("[J]ust as shareholders in a corporation do not have [standing] to contest the forfeiture of corporate property, the LLC minority-member Claimants in this case likewise have no [standing] to contest the forfeiture of the Defendant Properties owned by the Buyer/Lessor LLCs."); *Rosenberg v. DVI Receivables, XIV, LLC*, 2012 WL 5198341, at *2 (S.D. Fla. Oct. 19, 2012) (Seitz, J.) ("[T]he shareholder standing rule has been applied to members of LLCs[.]"). The exception to the shareholder standing rule is that a "shareholder with a direct, personal interest," separate and apart from that of the corporation, may sue in his own name. *Alcan Aluminium*, 493 U.S. at 336. But even under this exception, "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." *Lowder*, 643 F.2d at 1080.

Here, the Plaintiffs' claims are a mixed bag. Several counts of the FCC clearly allege a direct, personal injury to the Plaintiffs. *See* FCC ¶¶ 200–01 (as to Count I, alleging that the "[u]nauthorized [l]awsuits" have "harass[ed]" and "damage[d]" the Plaintiffs in their personal capacities); *id.* ¶ 208 (as to Count II, alleging that Cardinale has failed to pay Feingold and Dazzo, personally, "fair value for their ultimate interests despite admitting in open court here that they are owed their fair value"); *id.* ¶¶ 212–13 (as to Count III, alleging that Cardinale breached his fiduciary duty owed to Feingold and Dazzo); *id.* ¶¶ 272–73 (as to Count IX, same); *id.* ¶¶ 225–49 (as to Count V, alleging that Cardinale

made misrepresentations to Feingold and Dazzo—not AGM); *id.* ¶¶ 250–57 (same as to Count VI); *id.* ¶ 279 (as to Count X, alleging that "Feingold and Dazzo paid Cardinale millions in administrative fees, advisory fees, management fees and acquisition fees").

Some counts of the FCC, however, appear to assert claims based only on injuries suffered by AGM. For one thing, Count IV asserts a conversion claim alleging that "Cardinale, without authorization from Feingold and Dazzo, has taken funds from AGM's accounts." FCC ¶ 217. This is the exact type of claim a shareholder *can't* bring in his own name, as it only alleges a "diminution in value of the corporate assets," which is "insufficient direct harm to give the shareholder standing to sue in his own right." *Lowder*, 643 F.2d at 1080. For another thing, Counts VII and VIII allege that Cardinale and Vania "agreed to perpetrate a fraud on Feingold and Dazzo" but only discuss actions taken to defraud AGM. FCC ¶ 259; *see also id.* ¶ 263 ("Vania engaged in overt acts in pursuit of the conspiracy as described herein, including, but not limited to, her actions and conduct in furtherance of Cardinale's sham entities described above, one of which received millions of dollars *from AGM*[.]"). We agree with the Defendants that "Feingold and Dazzo do not allege [in Counts VII and VIII] that there was any fraud against either of them in their individual capacities. Rather, Feingold and Dazzo allege that, while they were members of the LLCs, Cardinale and Mrs. Cardinale made misrepresentations that caused payments to flow from the LLCs and AGM to entities affiliated with Cardinale." MTD at 13. Accordingly, we find that these three counts fail to allege a "direct, personal interest," separate and apart from that of AGM. *Alcan Aluminium*, 493 U.S. at 336. So, we'll **DISMISS** Counts IV, VII, and VIII. But we do so without prejudice and with leave to amend.

## II.    Shotgun Pleading

The Defendants next argue that "Counts II–X are all shotgun pleadings and must be dismissed." MTD at 24. This argument is both simple and meritorious. "A complaint that fails to comply with Rules 8(a)(2) or 10(b), or both, may be called a 'shotgun pleading.'" *Embree v. Wyndham*

*Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). As the Eleventh Circuit has explained for decades, the "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The FCC easily meets this definition, as "[e]ach of Counts II–X [ ] states that 'Feingold and Dazzo repeat and reallege the allegations in the preceding paragraphs as if fully stated herein.'" MTD at 10 (quoting FCC ¶¶ 205, 211, 216, 225, 250, 258, 265, 271, and 278).

Resisting this conclusion, the Plaintiffs argue that each count of the FCC adequately "identifies the actors, conduct, and legal theory" underpinning each count. Response at 12. But this simply isn't true, and the sparse details Counts II–X do include aren't sufficient to survive dismissal. For example, Counts II–VI purport to be against Cardinale, RVSCI, and RVCNY, but they don't attribute *any* wrongdoing to RVSCI or RVCNY—instead blaming Cardinale for all the misconduct. *See generally* FCC ¶¶ 205–57. And Counts VII and VIII allege that Cardinale and Vania "agreed to perpetrate a fraud on Feingold and Dazzo," but they don't explain what specific acts these two undertook to defraud either of our individual Plaintiffs. FCC ¶ 259.

We'll therefore **DISMISS** Counts II–X of the FCC and order the Plaintiffs to replead these claims in a manner that's consistent with this Order. *See Jackson v. Bank of Am., N.A.,* 898 F.3d 1348, 1357 (11th Cir. 2018) ("We have explained that in a case in which a party, plaintiff or defendant, files a shotgun pleading, the district court should strike the pleading and instruct counsel to replead the case—if counsel could in good faith make the representations required by FED. R. CIV. P. 11(b)." (cleaned up)).

