**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-20375-ALTMAN/Reid**

**DAVID FEINGOLD**, *et al.*,

*Plaintiffs*,

*v.*

**RICHARD CARDINALE**, *et al.*,

*Defendants*.
_________________________________/

**ORDER REVERSING REPORT & RECOMMENDATION**

On July 23, 2024, our Plaintiffs—David Feingold, Michael Dazzo, and Blackstream Development, LLC—filed a motion to enjoin one of our Defendants, Richard Cardinale, from prosecuting certain "vexatious, inconsistent and unlawful satellite litigation" (the so-called "Unauthorized Lawsuits") "pending a final judgment in this matter." Expedited Motion for Preliminary Anti-Suit Injunction (the "Motion") [ECF No. 233] at 1, 19. We referred the Motion to U.S. Magistrate Judge Lisette M. Reid for a report and recommendation. *See* Order of Referral [ECF No. 247]. Following a two-day evidentiary hearing, *see* Paperless Minutes Orders [ECF Nos. 295, 296], Magistrate Judge Reid issued a Report and Recommendation, suggesting that we grant the Motion, *see* Report and Recommendation ("R&R") [ECF No. 315]. The Defendants—Richard Cardinale, Vania Cardinale, RVCNY, LLC, and RVCSI, LLC—timely filed their objections to the R&R, *see* Defendants' First Objections to the R&R [ECF No. 317], and the Plaintiffs responded, *see* Plaintiffs' First Response to Defendants' Objections [ECF No. 319].

Before we could adjudicate the Objections, the parties sought—and were granted—a stay of this case while they conducted settlement negotiations. *See* Order Granting Joint Motion for Stay [ECF No. 329]. In doing so, we provisionally rejected Magistrate Judge Reid's Report and Recommendation

as moot. *See* Order Granting Joint Motion for Stay at 1 ("Magistrate Judge Reid's Report and Recommendation on the Expedited Motion for Preliminary Anti-Suit Injunction [ ] is provisionally REJECTED as moot." (emphasis removed)). After the parties failed to reach a settlement, we reopened this case and directed the parties to refile their objections and response, *see* Jan. 23, 2026 Order After Status Conference [ECF No. 340], which they promptly did, *see* Defendant Cardinale's Renewed Objections to the R&R (the "Objections") [ECF No. 346]; Plaintiffs' Renewed Response to Cardinale's Objections (the "Response") [ECF No. 348].[1]

After careful review, we now **SUSTAIN** Cardinale's Objections and **REVERSE** the Magistrate Judge's R&R. The Expedited Motion for Preliminary Anti-Suit Injunction is **DENIED**.

## THE FACTS

### I. Background and Procedural History

Cardinale, Feingold, and Dazzo started a business venture together in 2019. *See* Second Consolidated Complaint (the "SCC") [ECF No. 376] ¶¶ 17–25. The three agreed that (1) "Cardinale's investment fund, the L3 Capital Income Fund, would be the lender for Feingold and Dazzo's intended business endeavors;" (2) all three "would be made equal equity owners of those businesses;" and (3) all three "would receive the funds left over after loan payments were made." *Id.* ¶ 21. To put this plan

[1] The Plaintiffs assert that Cardinale failed to comply with our Order directing the parties to refile their objections because, rather than refile his original objections, he "filed an unauthorized rewrite of his objections." Response at 1 (emphasis removed). It's true that Cardinale's Renewed Objections are materially different from the Defendants' First Objections. *See* Exhibit 1 to Response [ECF No. 348-1] (comparing the Defendants' First Objections with Defendant Cardinale's Renewed Objections). But given that our Order didn't explicitly prohibit amendments, *see* Jan. 23, 2026 Order After Status Conference, and that the Plaintiffs have responded to Cardinale's objections as re-written, *see* Response, we'll exercise our discretion to treat the Renewed Objections as the operative filing for the purposes of adjudicating Cardinale's objections to the R&R, *see Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (cleaned up)); *United States v. Filson*, 347 F. App'x 987, 991 (5th Cir. 2009) ("Courts have consistently allowed parties to refile or amend motions and supporting documents as a valid exercise of their discretion in case management." (citations omitted)).