## III.     Abstention

The Defendants' third argument is that we should "abstain from entertaining . . . the claims in Count I because they subvert two pending arbitrations." MTD at 24. The Defendants allege that "Feingold and Dazzo filed an arbitration to dissolve AGM and specifically properly injected into the arbitration the issues of whether AGM owns the LLCs and if Cardinale had authority to prosecute the Lawsuits." *Ibid.* (cleaned up)). But the Plaintiffs argue that the relief they sought in arbitration differs significantly from the relief they seek here. *See* Response at 7 ("Here, Plaintiffs seek two narrow declarations: (1) that AGM owns AG1–6 and (2) that Cardinale's Unauthorized Lawsuits cannot proceed without Feingold and Dazzo's consent. That specific declaratory relief sought is not being pursued in the forums Cardinale cites."). We agree with the Plaintiffs. Count I of the FCC seeks a completely different remedy (a declaration regarding various parties' rights and relationships) than the Plaintiffs apparently sought in arbitration (an injunction dissolving AGM). That the Plaintiffs' arguments in the two fora might overlap, or that the declaration the Plaintiffs seek may ultimately help them obtain the relief they were provisionally denied in arbitration, has no bearing on whether we should continue to adjudicate this case. *See Branch v. Ottinger*, 477 F. App'x 718, 722 (11th Cir. 2012) (affirming refusal to stay litigation where claims subject to arbitration were "independent" from non-arbitrable claims).

### IV.    Failure to State a Claim

Finally, the Defendants insist that every count of the FCC fails to state a claim. *See generally* MTD at 13–24. But because we're ordering the Plaintiffs to replead Counts II–X, it would be premature for us to evaluate the sufficiency of those claims before we receive an amended consolidated complaint. Count I, however, has thus far survived the Defendants' MTD. Accordingly, we'll address the Defendants' challenge to the substance of Count I only.

Count I of the FCC seeks a "declaratory judgment regarding (1) whether AGM owns the Alternative Numbered Entities and (2) whether Cardinale's Unauthorized Lawsuits may proceed

without Feingold or Dazzo's agreement." FCC ¶ 201. Rather than engage with Count I as pled, the Defendants attack the factual basis underlying the Plaintiffs' requested declaration. *See* MTD at 14–16 (arguing that (1) AGM does not own the Alternative Numbered Entities and (2) Cardinale hasn't violated his duty of loyalty). The Defendants miss the point.[3]

The Declaratory Judgment Act ("DJA"), "[i]n a case of actual controversy within its jurisdiction," allows a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In all cases arising under the DJA, "the threshold question is whether a justiciable controversy exists[.]" *Atl. Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (cleaned up). To establish a justiciable "case or controversy," a plaintiff must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (emphasis added) (quoting *Malowney*, 193 F.3d at 1346–47). "Conversely, an injury in the past . . . does not support a finding of [a] controversy when the [ ] relief sought is a declaratory judgment." *Sully v. Scottsdale Ins. Co.*, 533 F. Supp. 3d 1242, 1246 (S.D. Fla. 2021) (Altman, J.) (citing *Malowney*, 193 F.3d at 1348). "It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995)).

The Plaintiffs have sufficiently alleged that their requested declaration involves an ongoing justiciable controversy between the parties, such that Count I survives dismissal. The Plaintiffs have *repeatedly* alleged that a declaration regarding AGM's ownership of the Alternative Numbered Entities,

---

[3] The Defendants' argument that the substance of the requested declarations is factually incorrect is premature. At the motion-to-dismiss stage, we "must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek* 832 F.3d at 1246. Moreover, a well-pled request for declaratory judgment should survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

and Cardinale's ability to bring suit on behalf of those entities without Feingold and Dazzo's consent, *both* involves a present controversy *and* could prevent future injury caused by Cardinale's "unauthorized lawsuits." *See* FCC ¶¶ 2–4 ("After the initiation of the First Filed Case, Cardinale began to engage in vexatious and unauthorized litigation against Plaintiffs under the guise of the various limited liability companies for which Feingold and Dazzo seek fair value. Cardinale's doing so is a blatant attempt to subvert the orders this Court has entered against him in the lawsuit Feingold and Dazzo filed against him in this Court, the First Filed Case, and to harass Plaintiffs and damage them. Through a declaratory judgment action, Plaintiffs ask this Court to end Cardinale's unauthorized litigations."); *see also id.* at ¶¶ 54–55 ("Cardinale has relentlessly prosecuted his Unauthorized Lawsuits, jumping from case to case depending on the ruling. Plaintiffs, in turn, have spent substantial time, effort and money defending against them."); *id.* at ¶¶ 199–200 ("No agreement to file or pursue Cardinale's Unauthorized Lawsuits has ever existed amongst Cardinale, Feingold and Dazzo. Despite this, Cardinale filed the Unauthorized Lawsuits and continues to pursue them."). That's more than enough for now.

### CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendants' Refiled Motion to Dismiss [ECF No. 347] is **GRANTED in part and DENIED in part**.

2. Counts II–X of the First Consolidated Complaint [ECF No. 252] **are DISMISSED** *without prejudice* and with leave to amend. If they choose to do so, the Plaintiffs may file an amended consolidated complaint addressing the deficiencies identified in this Order by **June 18, 2026**.

3. All other relief requested in the Refiled Motion to Dismiss is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on June 4, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record