into action, Feingold, Dazzo, and Cardinale created seven Delaware LLCs, collectively known as the "Alternative Global Entities." *Id.* ¶¶ 22–23. Six of these LLCs—collectively known as the "Alternative Numbered Entities"—were created to invest in different industries. *Ibid.* Each of the six Alternative Numbered Entities' operating agreements "lists Feingold, Dazzo[,] and Cardinale as the initial Members" and states that "[t]he consent of all Members will be required to approve . . . the authorization or ratification of acts that would otherwise violate the duty of loyalty." *Id.* ¶¶ 29, 38. "After creating the Alternative Global Entities, Feingold, Dazzo[,] and Cardinale assigned their membership interests in the Alternative Numbered Entities" to the seventh LLC, Alternative Global Management, LLC ("AGM"), and "admitted AGM as a substitute member in the Alternative Numbered Entities[.]" *Id.* ¶ 31. According to the Plaintiffs, therefore, AGM owned and controlled all the Alternative Numbered Entities. *See ibid.* (discussing the evidence that suggests "AGM is the owner of the Alternative Numbered Entities"). Like the Alternative Numbered Entities, our players—Feingold, Dazzo, and Cardinale—were the initial members of AGM, and each had a 33.33% interest in the company. *See* AGM Operating Agreement [ECF No. 376-1] ¶ 4.1.

Throughout 2021, the relationship between Feingold, Dazzo, and Cardinale "began to fray and continued to deteriorate as the year progressed." SCC ¶ 32. On January 28, 2022, this conflict came to a head when Feingold and Dazzo "provided notice of their resignations as managers of the Alternative Numbered Entities and . . . demanded their respective interests in the Alternative Numbered Entities be redeemed[.]" *Id.* ¶ 33. In doing so, however, Feingold and Dazzo claimed in their resignation letter that they "were still managers and members of [AGM]" and that Cardinale "may not make any distributions at all from that entity without approval and consent of [Feingold and Dazzo]." *Id.* ¶ 34 (quoting Notice of Resignation [ECF No. 376-20] at 2). As a result, Feingold and Dazzo continued to operate under the belief that Cardinale "owed/owes a duty of loyalty to AGM,

as well as AGM's ultimate beneficiaries: Feingold and Dazzo," and that "AGM may only act with the unanimous consent of Feingold, Dazzo and Cardinale." *Id.* ¶¶ 36, 39.

Within weeks of their resignation, Feingold and Dazzo brought the "First Filed Case" in our Court against Cardinale, Cardinale's wife (Vania Cardinale), and two other companies owned by Cardinale (RVCNY, LLC, and RVCSI, LLC) "for failure to pay fair value for their ultimate membership interests in various limited liability companies, breach of fiduciary duty, conversion, fraudulent misrepresentations, conspiracy to commit fraud, civil conspiracy, aiding and abetting breach of fiduciary duty and unjust enrichment." First Consolidated Complaint (the "FCC") [ECF No. 252] ¶ 1.[2]

After the Plaintiffs initiated the First Filed Case, Cardinale, on behalf of some of the AGs, brought actions against the Plaintiffs in other courts—specifically, a suit against Blackstream in the U.S. District Court for the District of South Carolina (the "Blackstream Action"), and a suit against Feingold and Dazzo in the Florida state court (the "Florida Action"). *See Alt. Glob. Two LLC. v. Blackstream Dev. LLC*, 22-cv-04501 (D.S.C. Dec. 13, 2022); *Alt. Glob. One, LLC v. Feingold*, No. 2023-CA-000688 (Fla. 11th Cir. Ct. Jan. 17, 2021).[3] In the Blackstream Action, Cardinale sued Feingold and Dazzo's South Carolina business partner, Blackstream Development, LLC, for breach of fiduciary duty and accounting, alleging that Blackstream "shut off the flow of information to the Alternative

[2] The Plaintiffs have since filed a Second Consolidated Complaint that abandons several of the claims from its earlier complaints, but which "continue[s] to seek judgment against [the] Defendants for failure to pay fair value," as well as "breach of fiduciary duty, fraudulent misrepresentations, aiding and abetting breach of fiduciary duty and unjust enrichment." SCC ¶ 5.

[3] We'll take judicial notice of the relevant state-court records from the Florida Action under Federal Rule of Civil Procedure 201 because those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)); *see also Cave v. Stone*, 2021 WL 4427451, at *1 (S.D. Fla. Sept. 27, 2021) (Altman, J.) ("Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting FED. R. EVID. 201(b))).

Global Companies, depriving the Alternative Global Companies of all information on the status of the $17,561,300 in funds or the underlying real estate investments." Blackstream Complaint [ECF No. 233-25] at 2. In March 2024, the Blackstream Action was transferred to our Court, *see* Order Granting Motion to Transfer [ECF No. 233-30], and was consolidated with the First Filed Case, *see* Order of Consolidation [ECF No. 191].

In the Florida Action, Cardinale sued Feingold and Dazzo for "damages and related relief . . . arising out of their theft of corporate books and records identifying, among other things, the nature and status of investments totaling in excess of $81 Million that they managed as the then co-managing members of the Alternative Global Companies." Florida State-Court Complaint [ECF No. 233-23] ¶ 1. That state-court complaint asserted "(1) two counts of breach of fiduciary duty; (2) civil theft; (3) conversion; (4) replevin; (5) civil conspiracy; (6) three counts of tortious interference against Feingold and Dazzo; (7) accounting; and (8) unjust enrichment." Motion at 6 (citing Florida State-Court Complaint). In April 2025, the state court granted the Plaintiffs' motion to stay the state case pending the resolution of our earlier-filed federal case, finding that the state-court action and this federal action are "opposite sides of the same coin." Order Granting Motion to Stay the Florida Action [ECF No. 314-1] at 5.

In July 2024, after Cardinale filed the Blackstream Action and the Florida Action (collectively, the "Unauthorized Lawsuits"), Plaintiffs Feingold, Dazzo, and Blackstream then brought another lawsuit in our Court (the "Declaratory Judgment Action") accusing Cardinale of engaging in "vexatious and unauthorized litigation" against them to "subvert the orders [of] this Court" and "harass Plaintiffs"—and seeking a declaratory judgment "to end Cardinale's unauthorized litigations." SCC ¶¶ 2–4; *see also Feingold et al v. Cardinale*, 24-cv-22644 (S.D. Fla. July 11, 2024). In July 2024, we consolidated this new federal case with our First Filed Case. *See* Order of Consolidation [ECF No.

231]. This case, in short, consists of a consolidation of the First Filed Case, the Blackstream Action, and the most recent Declaratory Judgment Action. *See generally* Docket.[4]

### II. The Motion for Preliminary Anti-Suit Injunction

On July 23, 2024, Feingold, Dazzo, and Blackstream moved for an anti-suit injunction to prevent Cardinale "from prosecuting the Unauthorized Lawsuits pending a final judgment in this matter." Motion at 19.[5] In the Motion, they accuse Cardinale of using these lawsuits to advance "baseless" allegations, engage in "vexatious litigation tactics," and commit "discovery abuses" on "an ongoing and continuing basis." *Ibid.* They also claim that the Unauthorized Lawsuits "[d]irectly subvert[ ] this Court's authority," "[c]ontravene[ ] this Court's orders entered against [Cardinale] in the First Filed Case," and "[v]iolate[ ] the operating agreements [Cardinale] entered into with Feingold and Dazzo" because they were filed on behalf of the Alternative Global Entities without the consent of Feingold, Dazzo, or AGM. *Id.* at 1, 9. They therefore contend that "injunctive relief is [ ] necessary to prevent Cardinale from continuing to flout this Court's authority and to inflict unnecessary and irreparable harm on Plaintiffs." *Id.* at 1.

## The Law

[4] On September 11, 2024, the Plaintiffs filed a First Consolidated Complaint [ECF No. 252] that combined their claims from the First Filed Case and the Declaratory Judgment Action. After we granted in part and denied in part the Defendants' Motion to Dismiss the First Consolidated Complaint [ECF No. 347], *see* Order on Motion to Dismiss [ECF No. 372], the Plaintiffs filed a Second Consolidated Complaint [ECF No. 376], which is now the operative complaint in our case.

[5] The R&R construes the Plaintiffs' Motion as a request not only to enjoin Cardinale from prosecuting the "Unauthorized Lawsuits," but also "to restrain [him] from filing further similar lawsuits." *See* R&R at 2 (citing Motion at 9, 19). We don't agree with that reading. We instead understand the Motion as a request to enjoin two *specific* lawsuits—the Blackstream Action and the Florida Action—and the specific parts of the Motion the R&R cites support this reading. *See* Motion at 9 ("Feingold and Dazzo (and therefore AGM) do not consent to Cardinale's Unauthorized Lawsuits. . . . He should be restrained from further prosecution pending a final ruling in this matter."); *id.* at 19 ("[T]his Court should enjoin Cardinale on an expedited basis from prosecuting the Unauthorized Lawsuits pending a final judgment in this matter."); *id.* at 6 (referring to the "Unauthorized Lawsuit Against Blackstream" and the "Unauthorized Lawsuit Against Feingold and Dazzo" as the "Unauthorized Lawsuits").

"District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to." *Finkelstein v. Mount Sinai Med. Ctr. of Fla.*, 2023 WL 6118179, at *1 (S.D. Fla. Sept. 19, 2023) (Altman, J.); *see also* FED. R. CIV. P. 72(b)(3). "When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a de novo determination 'of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Finkelstein*, 2023 WL 6118179, at *1 (quoting 28 U.S.C. § 636(b)(1)). "But, when no party has timely objected, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Versfelt v. Sanza Food Serv.*, LLC, 2022 WL 2439092, at *1 (S.D. Fla. July 5, 2022) (Altman, J.) (quotation marks omitted); *see also Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (holding that the "[f]ailure to object to the magistrate's factual findings after notice precludes a later attack on these findings"). A "district court has broad discretion in reviewing a magistrate judge's report and recommendation." *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

## ANALYSIS

Defendant Cardinale objects to Magistrate Judge Reid's R&R on several grounds. *First*, he argues that an anti-suit injunction is not an appropriate remedy in this case because "(a) the Anti-Injunction Act bars enjoining the FL State Action; (b) the Blackstream Action does not implicate the All Writs Act; (c) Movants improperly seek merits-based relief through an anti-suit injunction; (d) Movants have other adequate legal remedies; and (e) the 'gatekeeping' elements have not been satisfied." Objections at 2. *Second*, he contends that "[the] Movants lack prudential standing to bring claims asserting AGM's rights rather than their own." *Ibid. Third*, he claims that the R&R "exceeds the Magistrate's authority" and "improperly recommend[s] a final declaratory judgment on the merits of Count I." *Ibid. Fourth*, he maintains that "the [R&R] applies the wrong burden of proof and, in so doing, makes incorrect findings of fact" as to whether AGM "control[s]" and is the "sole equity

owner" of the LLCs, and as to whether the Unauthorized Lawsuits "are in breach of Cardinale's duty of loyalty to the LLCs[.]" *Ibid. Finally*, he insists that "the Report was entered without the benefit of critical newly-revealed evidence[.]" *Ibid.* We'll start by addressing Cardinale's arguments that the requested anti-suit injunction is inappropriate under the Anti-Injunction Act ("AIA") and the All Writs Act ("AWA").

## I. Whether the AIA Bars Enjoining the State-Court Action

Under the AIA, federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Because it's "clearly rooted in federalism concerns," the AIA "is construed narrowly by the courts," *Burr & Forman v. Blair*, 470 F.3d 1019, 1027 (11th Cir. 2006), and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed," *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). The AIA thus acts as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the Act's] three specifically defined exceptions." *Id.* at 286. So, to persuade us to enjoin the state-court proceedings, the Plaintiffs must show either that: (1) Congress authorized us to do so; (2) the injunction is "necessary" to "aid [our] jurisdiction"; or (3) the injunction is required "to protect or effectuate [our] judgments." *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 (11th Cir. 2006).

Cardinale argues that the AIA prohibits enjoining the Florida Action because none of these three exceptions applies here.[6] *See* Objections at 4–5. We agree. The first exception is clearly

[6] The Plaintiffs assert that "Cardinale misrepresents both [the] Plaintiffs' request and Magistrate Judge Reid's recommendation" because they "did not seek to enjoin the Unauthorized Lawsuit Against Feingold and Dazzo; they asked to enjoin ***Cardinale*** from prosecuting litigation on behalf of AG1-6 without authorization." Response at 14 (emphasis in original). This is a distinction without a difference: Enjoining Cardinale from prosecuting the Florida Action is functionally the same as enjoining that action. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 n.14 (11th Cir. 2004) ("[W]hen we refer to a federal court 'enjoining state court proceedings,' this should be understood as

inapplicable, and the Plaintiffs never claim that an Act of Congress allows us to enjoin the Florida Action. *See generally* Motion; *see also Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 678 (11th Cir. 2014) ("The Appellants have cited no Act of Congress that would allow for injunctive relief[.]"). They've thus forfeited any such argument. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented...are deemed waived."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

The second exception—the "necessary in aid of its jurisdiction" exception—applies in only "two distinct situations." *Burr & Forman*, 470 F.3d at 1028. "The first is where the federal court in an *in rem* proceeding obtains jurisdiction over the *res* before the state court action involving the same *res* is brought." *Ibid.* (citing *In re Abraham*, 421 F.2d 226, 228 (5th Cir. 1970)).[7] This situation plainly doesn't

shorthand for enjoining a party or parties from pursuing particular claims in state court, rather than enjoining a state court or state judge from proceeding with a case."). And courts have concluded that a party cannot avoid the AIA simply by framing the injunction as governing a particular litigant rather than the lawsuit or a state court. *See Atl. Coast Line R. Co.*, 398 U.S. at 287 ("It is settled that the prohibition of [the AIA] cannot be evaded by addressing the order to the parties[.]" (citations omitted)); *Burr & Forman v. Blair*, 470 F.3d at 1027 n.28 (explaining that "[o]n its face, the [AIA] could be interpreted as preventing only injunctions issued directly to the state court," but that "[c]ourts have not interpreted the Act this way" (citing *Atl. Coast Line R. Co.*, 398 U.S. at 287 and *Klay*, 376 F.3d at 1102 n.14)).

[7] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

apply here since ours isn't an *in rem* proceeding. Instead, the Plaintiffs are seeking declaratory judgment "to end Cardinale's unauthorized litigations" and damages for Cardinale's supposed "failure to pay fair value for Feingold and Dazzo's ultimate membership interests in the various limited liability companies, breach of fiduciary duty, fraudulent misrepresentations, aiding and abetting breach of fiduciary duty and unjust enrichment." SCC ¶¶ 4–5. That's the essence of an *in personam*, not *in rem*, proceeding. *See Shaffer v. Heitner*, 433 U.S. 186, 199 (1977) (explaining that an *in personam* action "is based on [the court's] authority over the defendant's person" and "can impose a personal obligation on the defendant in favor of the plaintiff," while an *in rem* action "is based on the court's power over property within its territory" and "does not impose a personal liability on the property owner"); *Arthur*, 569 F. App'x at 678 (finding that a lawsuit seeking damages and injunctive relief based on alleged fraudulent and criminal activity was an *in personam* action). In any event, again, the Plaintiffs never suggest that ours is an *in rem* proceeding. They've thus waived any such argument. *See Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

The second situation in which the "in aid of [ ] jurisdiction" exception applies is when "enjoining the state court proceeding is necessary to protect an earlier federal court injunction." *Burr & Forman*, 470 F.3d at 1029; *see also Arthur*, 569 F. App'x at 678 ("The Appellants have also not implicated the second basis, which applies when the district court must protect a pre-existing federal judgment or injunction."). But there's no pre-existing federal judgment or injunction in this case, nor do the Plaintiffs allege that some other federal judgment or injunction will be affected by the state court proceedings, so this situation doesn't apply either. While the Plaintiffs argue that this exception "permits federal courts to enjoin state proceedings that would impair their ability to resolve the federal

action," Response at 15, an injunction isn't "necessary in aid of a federal court's jurisdiction" just because the same or similar claims are "being pursued simultaneously in a state court proceeding," *Burr & Forman*, 470 F.3d at 1029; *see also Atl. Coast Line R. Co.*, 398 U.S. at 295 ("[T]he state and federal courts had concurrent jurisdiction . . . and neither court was free to prevent either party from simultaneously pursuing claims in both courts.").[8] The Florida Action thus cannot be enjoined under the "necessary in aid of its jurisdiction" exception. *See Johnson v. Eleftherio*, 2024 WL 5085839, at *2 (S.D. Fla. Dec. 12, 2024) (Altman, J.) (finding that the "necessary in aid of its jurisdiction" exception didn't apply where the action "[wa]sn't an *in rem* proceeding," and there was "no pre-existing judgment or injunction" that "[would] be affected by the state-court proceedings").

The third exception—known as the "relitigation exception"—is "designed to implement well-recognized concepts of claim and issue preclusion" and "authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (cleaned up); *see also Burr & Forman*, 470 F.3d at 1030 ("Any doubt regarding whether the requirements of res judicata have been met will be resolved against interference with the state court proceeding." (citing *G.M. Brod & Co., Inc. v. Adler*, 845 F.2d 899, 900 (11th Cir.1988))). But the relitigation exception only applies "where a district court is seeking to protect the integrity or enforceability of existing judgments or orders," not "its ability to prospectively issue one in a pending case." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004). Since there's been no judgment in our case, "we don't need to protect any such judgment from a parallel state-court finding." *Johnson*, 2024 WL 5085839, at *2 (cleaned up). So, the "relitigation exception"

[8] We also don't see how allowing the Florida Action to proceed would necessarily "impair [our] ability to resolve the federal action," Response at 15, since the Florida Action is *already stayed* pending the resolution of our case, *see* Order Granting Motion to Stay the Florida Action ("The Court hereby GRANTS Defendants' motion to stay this action (the 'State Action') pending the conclusion of the first-filed action styled David Feingold and Michael Dazzo v. Richard Cardinale et al., Case No. 1:22-cv-20375-RKS, pending in the United States District Court for the Southern District of Florida (the 'Federal Action').").

doesn't apply here either. *See Arthur*, 569 F. App'x at 679 (declining to apply the "relitigation exception" where "[t]he Appellants have not received and cannot point to a federal judgment that has been issued in their favor" (citing *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387–88 (5th Cir. 2000))).

Still, the R&R concluded that "the Anti-Suit Injunction Act may apply to this litigation" after finding that "there are no preclusion issues" arising from prior arbitration proceedings involving Feingold, Dazzo, and Cardinale, because "declaratory relief is unique solely to this Court." R&R at 14–15. But that's not quite right. Even if the prior arbitration proceedings don't present preclusion issues, the AIA would still bar us from enjoining the Florida Action unless one of its statutory exceptions applies. *See Atl. Coast Line R. Co.*, 398 U.S. at 286 (explaining that the AIA acts as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the Act's] three specifically defined exceptions"). For the reasons we've outlined, none of those exceptions applies here. Since the AIA bars us from enjoining the Florida Action, we **SUSTAIN** Cardinale's objection and **REVERSE** the Magistrate Judge's findings.

## II. Whether Enjoining the Blackstream Action is Appropriate Under the AWA

The AWA provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) (explaining that the AWA codifies "the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance"). Courts have construed the AWA "broadly," finding that it "authorize[s] the issuance of writs to protect 'not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments.'" *Burr & Forman*, 470 F.3d at 1026 (quoting *Klay*, 376 F.3d at 1099). "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act[.]" *Klay*, 376 F.3d at 1100 (citations omitted). "Thus, while a party must 'state a claim' to obtain a 'traditional' injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some

ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Ibid.* Still, an injunction under the AWA is an extraordinary remedy that "invests a court with a power that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999).

Cardinale argues that an injunction of the Blackstream Action "[c]annot [s]atisfy" the AWA because it was "[c]onsolidated with" and "is part of" this case and so "[i]t cannot be necessary or appropriate in aid of the Court's respective jurisdictions . . . to enjoin a case the Court already controls." Objections at 5–6 (cleaned up). The Plaintiffs, on the other hand, argue that an injunction under the AWA is warranted because "[a]llowing Cardinale to unilaterally litigate in the entities' names during the pendency of this proceeding would, by definition, risk inconsistent rulings and 'diminish[ ] the court's power to bring the litigation to a natural conclusion.'" Response at 16–17 (quoting *Klay*, 376 F.3d at 1102). They thus maintain that "the relevant question" is not whether the Blackstream Action is "housed under the same docket number, but whether Cardinale's conduct threatens this Court's ability to resolve the core dispute before it and whether the anti-suit injunction is necessary to facilitate the Court's effort to manage the First Filed Case to judgment." *Id.* at 17.

We're not persuaded that enjoining the Blackstream Action is "necessary or appropriate in aid of [our] jurisdiction[.]" 28 U.S.C. § 1651(a). *First*, the mere fact that the Blackstream Action involves overlapping issues and is occurring concurrently doesn't necessarily threaten our jurisdiction in this case such that an injunction is appropriate. *See Klay*, 376 F.3d at 1102–03 ("The simple fact that litigation involving the same issues is occurring concurrently in another forum does not sufficiently threaten the court's jurisdiction as to warrant an injunction under [the AWA]."); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1267 (11th Cir. 2021) ("The threshold question is whether there is some underlying proceeding, order, or judgment over which the District Court has jurisdiction, such that

the Court would be in a position to protect that proceeding or matter *from some threat to its integrity* by issuing the requested order." (emphasis added)).

*Second*, even if the Blackstream Action did threaten the integrity of the instant case, an injunction wouldn't be necessary to protect our jurisdiction. Federal courts possess inherent authority to manage their dockets and stay proceedings when appropriate to promote judicial economy and the orderly resolution of their cases. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("[A] district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962))); *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court."). Because the Blackstream Action was consolidated with this case, *see* Order of Consolidation [ECF No. 191], we already have the authority to manage those proceedings, including—if necessary—by staying the Blackstream Action pending the resolution of the First Filed Case, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Enjoining the Blackstream Action thus isn't necessary to "facilitate [our] effort to manage the First Filed Case to judgment." Response at 17.

*Finally*, enjoining the Blackstream Action is inappropriate because the Plaintiffs have "other, adequate remedies at law." *Clinton*, 526 U.S. at 537; *see also Wolfe v. Safecard Servs., Inc.*, 873 F. Supp. 648, 650 (S.D. Fla. 1995) (Gonzalez, J.) (denying request for anti-suit injunction and noting that the movant had an adequate remedy at law "in the nature of a res judicata or collateral estoppel defense"). If the Plaintiffs believe that allowing the Blackstream Action to proceed would undermine our ability to resolve the First Filed Case, then Blackstream can raise that argument in a motion to stay, as Feingold

and Dazzo did in the Florida Action. *See* Order Granting Motion to Stay the Florida Action at 2 (explaining that "[the] Defendants moved to stay the State Action under the first-to-file rule"). Alternatively, the Plaintiffs could seek a traditional preliminary injunction on the merits.[9] The Plaintiffs contend that "there is no alternative forum in which the declaratory relief at the heart of this action is available." Response at 19. But that misses the point. The question is not whether the Plaintiffs have other *fora* in which to bring their declaratory-judgment claim, but whether they have other *remedies at law* short of an anti-suit injunction—and, as we've said, we think that they do.

While the R&R concluded that an anti-suit injunction is appropriate after finding that the Plaintiffs satisfied the requisite "gatekeeping elements," *see* R&R at 15–19, it didn't consider the threshold question of whether such an injunction is "necessary or appropriate in aid of [our] jurisdiction[ ]" under the AWA, 28 U.S.C. § 1651(a). And that question is crucial because, as we've explained, we don't think that enjoining the Blackstream Action is necessary or appropriate to protect our jurisdiction in this case. Since an anti-suit injunction isn't warranted under the AWA, we **SUSTAIN** Cardinale's objection and **REVERSE** the Magistrate Judge's finding that "[a]n [a]nti-[s]uit [i]njunction is an [a]ppropriate [r]emedy" in this case. R&R at 13.

***

Because we've determined that the requested anti-suit injunction is inappropriate under both the AIA and the AWA, we needn't reach Cardinale's other objections. To the extent that the R&R recommends a finding that "AGM controls the AG Numbered Entities" and that Cardinale thus

[9] We tend to agree with Cardinale that the Plaintiffs' chief argument for enjoining him from prosecuting the Unauthorized Lawsuits—*i.e.*, that he filed the lawsuits without the consent of Feingold and Dazzo in violation of "the Operating Agreements of the Alternative Numbered Entities"—is really an argument for "merits-based injunctive relief more akin to a traditional injunction," rather than "an anti-suit injunction to protect this Court's jurisdiction." Objections at 6–7. If the Plaintiffs want merits-based relief, an anti-suit injunction under the AWA is not the proper remedy. *See Schiavo v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("Our decisions make clear that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist[.]").

"cannot file suit on behalf of the AGs or against AGM without the expressed consent of Feingold and Dazzo under the Operating Agreements," R&R at 21, we reject that finding simply because it exceeds the scope of our referral, *see* Order of Referral (referring only the Plaintiffs' Expedited Motion for Preliminary Anti-Suit Injunction for a report and recommendation).

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Magistrate Judge's Report & Recommendation [ECF No. 315] is **REVERSED**.
2. Cardinale's Objections to the Report & Recommendation [ECF No. 346] are **SUSTAINED in part**.
3. The Plaintiffs' Motion for a Preliminary Anti-Suit Injunction [ECF No. 233] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on November 20, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record